

**IT IS ORDERED as set forth below:**

**Date: June 30, 2016**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 11** |
| | ) | |
| **NEXXLINX CORPORATION, INC., et al.,** | ) | |
| | ) | **Jointly Administered Under** |
| Debtors. | ) | **CASE NO. 16-61225-pmb** |
| | ) | |

**INTERIM ORDER (1) AUTHORIZING DEBTORS TO OBTAIN
FINANCING, GRANT SECURITY INTERESTS AND ACCORD
PRIORITY STATUS; (2) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL; (3) GIVING NOTICE OF SECOND INTERIM HEARING;
AND (4) MODIFYING AUTOMATIC STAY**

This matter is before the Court on the Emergency Motion (the "**DIP Motion**") of the Debtors

NexxLinx Corporation, Inc. ("**NexxLinx**"); NexxLinx Global, Inc. ("**NGI**"); NexxLinx of New

York, Inc. ("**NNY**"); NexxLinx of Texas, Inc. ("**NTX**"); CustomerLinx of North Carolina, Inc.

("**CNC**"); and Microdyne Outsourcing Inc. ("**MOI**"), debtors and debtors-in-possession, as debtor

and debtor-in-possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**"),

requesting entry of an order (1) authorizing Debtors to obtain financing and other extensions of

credit from Action Capital Corporation ("**Action**" or, in its capacity as the post-petition lender, the "**DIP Lender**"), grant security interests and liens and accord superpriority claim status in favor of DIP Lender pursuant to Sections 361, 364(c) and 364(d) of Title 11 of the United States Code (the "**Bankruptcy Code**"); (2) authorizing Debtors to use cash collateral pursuant to Section 363 of the Bankruptcy Code; (3) giving notice of a final hearing pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2); and (4) modifying the automatic stay.

Based upon this Court's review of the DIP Motion and all matters brought to the Court's attention at the interim hearing, which was held at 10:00 a.m. on June 30, 2016, pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) (the "**Interim Hearing**"), and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law applicable to the financing sought by Debtors from DIP Lender and Debtors' request to use cash collateral (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

THE COURT HEREBY FINDS AND DETERMINES:

A.    On June 28, 2016 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in this Court initiating these jointly administered Chapter 11 Cases (collectively, the "**Chapter 11 Case**" or "**Case**").  The Debtors are continuing to operate their businesses and manage their property as debtors-in-possession.  No trustee or examiner has been appointed herein.

B.    NexxLinx and its co-debtor subsidiaries and affiliates are business process and marketing services outsourcing providers that design custom solutions for inbound and outbound customer care, telemarketing and data collection, help desk, e-mail processing, live web and voice interaction, and back-end data processing.  As of the Petition Date, the Debtors operate customer

-2-

service call centers in Maine, North Carolina, New York, and Georgia and employ approximately 1100 employees.

C.      Action has asserted that, as of the Petition Date, Debtors were indebted to Action in the approximate amount of $3,320,000.00, exclusive of any accrued but unpaid interest, fees, costs and expenses.  The obligations owed by Debtors to Action arise out of loans made by Action under a pre-petition Factoring and Security Agreement and an Earned and Unbilled Revenue Line of Credit Agreement, and related documents and agreements (collectively, the "**Pre-Petition Credit Agreement**").

D.      Action has asserted that all amounts owed by Debtors to Action as of the Petition Date (such principal amounts, together with all interest, fees, attorneys' fees, expenses and other amounts heretofore or hereafter accruing thereon or at any time chargeable to Debtors in connection therewith, is referred to as the **"Pre-Petition Debt"**) are secured by, *inter alia*, all acquired accounts, accounts receivable, earned but unbilled revenue, contract rights, inventory, chattel paper, documents, instruments, general intangibles, reserves, reserve accounts, rebates and all books and records (including without limitation customer lists, computer programs, print outs, and other computer material and records) pertaining to the foregoing and all proceeds of the foregoing property (all such property owned by Debtors, as the same existed on or at any time prior to the Petition Date, together with all cash and non-cash proceeds thereof, being hereinafter referred to as the "**Pre-Petition Collateral**").

