IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| *In re* | ) | Chapter 11 |
| | ) | |
| NexxLinx Corporation, Inc., et al., | ) | Jointly Administered Under |
| | ) | Case No. 16-61225-pmb |
| *Debtors.* | ) | |
| | ) | |

### LIMITED OBJECTION OF BRANCH BANKING AND TRUST COMPANY TO DEBTORS' MOTION FOR AN INTERIM ORDER, *INTER ALIA*, AUTHORIZING DEBTORS TO OBTAIN DIP FINANCING

**COMES NOW** Burr & Forman LLP, on behalf of Branch Banking and Trust Company ("BB&T"), a secured party in the above-styled case, and hereby files this limited objection based upon the Debtors' Motion for Interim Order seeking, inter alia, Authorizing Debtors to Obtain Financing [Dkt. # 9] and the Interim Order entered thereon [Dkt. # 24] (collectively, the "DIP Financing Motion") on the following grounds:

### Preliminary Statement

Pursuant to Intercreditor Agreement (as defined herein, the "**ICA**"), BB&T retained "the senior right to receive and/or collect any and all payments or proceeds pertaining to the accounts receivable balance owed to Borrower from NSC Pearson Inc." [ICA para.1]. Further, the ICA stated that if Action received any payment with respect to that payment they will promptly pay over to BB&T such amount. Upon information and belief, proceeds related to the account receivable balance owed by NSC Pearson Inc. in an amount of approximately $500,000 were received Borrower and not paid over to BB&T as required. BB&T requests language throughout the proposed Order on the DIP Financing Motion to clarify that BB&T did not agree to subordinate to Action all of its liens and security interests and BB&T rights to proceed to recover

27760215 v1

such proceeds of the NSC Pearson Inc. account payable are not modified or affected by the proposed Order on the DIP Financing Motion.

Further, BB&T seeks adequate protection of its interest in the pre-petition collateral that is declining in value and attempting to be overrun by the DIP Financing Motion.

### Limited Objection

1. Pursuant to the Intercreditor Agreement dated October 8, 2015 by and between Action Capital Corporation ("**Action**"), the Borrower (as defined therein and constituting the majority of the named Debtors), and BB&T (the "**ICA**") Action agreed that it would "remain junior to and subordinate to BB&T as it related to accounts receivable balance owed to Borrower from NSC Pearson Inc." [ICA para. 1]. A true and correct copy of the ICA is attached hereto as Exhibit "A."

2. Upon information and belief, proceeds related to the account receivable balance owed by NSC Pearson Inc. in an amount of approximately $500,000 were received Borrower and not paid over to BB&T as required but instead Action received payment with respect to the Bank Collateral (as defined in the ICA).

3. BB&T requests language throughout the proposed Order on the DIP Financing Motion to clarify that BB&T did not agree to subordinate to Action all of its liens and security interests and BB&T rights to proceed to recover such proceeds of the NSC Pearson Inc. account payable are not modified or affected by the proposed Order on the DIP Financing Motion.

4. BB&T has spoken with Debtors' counsel and hopes that reasonable accommodations can be reached to satisfy this concern.

5. Separately, BB&T is entitled to adequate protection payments based upon the diminution of value to its secured position. Per the Debtor's schedules [Dkt. #48, page 65], BB&T was a secured creditor owed approximately $530,000 and Action was a secured creditor owed approximately $3,730,000 for a total of secured debt equal to approximately $4.2 million. The assets, not including net operating losses, which consisted of primarily accounts receivable totaled approximately $4.4 million. BB&T is secured with a minimal equity cushion (approximately $200,000) at the time of the bankruptcy filing. The Debtor bears the burden of proof on the issue of adequate protection. 11 U.S.C. § 364(d)(2).

6. Adequate protection payments are necessary to ensure that that status doesn't change as the case proceeds. BB&T is entitled to adequate protection payments. 11 U.S.C. §363(e). This adequate protection is meant to protect the creditor from a diminution in value of its interest in collateral during the period of its use. *In re Worldcom, Inc.*, 304 B.R. 611, 618-619 (Bankr. S.D.N.Y. 2004). What constitutes adequate protection may take different forms on a case-by-case basis, but BB&T asserts that proper adequate protection in this case are monthly payments in cash.