F.      An immediate and ongoing need exists for Debtors to obtain financing and use the cash proceeds of the Collateral (as defined below) (the **"Cash Collateral"**) to continue the operation of its business as debtor-in-possession under Chapter 11 of the Bankruptcy Code, to minimize the

-3-

disruption of Debtors' business and to allow Debtors to pursue reorganization under Chapter 11. Despite diligent efforts, Debtors have been unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code; and other than the discretionary financing from DIP Lender pursuant to the DIP Credit Agreement (as hereinafter defined), Debtors are unable to obtain financing in the form of credit secured by liens that are junior to existing liens on property of the estates pursuant to Sections 364(c)(2) and (c)(3) of the Bankruptcy Code.

G.      Debtors have requested that DIP Lender establish a secured lending facility in favor of Debtors (the **"DIP Facility"**) pursuant to which Debtors may obtain loans from time to time (**"DIP Loans"**), up to $4,500,000 in principal balance outstanding, upon the terms and conditions set forth herein and in a Factoring and Security Agreement (the "**Factoring Agreement**") and an Earned and Unbilled Revenue Line of Credit Agreement (the "**Line of Credit Agreement**", together with the Factoring Agreement and all related notes, schedules, exhibits and annexes thereto, and as at any time amended or restated, the **"DIP Credit Agreement"**) between DIP Lender and Debtors, in substantially the form attached to the DIP Motion.

H.      DIP Lender is willing to establish the DIP Facility, upon the terms and conditions set forth herein and in the DIP Credit Agreement.  DIP Lender's willingness to make DIP Loans and other extensions of credit (collectively, the **"DIP Credit Extensions"**) is conditioned upon, among other things, Debtors' obtaining Court authority to provide adequate protection of Action's interests in the Pre-Petition Collateral pursuant to Sections 361 and 363 of the Bankruptcy Code.

-4-

I.      A condition to the willingness of DIP Lender to establish the DIP Facility is that, as security for the prompt payment of all DIP Loans, together with all interest, fees, expenses and the charges at any time payable by Debtors under the DIP Credit Agreement, DIP Lender receive a security interest in and lien upon all of Debtors' pre-petition and post-petition assets (both real and personal), including, without limitation, Debtors' accounts, inventory, equipment, fixtures, general intangibles, documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, contract rights, investment property, leasehold interests, supporting obligations, cash, and books and records relating to any assets of Debtors and all cash and non-cash proceeds (including insurance proceeds) of the foregoing, whether now in existence or hereafter created, acquired or arising and wherever located (all such real and personal property, and the proceeds thereof, being collectively hereinafter referred to as the **"Collateral"**), and that such liens have the priority hereinafter set forth.  The Collateral shall not include Avoidance Claims or Avoidance Proceeds, all as defined and set forth below.

J.      Debtors have represented and disclosed that, in addition to liens and security interests in favor of Action and statutory liens for taxes, Debtors have granted liens and security interests in favor of Branch Banking & Trust Company ("**BB&T**").  Pursuant to an Intercreditor Agreement dated as of October 18, 2015, between Action and BB&T (the **"Intercreditor Agreement"**), BB&T has agreed to subordinate its liens and security interests in favor of liens and security interests granted by Debtors in favor of Action as set forth in the Intercreditor Agreement.    BB&T is sometimes hereinafter referred to as the "**Subordinated Creditor**."

K.      Debtors requested in the DIP Motion, pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2), that the Court hold the Interim Hearing to consider authorizing Debtors to (i) obtain, on an

interim basis, DIP Loans for purposes specified in Debtors' cash flow forecast filed with the Court on June 29, 2016 (Doc. No. 18) (as at any time amended with the consent of DIP Lender, the **"Budget"**); and (ii) to use Cash Collateral as hereinafter set forth.