7. Prior to the bankruptcy filing, BB&T fully accelerated the debt owed by various Debtors due to their failure to make certain monthly payments due and owing under an existing Note entered into on November 30, 2015.

8. Generally speaking, adequate protection protects a pre-existing lienholder against a decrease in the value of its collateral. *In re Planned Systems, Inc.*, 78 B.R. 852, 861-62 (Bankr. S.D. Ohio 1987). This standard applies equally with respect to a proposed "priming" financing under Bankruptcy Code section 364(d)(1)(B). *In Re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr.

27760215 v1                                     3

N.D.Ga. 1988) (Debtor must show pursuant to § 364(d) that (1) the Debtor cannot obtain credit otherwise; and (2) the lienholder, which will be supplanted, or "primed," by the superpriority lienholder, is adequately protected); *In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996) ("The goal of adequate protection for purposes of the provision entitling a debtor to obtain financing secured by liens senior to all other interests is to safeguard the secured creditor from diminution in the value of its interests."); *In re Aqua Assoc.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991);

9.      The most common way to establish adequate protection is to demonstrate the existence of an "equity cushion." *See, e.g., In re C.B.G Ltd.*, 150 B.R. 570, 572-73 (Bankr. M.D. Pa. 1992) (16% equity cushion <u>not adequate</u> to support priming lien); *In re Plabell Rubber Products, Inc.*, 137 B.R. 897, 899-901 (Bankr. N.D. Ohio 1992) (extensive equity cushion adequate).  Here the equity cushion of approximately $200,000 does not appear to be sufficient to, alone, serve as adequate protection. As such, cash payments are reasonable.

10.     Courts have rejected efforts by debtors to prime a prepetition lienholder absent tangible evidence that the lienholder is adequately protected. *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897 (Bankr. N.D. Ohio 1992) (denying debtor's motion to obtain post-petition credit which primed junior lienholder where, among other reasons, debtor failed to show the junior lienholder was adequately protected); *In re C.B.G. Ltd.*, supra.

11.     Here, BB&T was fully secured pre-petition. The petition date is the moment in time we should view and, subject to reductions of pre-petition collateral by collection of the same, BB&T's secure position is deteriorating.

WHEREFORE, BB&T respectfully requests that the foregoing objections be allowed and BB&T is paid adequate protection cash payments.

Respectfully submitted, this 14th day of July, 2016.

                                              BURR & FORMAN LLP

                                               /s/ *Graham H. Stieglitz*
                                               Graham H. Stieglitz
                                               Georgia Bar No. 682047
                                               Attorney for BB&T

Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Georgia  30363
gstieglitz@burr.com
(404) 685-4316 [dial]
(404) 214-7945 [telecopier]

27760215 v1

5

# EXHIBIT A

# INTERCREDITOR AGREEMENT

This Intercreditor Agreement ("**Agreement**") is entered into effective as of the 8th day of October, 2015, by and between ACTION CAPITAL CORPORATION ("**ACTION**") located at 230 Peachtree Street, Suite 1910, Atlanta, GA 30303 and BRANCH BANKING AND TRUST COMPANY ("**BB&T**" or "**BANK**") located at 13000 Deerfield Parkway, Suite 350, Alpharetta, GA.

W I T N E S S E T H:

WHEREAS, ACTION and BANK have both loaned or intend to loan money or otherwise extend credit to NexxLinx Corporation Inc., CustomerLinx of North Carolina, Inc., CustomerLinx of New York, Inc., NexxLinx of Texas Inc., NexxLinx of Maine, Inc., and NexxLinx Global Inc. (who are jointly and severally referred to as "**Borrower**") located at 3565 Piedmont Road, NE Building 2-100, Atlanta, GA 30305; and

WHEREAS, BANK holds a prior security interest in certain assets of Borrower including without limitation all accounts receivable and earned and unbilled revenue of Borrower (the "**BANK Lien**"); and

WHEREAS ACTION desires to have with respect to BANK a priority security interest with respect to certain accounts receivable and earned and unbilled revenue of Borrower ("**ACTION Lien**"); and

WHEREAS, BANK has agreed to subordinate the BANK Lien in certain accounts receivable of Borrower to the ACTION Lien all as set forth hereinbelow.