L.    Debtors have certified that a copy of the DIP Motion (together with copies of the proposed DIP Credit Agreement and Budget annexed thereto) and notice of the Interim Hearing have been served by electronic mail, telecopy transmission, hand delivery, overnight courier and/or first class United States mail upon the United States Trustee (the **"U.S. Trustee"**), Action, the Subordinated Creditor, the 30 largest creditors of Debtors on a consolidated basis, the Internal Revenue Service, and any known lien creditors of Debtors.  The Court finds that notice of the DIP Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, Sections 102(1) and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (c).

M.    Good cause has been shown for the entry of this Order and authorization for Debtors to obtain DIP Credit Extensions pursuant to the DIP Credit Agreement and to use Cash Collateral as hereinafter provided pending a further interim hearing on the DIP Motion pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) (the **"Second Interim Hearing"**).  Debtors' need for financing of the type afforded by the DIP Credit Agreement is immediate and critical.  Entry of this Order will minimize disruption of Debtors' business and operations, will preserve the assets of Debtors' estates and is in the best interests of Debtors, their creditors and their estates.  The terms of the proposed financing and use of Cash Collateral appear fair and reasonable, reflect Debtors' exercise of business judgment and are supported by reasonably equivalent value and fair consideration.

N.      Based upon the record presented at the Interim Hearing, it appears that the DIP Credit Agreement and this Interim Order have been negotiated in good faith and at arm's length between Debtors, on the one hand, and Action and DIP Lender, on the other.  Therefore, all DIP Credit Extensions to Debtors pursuant to the DIP Credit Agreement shall be deemed to have been made in good faith within the meaning of Section 364(e) of the Bankruptcy Code.

O.      This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the DIP Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.      <u>Grant of Motion; Authorization of Interim Financing</u>.  The DIP Motion is hereby granted and Debtors are hereby authorized (i) to execute and deliver the DIP Credit Agreement in substantially the form annexed to the DIP Motion and all instruments, security agreements, assignments, pledges, mortgages and other documents referred to therein or requested by DIP Lender to give effect to the terms thereof (the DIP Credit Agreement and such other instruments, security agreements, assignments and other documents, as at any time amended, being collectively called the **"DIP Financing Documents"**); (ii) to obtain DIP Loans and other DIP Credit Extensions in accordance with the DIP Credit Agreement from time to time up to an aggregate principal amount outstanding at any time not to exceed $4,500,000, and to incur any and all liabilities and obligations thereunder and to pay all interest, fees, expenses and other obligations provided for under the DIP Financing Documents; and (iii) to satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof; <u>provided</u>, <u>however</u>, that,

-7-

pending the Second Interim Hearing and subject to all of the terms and conditions in the DIP Credit Agreement, Debtors may obtain DIP Credit Extensions only to the extent necessary to avoid immediate and irreparable harm to Debtors, which, for purposes hereof, shall mean proceeds of DIP Loans used (a) to pay the fees and expenses due and amounts owing by Debtors at any time to DIP Lender under the DIP Financing Documents, (b) for purposes specified (and in amounts not to exceed 115% of those shown) in the Budget, (c) to make payments pursuant to "first day" orders reviewed and approved by the Court, and (d) to pay other expenses that are authorized to be paid, prior to the Second Interim Hearing, under the DIP Credit Agreement. Notwithstanding anything to the contrary herein, Debtors shall not be entitled to pay any professional fees until further order of the Court.  DIP Lender shall not have any obligation or responsibility to make any DIP Credit Extensions (consistent with the discretionary nature of the DIP Facility) or to monitor Debtors' use of the DIP Loans or Cash Collateral and may rely upon Debtors' representations that the amount of DIP Credit Extensions requested at any time, and the use thereof, are in accordance with the requirements of this Order, the DIP Credit Agreement and Bankruptcy Rule 4001(c)(2).  Neither the use of Cash Collateral by the Debtors nor the DIP Loans authorized under this Order shall impair, release or alter any liability of any guarantor, pledgor, co-obligor or surety with respect to the Pre-Petition Debt.