NOW, THEREFORE, for and in consideration of the receipt by BB&T of a payment of One Million Seven Hundred Ninety One Thousand Four Hundred and One Dollars and Two cents ($1,791,401.02), the premises, the mutual promises, covenants, agreements and undertaking herein contained, and other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, the parties hereto have agreed and do hereby mutually agree as follows:

1. With respect to all of Borrower's accounts, accounts receivable, earned and unbilled revenue, contract rights, chattel paper, documents, instruments, and general intangibles and all proceeds pertaining thereto except for the accounts receivable balance owed to Borrower from NSC Pearson Inc. (the "**ACTION COLLATERAL**") BANK shall subordinate the BANK Lien to the ACTION Lien. The ACTION Lien will remain junior and subordinate to the BANK Lien as it relates to the accounts receivable balance owed to Borrower from NSC Pearson Inc. Therefore, (i) ACTION shall have the senior right to receive and/or collect any and all payments or proceeds of the ACTION COLLATERAL as a result of such subordination, which payments or proceeds shall be applied to the obligations of Borrower to ACTION, and (ii) BANK thereafter shall have the senior right to receive and/or collect any and all payments or proceeds pertaining to the accounts receivable balance owed to Borrower from NSC Pearson Inc. (the "**BANK COLLATERAL**") which payments or proceeds shall be applied to the obligations of Borrower to BANK..

2. In the event ACTION shall receive any payment with respect to the BANK COLLATERAL, ACTION shall then promptly (but in any event within ten business days of having mistakenly

25397037 v2

received such payment) pay over to BANK such payment. In the event BANK shall receive any payment with respect to the ACTION COLLATERAL, BANK shall then promptly (but in any event within ten business days of having mistakenly received such payment) pay over to ACTION such payment.

3. ACTION will provide to BB&T on a monthly basis an aging of Borrower's accounts receivable, cash receipts and open invoices.

4. ACTION has no specific financial covenants in its Factoring & Security Agreement and events of default include appointment of a receiver or trustee or insolvency or bankruptcy filing, material misrepresentations and/or providing false of incorrect information, or breach of any warranty or covenants as specified in the agreement. ACTION will notify BB&T of any material default in its agreement.

5. BB&T will notify ACTION of any default under their agreement with Borrower and provide a cure period of ten (10) days.

6. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof.

7. In the event any provision of this Agreement or that application of such provision to any person or circumstance shall for any reason and to any extent be deemed invalid or unenforceable, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby, but rather shall be enforced to the full extent permitted by law. This Agreement may be amended only in a writing signed by ACTION and BB&T.

8. No waiver of any provision of this Agreement shall be effective unless such waiver is in writing and signed by the party against which the waiver is to be enforced.

9. This Agreement may be executed in one or more counterparts, each of which will be considered an original counterpart, and will become a binding agreement when BANK, ACTION, and Borrower have each executed one counterpart. Each of the parties hereto agrees that a signature transmitted by facsimile or other electronic transmission will be effective to bind the party so transmitting its signature.

10. This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia.

*[Remainder of the page intentionally blank]*

25397037 v2

IN WITNESS WHEREOF, the undersigned have entered into this Agreement effective the day and year first above written.

"ACTION"

ACTION CAPITAL CORPORATION

BY:_____

TITLE: PRESIDENT


"BANK"

BRANCH BANKING & TRUST COMPANY

BY:_____

TITLE: VICE PRESIDENT


READ AND CONSENTED TO THIS ___ DAY OF OCTOBER 2015

"BORROWER"

NEXXLINX CORPORATION INC.

BY:_____

TITLE:_____

25397037 v2