2.      Execution and Delivery of DIP Financing Documents.  Upon execution and delivery thereof, the DIP Financing Documents shall constitute valid and binding obligations of Debtors, enforceable against Debtors in accordance with their terms.  In furtherance of the provisions of paragraph 1 of this Order, Debtors are authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of

-8-

security agreements, pledge agreements, mortgages, deeds of trust, deeds to secure debt, financing statements and intellectual property filings), and to pay all filing and recording fees, in each case as may be necessary or, in the opinion of DIP Lender, desirable to give effect to any of the terms and conditions of the DIP Financing Documents, to validate the perfection of the DIP Liens (as defined below) or as otherwise required or contemplated by the DIP Financing Documents.

3.    <u>DIP Liens</u>.  Subject to the provisions of subparagraph 8(b) below, all DIP Credit Extensions, together with all interest, fees and other charges (including, without limitation, reasonable legal fees) at any time or times payable by Debtors to DIP Lender in connection therewith or otherwise pursuant to the DIP Financing Documents (all such DIP Credit Extensions, interest fees and other charges, including any "Obligations" as such term is defined in the DIP Credit Agreement, are collectively called the **"DIP Obligations"**) shall be, and hereby are, secured by security interests and liens in favor of  DIP Lender with respect to all of the Collateral (collectively, the **"DIP Liens"**), as follows:

(a)    pursuant to Section 364(c)(2) of the Bankruptcy Code, perfected first priority senior security interests in and liens upon all Collateral that, as of the Petition Date, is not subject to other valid, perfected and non-avoidable liens or to valid and unavoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date), as permitted by Section 546(b) of the Bankruptcy Code; and

(b)    pursuant to Section 364(c)(3) of the Bankruptcy Code, perfected junior security interests in and liens upon all Collateral that is subject to valid, perfected and non-avoidable liens in existence on the Petition Date (other than liens in favor of Action or

-9-

any Subordinated Creditor) or to valid and unavoidable liens in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date) as permitted by Section 546(b) of the Bankruptcy Code; and

(c)    pursuant to Section 364(d) and Section 510(a) of the Bankruptcy Code, the DIP Liens shall prime and shall be in senior in priority to all pre-petition liens and security interests with respect to any of the Collateral in which  Action held a first priority security interest as of the Petition Date, when giving effect to the Intercreditor Agreement.

Notwithstanding the foregoing provisions of this paragraph 3 or anything to the contrary in the DIP Financing Documents, the DIP Liens shall not attach to any of the following property: (x) any claims pursuant to Sections 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code (**"Avoidance Claims"**), or (y) any proceeds or property recovered in connection with the successful prosecution or settlement of Avoidance Claims (**"Avoidance Proceeds"**).

4.    <u>Repayment</u>.  The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Financing Documents and as provided herein, without offset or counterclaim.

5.    <u>Use of Cash Collateral</u>.

(a)    As additional adequate protection of Action's interest in Cash Collateral, Debtors shall, promptly after their receipt thereof, remit to Action (in its capacities as pre-petition secured party and DIP Lender) all Cash Collateral at any time in the possession of Debtors; <u>provided</u>, <u>however</u>, that for so long as (i) no Event of Default has occurred under (and as defined in) the DIP Credit Agreement, (ii) all of the conditions precedent to DIP Credit Extensions contained in the DIP Credit Agreement are satisfied, and (iii) the Termination Date has not occurred under (and as

-10-

defined in) the DIP Credit Agreement, Debtors shall be authorized to retain, and to utilize in the ordinary course of its business and for the purposes and in the amounts provided in the Budget, Cash Collateral in the amounts shown in the Budget. Nothing herein shall be deemed to constitute a consent by DIP Lender or Action to any sale or other disposition of any Collateral or an agreement of either of them to release its security interests in any of the Collateral. Unless and until all of the Pre-Petition Debt and DIP Obligations have been paid in full and the DIP Facility has terminated, Debtors shall not be authorized to use any Cash Collateral (i) for any purpose except as otherwise authorized by this Order or (ii) obtained as a result of, or at any time after, the closing of a sale authorized by the Court under Section 363 of the Bankruptcy Code.

(b)     Except as otherwise expressly provided in paragraph 5(a), all proceeds realized from any Collateral shall be remitted directly to Action for application to the Pre-Petition Debt and DIP Obligations.  Such proceeds shall be applied to the Pre-Petition Debt and DIP Obligations as DIP Lender and Action may elect from time to time, subject to the terms and conditions set forth herein.

6.     <u>Adequate Protection of Pre-Petition Lender</u>.  As adequate protection pursuant to Sections 361 and 363 of the Bankruptcy Code for the Debtors' use, consumption, sale, collection or other disposition of any of the Collateral:

(a)     Action is hereby granted replacement liens in and to all of the Collateral that is created, acquired or first arises after the Petition Date (the **"Replacement Liens"**) as partial adequate protection to the extent of the diminution in value of the Collateral caused by the Debtors' use, consumption, sale, collection or other disposition of any Collateral. The Replacement Liens in favor of Action on the Collateral shall be junior in priority to the DIP Liens granted to the DIP Lender and shall be held by Action for the benefit of itself.

(b)      Nothing herein shall be deemed to be a waiver by Action of its rights to request additional or further protection of its interests in any property of Debtors, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner or the conversion or dismissal of the Chapter 11 Case, or to request any other relief in this case, nor shall anything herein or in any of the DIP Financing Documents constitute an admission by Action or DIP Lender of the quantity, quality or value of any Collateral or constitute a finding of adequate protection with respect to the interests of Action in any Collateral.  Action shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale, or other disposition of any of the Collateral, to the extent that the protection afforded by this Order to Action's pre-petition interests in any Collateral proves to be inadequate.

7.      <u>Preservation of Rights Granted Under This Order</u>.

(a)      There shall not be entered in the Chapter 11 Case or in any successor case any order that authorizes the obtaining of credit or the incurrence of indebtedness by Debtors (or any trustee or examiner) that is (i) secured by a security, mortgage or collateral interest or lien on all or any part of the Collateral that is equal or senior to the DIP Liens or (ii) entitled to priority administrative status that is equal or senior to the Superpriority Claim granted to DIP Lender herein; <u>provided</u>, <u>however</u>, that nothing herein shall prevent the entry of an order that specifically provides that, as a condition to the granting of the benefits of clauses (i) or (ii) above, all of

-12-

the DIP Obligations must be indefeasibly paid in full, in cash, from the proceeds of such credit or indebtedness.

(b)      If the Chapter 11 Case is dismissed or converted, then neither the entry of this Order nor the dismissal or conversion of the Chapter 11 Case shall affect the rights of DIP Lender under the DIP Financing Documents or this Order, and all of the respective rights and remedies thereunder of  DIP Lender shall remain in full force and effect as if the Chapter 11 Case had not been dismissed or converted.  It shall constitute an Event of Default if Debtors seek, or if there is entered, any Order dismissing the Chapter 11 Case.  If an order dismissing the Chapter 11 Case is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Liens, Replacement Liens and Superpriority Claim granted to and conferred upon  Action and DIP Lender shall continue in full force and effect and shall maintain their priorities as provided in this Order (and that such liens and Superpriority Claim shall, notwithstanding such dismissal, remain binding on all interested parties) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens, Replacement Liens and Superpriority Claim referred to herein.

(c)      The provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or converting the Chapter 11 Case from Chapter 11 to Chapter 7.

(d)      The DIP Obligations shall not be discharged by the entry of any order confirming a plan of reorganization in the Chapter 11 Cases and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, Debtors have waived such discharge.

(e)    In no event shall DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any Collateral securing any of the DIP Obligations; and in no event shall any DIP Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of Debtors' estates pursuant to Section 551 of the Bankruptcy Code.

8.    <u>Automatic Perfection of DIP Liens</u>.  The DIP Liens shall be deemed valid, binding, enforceable and perfected upon entry of this Order.  DIP Lender shall not be required to file any UCC-1 financing statements, mortgages, deeds of trust, intellectual property filings, security deeds, notices of lien or any similar document or take any other action (including possession of any of the Collateral) in order to validate the perfection of the DIP Liens.  DIP Lender may, in its discretion, file a certified copy of this Order in any filing office in any jurisdiction in which Debtors are organized or have or maintain any Collateral or an office, and each filing office is directed to accept such certified copy of this Order for filing and recording.

9.    <u>Reimbursement of Expenses</u>.  All reasonable costs and expenses incurred by DIP Lender in connection with the negotiation and drafting of the DIP Financing Documents, or any amendments thereto, the preservation, perfection, protection and enforcement of DIP Lender's rights hereunder or under the DIP Financing Documents, or in the collection of the DIP Obligations, including, without limitation, all filing and recording fees and reasonable fees and expenses of attorneys, accountants, appraisers and other professionals incurred by DIP Lender in connection with any of the foregoing, whether any of the foregoing were incurred prior to or after the Petition Date, shall form a part of the DIP Obligations and shall be paid by Debtors in accordance with the terms of the DIP Financing Documents.

-14-

10.    <u>Amendments to DIP Financing Documents</u>.  Debtors and DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Financing Documents, any amendments to and modifications of any of the DIP Financing Documents without further order of the Court on the following conditions:  (i) the amendment or modification must not constitute a material change to the terms of the DIP Financing Documents, (ii) copies of the amendment or modification must be served upon Debtors' 30 largest creditors on a consolidated basis, the U.S. Trustee, and other interested parties specifically requesting such notice, and (iii) notice of the amendment is filed with the Court.  Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court (and, for purposes hereof, a "material change" shall mean a change that operates to shorten the maturity of the DIP Obligations, increase the aggregate principal amount available under the DIP Facility, increase the rate of interest other than as currently provided in or contemplated by the DIP Financing Documents, add specific events of default, enlarge the nature and extent of default remedies available to DIP Lender following an event of default, or is a change that is both material and adverse to Debtors).

11.    <u>Events of Default; Remedies</u>.

(a)    Upon or after the occurrence of an "Event of Default" under (and as defined in) the DIP Credit Agreement, including, without limitation, an Event of Default resulting from the failure of Debtors to pay any of the DIP Credit Extensions when due; breaches of financial, affirmative, and negative covenants in the DIP Loan Documents; the falsity or material inaccuracy of any representations or warranties in the DIP Loan Documents; the appointment of a trustee or examiner with expanded powers, or dismissal or conversion to Chapter 7 of the Chapter 11 Case; confirmation of any plan of reorganization in the Chapter 11 Case, other than one providing for

payment in full, on the effective date, of all of the DIP Credit Extensions owing to DIP Lender and otherwise acceptable to Action; amendment or stay of this Order or any subsequent order on the DIP Motion or reversal, modification, or vacation of any of such orders, whether on appeal or otherwise; the filing of any motion or other request with the Bankruptcy Court seeking authority to use any cash proceeds of any of the Collateral without DIP Lender's consent or Debtors' obtaining any financing under Section 364(d) of the Bankruptcy Code with respect to any of the Collateral; or a final financing order acceptable to DIP Lender is not entered on or before July 31, 2016; then, in any such event, DIP Lender shall be fully authorized, in its sole discretion, to terminate further DIP Credit Extensions under the DIP Facility as provided in the DIP Credit Agreement, to demand payment of all DIP Obligations, and, upon ten (10) business days' prior written notice to counsel for Debtors, any Official Committee appointed in this Chapter 11 Case and the U.S. Trustee, to enforce the DIP Liens with respect to the Collateral and to take all other action and exercise all other remedies under the DIP Financing Documents and applicable law that may be necessary or deemed appropriate by DIP Lender to collect any of the DIP Obligations, to proceed against or realize upon all or any portion of the Collateral as if the Chapter 11 Case or any superseding Chapter 7 case was not pending and otherwise to enforce the DIP Financing Documents and this Order.

(b)     The rights, remedies, powers and privileges conferred upon DIP Lender and Action pursuant to this Order shall be in addition to and cumulative with those contained in the DIP Financing Documents and the Pre-Petition Loan Documents.

12.    Monitoring of Collateral.

(a)     Representatives of DIP Lender shall be authorized upon reasonable notice to visit the business premises of Debtors to inspect any Collateral and to verify or to obtain supporting

-16-

details concerning the financial information to be provided to DIP Lender hereunder or under any of the DIP Financing Documents, all as permitted by the DIP Credit Agreement.

(b)     DIP Lender shall be authorized to retain appraisers, consultants and financial advisors, which appraisers, consultants and advisors shall be afforded reasonable access to the Collateral and Debtors' business premises, during normal business hours, for purposes of monitoring the business of Debtors, verifying Debtors' compliance with the terms of the DIP Financing Documents and this Order, and (to the extent authorized by the DIP Financing Documents) appraising all or any part of the Collateral.

13.     <u>Modification of Automatic Stay</u>.  The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby lifted and terminated as to DIP Lender to the extent necessary to implement the provisions of this Order and the DIP Financing Documents, thereby permitting DIP Lender and Action, *inter alia*, to receive collections of Collateral for application to the Pre-Petition Debt and the DIP Obligations as provided herein, to file or record any UCC-1 financing statements, mortgages, deeds of trust, security deeds and other instruments and documents evidencing or validating the perfection of the DIP Liens and to enforce the DIP Liens upon default subject to the prior notice provisions of this Order.

14.     <u>Effect of Appeal</u>.  Consistent with 11 U.S.C. § 364(e), if any or all of the provisions of this Order are hereafter modified, vacated or stayed on appeal:

(a)     such stay, modification or vacation shall not affect the validity of any obligation, indebtedness, liability or DIP Lien granted or incurred by Debtors to DIP Lender prior to the effective date of such stay, modification or vacation, or the validity, enforceability or

priority of any DIP Lien, priority or right authorized or created under the original provisions of this Order or pursuant to the DIP Financing Documents; and

(b)      any indebtedness, obligation or liability incurred by Debtors to DIP Lender under the DIP Financing Documents prior to the effective date of such stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and DIP Lender shall be entitled to all the rights, remedies, privileges and benefits, including the DIP Liens and priorities granted herein and pursuant to the DIP Financing Documents, with respect to any such indebtedness, obligation or liability.  All DIP Credit Extensions under the DIP Financing Documents are made in reliance upon this Order, and, therefore, the indebtedness resulting from such DIP Credit Extensions prior to the effective date of any stay, modification or vacation of this Order cannot (i) be subordinated, (ii) lose the priority of the DIP Liens or superpriority  administrative claim status, or (iii) be deprived of the benefit of the status of the DIP Liens and Superpriority Claim granted to DIP Lender under this Order or the DIP Financing Documents, as a result of any subsequent order in the Chapter 11 Case, or any superseding case, of Debtors.

15.      <u>Service of Order</u>.  Promptly after the entry of this Order, Debtors shall mail, by first class mail, a copy of this Order, the DIP Motion (and all exhibits attached to the DIP Motion), and a notice of the Second Interim Hearing, to counsel for Pre-Petition Lender and DIP Lender, the Subordinated Creditor, the U.S. Trustee, the 30 largest unsecured creditors of Debtors on a consolidated basis, the Internal Revenue Service, and all known lienholders at their respective last known addresses, and all parties who have filed requests for notices under Rule 2002 of the Bankruptcy Rules, and shall file a certificate of service regarding same with the Clerk of the Court. Such service shall constitute good and sufficient notice of the Second Interim Hearing.

-18-

16.     <u>No Deemed Control</u>.  By consenting to this Order, making DIP Credit Extensions or administering the financing relationship with Debtors pursuant to the DIP Financing Documents, DIP Lender shall not be deemed to be in control of Debtors or their operations or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute) with respect to the operation or management of Debtors.

17.     <u>Binding Effect; Successors and Assigns</u>.  The provisions of this Order shall be binding upon all parties in interest in the Chapter 11 Case, including, without limitation, DIP Lender and Debtors and their respective successors and assigns (including any Chapter 11 trustee hereafter appointed or elected for the estates of Debtors or any Chapter 7 trustee appointed in a superseding Chapter 7 case), and shall inure to the benefit of DIP Lender, Action, Debtors and their respective successors and assigns.  In no event shall DIP Lender have any obligation to make DIP Credit Extensions to any Chapter 7 or Chapter 11 trustee appointed or elected for the estates of Debtors.

18.     <u>Second Interim Hearing</u>.  The Second Interim Hearing shall be held at 1:30 p.m., on July 14, 2016, at the U.S. Bankruptcy Court, Courtroom 1202, 75 Ted Turner Drive SW, Atlanta, Georgia. If any or all of the provisions of this Order are modified, vacated or stayed as the result of any objection timely filed and asserted at the Second Interim Hearing, then, without limiting the provisions of paragraph 16 hereof, any DIP Obligations incurred prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of this Order, and DIP Lender shall be entitled to the protections afforded under Section 364(e) of the Bankruptcy Code  and  to  all  the  rights,  remedies,  privileges,  and  benefits,  including,

-19-

without limitation, the DIP Liens and superiority claim status granted herein and pursuant to the DIP Financing Documents with respect to all such DIP Obligations.

19.    <u>Objection Deadline</u>.  If any party in interest shall have an objection to any of the provisions of this Order, such party shall be authorized to assert such objection at the Second Interim Hearing, provided that a written statement setting forth the basis for such objection is filed with the Court, and concurrently served upon the Office of the United States Trustee at Room 362, U.S. Courthouse, 75 Ted Turner Drive SW, Atlanta, Georgia 30303; counsel for Debtors, Scroggins & Williamson, P.C., One Riverside, 4401 Northside Parkway, Suite 450 Atlanta, Georgia 30327, Attn: J. Robert Williamson, Esq.; and Action Capital Corp., 230 Peachtree Street, N.W., Suite 1910, Atlanta, Georgia 30303, Attn:  Patrick Thom, in each case so that such objections and responses are filed on or before the time of the hearing.  Unless an objecting party shall be and appear at the Second Interim Hearing to assert the basis for such objection before the Court, such objection shall be deemed to have been waived and abandoned by such objecting party.

20.    <u>Inconsistencies</u>.  To the extent that any provisions in the DIP Credit Agreement are inconsistent with any of the provisions of this Order, the provisions of this Order shall govern and control.

**[END OF DOCUMENT]**

Prepared and presented by:
SCROGGINS & WILLIAMSON, P.C.

   /s/ J. Robert Williamson
J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559
ROBERTO BAZZANI

Georgia Bar No. 609464
One Riverside
4401 Northside Parkway
Suite 450
Atlanta, Georgia 30327
T:  (404) 893-3880
F:  (404) 893-3886
E:  rwilliamson@swlawfirm.com
     aray@swlawfirm.com
     rbazzani@swlawfirm.com

*Proposed Counsel for the Debtors*

-21-