IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| NEXXLINX CORPORATION, INC., et al., | ) | Jointly Administered Under |
| | ) | CASE NO. 16- 61225-PMB |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |

_____

**DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION**
_____

**SCROGGINS & WILLIAMSON, P.C.**

**J. Robert Williamson**
**Georgia Bar No. 765214**
**Ashley Reynolds Ray**
**Georgia Bar No. 601559**
**One Riverside**
**4401 Northside Parkway**
**Suite 450**
**Atlanta, GA 30327**
**404.893.3880**

**ATTORNEYS FOR NEXXLINX CORPORATION, INC., ET AL.**
**DEBTORS AND DEBTORS-IN-POSSESSION**

**Dated: February 10, 2017**


**NO MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS APPROVED BY THE BANKRUPTCY COURT HAVE BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT (AS DEFINED IN THIS PLAN) HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST AND IMPAIRED INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THIS PLAN.  THE PROPONENTS RESERVE THE RIGHT TO FILE AN AMENDED OR AMENDED AND RESTATED PLAN AND DISCLOSURE STATEMENT FROM TIME TO TIME.  REFERENCE IS MADE TO THE DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTORS' HISTORY, BUSINESS, PROPERTIES, AND RESULTS OF OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE REORGANIZATION CASE, AND THE MEANS OF FUNDING THIS PLAN.  ALL HOLDERS OF CLAIMS AND INTERESTS ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT WILL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION

Nexxlinx Corporation, Inc., ("**Nexxlinx**"); NexxLinx Global, Inc. ("**NGI**"); NexxLinx of New York, Inc. ("**NNY**"); CustomerLinx of North Carolina, Inc. ("**CNC**"); Microdyne Outsourcing Inc. ("**MOI**"), NexxLinx of Texas, Inc. ("**NTX**"), and NexxPhase, Inc. ("**Nexxphase**"), debtors and debtors-in-possession in the above-styled, jointly administered Chapter 11 cases (collectively, the "**Debtors**"), hereby propose the following Second Amended Plan of Reorganization (the "**Plan**"). For a discussion of (a) the Debtors' history, business, properties, and results of operations; (b) a summary of significant events which have occurred to date in this Case; (c) a summary of the means of funding the Plan; and (d) the procedures for voting on the Plan and certain related matters, all holders of claims should refer to Debtors' Second Amended Disclosure Statement to Accompany Debtors' Second Amended Plan of Reorganization filed on February 10, 2017 (the "**Disclosure Statement**"). The Debtors are proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code. All Holders of Claims against and Equity Interests in the Debtors entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

No materials other than the Disclosure Statement and any exhibits and schedules attached to or referenced in the Disclosure Statement have been approved by the Bankruptcy Court or the Proponent for use in soliciting acceptances or rejections of the Plan.

NOTWITHSTANDING ANYTHING IN THIS PLAN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTORS' BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, TRANSACTIONS TO WHICH THE DEBTORS WERE OR ARE A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON SECURED CREDITORS, UNSECURED CREDITORS, OR HOLDERS OF INTERESTS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTORS AND NOT TO ANY OTHER PARTY.

## ARTICLE I
## DEFINED TERMS

For purposes of this Plan, unless defined elsewhere herein, the following terms shall have the respective meanings ascribed to them below. Capitalized terms shall refer to the terms as defined in this Article. Unless otherwise indicated, the singular shall include the plural, the plural shall include the singular and the masculine shall include the feminine and the feminine shall include the masculine in gender. The term "including" shall mean "including, without limitation." Any term in the Plan which is not defined below but which is used in the Bankruptcy Code, Title 11 U.S.C., shall have the meaning ascribed to it in the Bankruptcy Code.

**1.01** *"Action" or "Action Capital"* means Action Capital Corporation, the Debtors' senior secured pre-petition lender and the Debtors' post-petition Debtor-in-Possession lender.

    **1.02** *"Adjusted Cash Available"* shall mean total revenue *less* (i) cost of goods sold, (ii) indirect expenses, (iii), Cap-X- FF&E, (iv) cure payments to Focus, (v) cure payments for NC facility lease, (vi) cure payments for Duluth facility lease, (vii) and severance payments *plus* (i) depreciation, and (ii) amortization/ write-downs.

    **1.03** *"Administrative Expense"* means—

    (a)    any cost or expense of administration of the Reorganization Case that is allowed under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application or other Bankruptcy Court-approved pleading seeking such expense in the Reorganization Case, including—

    (1)    any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtors (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date;

    (2)    any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in Possession in the ordinary course of their businesses (including any Postpetition Trade Claim);

    (3)    any payment required to be made to cure a default under an Assumed Contract, including any Cure Claim, to the extent allowed by a Final Order of the Bankruptcy Court;

    (4)    any Claim granted administrative-expense priority status by a Final Order of the Bankruptcy Court;

    (5)    any Claim by a Governmental Authority for non-ad valorem taxes that are assessed *in personam* (and for interest and/or penalties related to such taxes) for any tax year or period, to the extent such Claim accrues Postpetition; and

    (6)    any Compensation Claim;

    (b)    any superpriority Claim;

    (c)    all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930; and

    (d)    any and all other costs or expenses of administration of the Reorganization Case that are allowed by Final Order of the Bankruptcy Court.

    The terms "Administrative Expense" and "Administrative Expense Claim" do not include any Priority Tax Claim, any Priority Claim, any Disallowed Claim, or any of the Claims designated in Classes under the Plan.   In no event shall any Claim set forth on a Proof of Claim (or otherwise) be deemed to be an Administrative Expense Claim (except for any claim by a governmental unit

for taxes (and for interest and/or penalties related, to such taxes) due from the Debtors for any Postpetition tax year or period).

**1.04** *"Administrative Expense Claim"* means any Claim for the payment of an Administrative Expense. The terms "Administrative Expense(s)," "Administrative Claim(s)," and "Administrative Expense Claim(s)" are used interchangeably in this Plan.

**1.05** *"Administrative Expense Claimant"* shall mean the holder of an Administrative Expense Claim.

**1.06** *"Administrative Expense Bar Date"* means the last day for filing an application or other Bankruptcy Court-approved pleading for an Administrative Expense other than a Claim pursuant to 11 U.S.C. §503(b)(9). The Administrative Expense Bar Date will be thirty (30) days after the Effective Date.

**1.07** *"Affiliate"* has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

**1.08** *"Allowed Amount"* means the dollar amount in which a Claim is Allowed.

**1.09** *"Allowed Claim"* means a Claim or that portion of a Claim against one or more of the Debtors that is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) or (b) above, as to which either (x) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) any objection made has been determined and the Claim has been allowed by a Final Order (but only to the extent so allowed). "Allowed Claim" will also include a Claim that is allowed by the Bankruptcy Court (a) in any contract, instrument, or other agreement or document entered into in connection with the Plan; (b) in a Final Order; or (c) pursuant to the terms of the Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim) has a corresponding meaning. Notwithstanding any other provision of the Plan, the term Allowed Claim shall not include any Claim held by a creditor against which the Debtors have asserted a Cause of Action that has the effect of precluding a Distribution with respect to such Claim. An Allowed Claim shall not include any interest accrued after the Petition Date (on any Claim other than a Secured Claim) or any penalty.

**1.10** *"Allowed Class ... Claim"* means an Allowed Claim in the particular Class(es) or categories described.

**1.11** *"Assumed Contract"* means any Executory Contract or Unexpired Lease assumed by the Debtors in the Reorganization Case pursuant to a Final Order of the Bankruptcy Court,

- 5 -

including but not limited to the Confirmation Order confirming the Plan once it becomes a Final Order.

**1.12** *"Assets"* or **"Property"** shall mean all property of the Debtors, the Reorganized Debtor and the Estates as defined in Section 541 of the Bankruptcy Code, including without limitation all right, title, and interest in and to any Avoidance Actions or other Causes of Action that the Reorganized Debtor or the Estates may have as of the Effective Date or any time thereafter.

**1.13** *"Avoidance Actions"* shall mean any actions, causes of action, claims, demands, suits, or rights, created or arising in favor of the Debtors, the Reorganized Debtor or their Estates under the Bankruptcy Code, (a) under applicable law, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, or (b) created or arising in favor of the Debtors or their Estates under the Bankruptcy Code, including all claims, rights and causes of action arising under Section 510 or under any of Sections 542 through 553 of the Bankruptcy Code, in each case regardless of whether such actions, causes of action, claims, demands, suits or rights are commenced prior to or after the Effective Date. Such Avoidance Actions shall survive confirmation of the Plan.

**1.14** *"Ballot"* means the ballot accompanying the Disclosure Statement upon which Holders of Impaired Claims or Impaired Interests entitled to vote on the Plan will indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

**1.15** *"Ballot Date"* shall mean the date set by the Bankruptcy Court for receipt of Ballots indicating acceptance or rejection of this Plan.

**1.16** *"Bankruptcy Case,"* **"Reorganization Case"** or *"Case"* shall mean the Debtors' Chapter 11 jointly administered cases identified according to the following bankruptcy case number, Chapter 11 Case No. 16-61225-pmb, now pending before the Court, as such may be substantively consolidated under the Plan.

**1.17** *"Bankruptcy Code"* or **"Code"** means Title 11 of the United States Code (11 U.S.C. §§101 *et seq.*), as in effect on the Petition Date, together with all amendments and modifications to the Code that were subsequently made applicable to the Reorganization Case.

**1.18** *"Bankruptcy Counsel"* means Scroggins & Williamson, P.C., in its Bankruptcy Court-approved capacity as Chapter 11 bankruptcy counsel to the Debtors.

**1.19** *"Bankruptcy Court"* or **"Court"** means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Reorganization Case.

**1.20** *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (N.D. Ga. L.B.R.), as in effect on the Petition Date, together

with all amendments and modifications to the Bankruptcy Rules that were subsequently made applicable to the Reorganization Case.

**1.21** **_"Bar Date"_** means 5:00 p.m. (Eastern) on October 17, 2016, the last date for the filing of proofs of claim, proofs of interest and requests for payment of administrative expense claims under 11 U.S.C. §503(b)(9) against any of the Debtors**.**

**1.22** **_"BB&T"_** means Branch Banking and Trust Company, the Debtors' junior secured pre-petition creditor.

**1.23** **_"Business Day"_** means any day other than a Saturday, Sunday, or "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)).

**1.24** **_"Cash"_** means Cash, Cash equivalents, and other readily marketable direct obligations of the United States of America, as determined in accordance with Generally Accepted Accounting Principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful currency of the United States of America, a certified check, a Cashier's check, a wire transfer of immediately available funds from any source, or a check from the Debtors drawn on a domestic bank.

**1.25** **_"Causes of Action"_** means any and all of the Estates' and the Debtors' actions, Claims, demands, rights, defenses, counterclaims, suits, Causes of Action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate in law, equity or otherwise, including all Avoidance Actions and rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any and all other Claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all Claims against any members, officers, directors, managers or employees of the Debtors and including Claims of the type referred to in the Disclosure Statement; provided, however, that, when used in the Plan, the term "Causes of Action" does not include any Claims, obligations, suits, judgments, damages, rights, remedies, Causes of Action, charges, costs, Debts, indebtedness, or Liabilities which are released or waived pursuant to Article VII of the Plan or by order of the Bankruptcy Court.   Some of the Causes of Action may be described in further detail in the Disclosure Statement.   A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or the Disclosure Statement.   Causes of Action shall include, but not be limited to, those payments and other transactions identified in the Schedules. The Reorganized Debtor will not be estopped or precluded under any theory from pursuing the Causes of Action.

**1.26** **_"Claim"_** has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code.   Notwithstanding anything to the contrary contained in the Plan, when used in the Plan, the term "Claim" will be given the broadest possible meaning permitted by applicable law and will include all manner and type of claim, whenever and wherever such claim may arise.

- 7 -

**1.27** *"Claimant"* shall mean the holder of a Claim.

**1.28** *"Claims Litigation"* shall mean any and all litigation or proceedings arising out of objections to Claims asserted against the Estate(s), or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estate(s).

**1.29** *"Class"* means a category of Claims or Equity Interests classified together as described in Article III of the Plan, pursuant to Section 1122(a) of the Bankruptcy Code.

**1.30** *"Clerk"* means the Clerk of the Bankruptcy Court.

**1.31** *"Confirmation"* or *"Confirmation of the Plan"* means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

**1.32** *"Confirmation Date"* means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

**1.33** *"Confirmation Hearing"* means the hearing(s) held by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

**1.34** *"Confirmation Order"* means the order entered by the Bankruptcy Court in the Reorganization Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, which order will be in form and substance reasonably satisfactory to the Debtors, and will include any amendments, supplements or modifications thereto made with the consent of the Debtors, or as determined by the Bankruptcy Court.

**1.35** *"Consummation Date"* shall mean the date on which the Reorganized Debtor makes the final Distribution in accordance with the Plan.

**1.36** *"Contingent"* with reference to a Claim, shall mean a Claim that has not accrued and that is dependent on a future event that may or may not occur.

**1.37** *"Creditor"* means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, and any other Claims classified in the Plan.

**1.38** *"Creditor Profit Sharing Payments"* shall mean payments by the Reorganized Debtor to the Creditor Trust on an annualized basis for calendar years 2017 through 2025 in an amount equal to ten percent (10%) of Adjusted Cash Available, if any, to be calculated as set forth in Exhibit A to the Disclosure Statement.

**1.39** *"Creditor Trust"* shall mean the trust created pursuant to the Creditor Trust Agreement and Article 6, Section 6.09 of this Plan.

**1.40** *"Creditor Trust Agreement"* shall mean the agreement governing the formation and conduct of the Creditor Trust, which is attached hereto as Schedule 6.09.

**1.41** *"Creditor Trust Assets"* shall mean:

      (a)     all Avoidance Actions other than Excluded Causes of Action;

      (b)     all rights of the Debtors, if any, against any of the following: Wounded Warrior Partnership / Bobby Dodd Institute / Covation, VetConnexx, IntegraLinx, and Pearson;

      (c)     all claims against any former director and/or officer of the Debtors which (i) are not released by the Plan, or (ii) do not constitute Excluded Causes of Action;

      (d)     all rights to and claims of the Estates under the Debtors' director and officer's liability insurance policy;

      (e)     Debtors' interest in SaviLinx;

      (f)     all reversionary or other rights in the escrow established as a holdback in connection with the sale of assets of NexxPhase, Inc. to Contact Solutions, LLC; and

      (g)     All amounts paid to the Creditor Trust under the Plan.

**1.42** *"Creditor Trust Beneficiaries"* means all individuals and entities entitled to Distributions from the Creditor Trust under the Plan.

**1.43** *"Creditor Trustee"* means the Person appointed by the Creditors Committee in consultation with the Debtors to oversee and administer the Creditor Trust pursuant to this Plan.

**1.44** *"Creditors Committee"* or *"Committee"* means the Official Committee of Unsecured Creditors, appointed by the United States Trustee in the Reorganization Case pursuant to Section 1102 of the Bankruptcy Code, as the membership of such committee has been or may be modified by the United States Trustee.

**1.45** *"Cure Claim"* means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtors pursuant to Section 365(b) of the Bankruptcy Code or otherwise, and any Claim for a default (monetary or nonmonetary), arising from, relating to, or in connection with the assumption by the Debtors of any Assumed Contract.

**1.46** *"Cure Claim Submission Deadline"* means and shall occur on the same day as the Voting Deadline.

**1.47** *"Debt"* has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**1.48** *"Debtors," "Debtors in Possession" or "Nexxlinx"* means collectively, Nexxlinx Corporation, Inc.; NexxLinx Global, Inc.; NexxLinx of New York, Inc.; NexxLinx of Texas, Inc.; CustomerLinx of North Carolina, Inc.; Microdyne Outsourcing Inc., and NexxPhase, Inc.

**1.49** *"Designated Notice"* means notice and an opportunity for a hearing as defined in Section 102(a) of the Bankruptcy Code, with notice limited to the Reorganized Debtor, the United States Trustee, the Creditor Trustee or their respective counsel, and other parties in interest who, after entry of the Confirmation Order, file a request for such notice with the clerk of the Court and serve a copy of such notice on counsel to the Debtors and counsel to the Creditor Trustee.

**1.50** *"Disallowed Claim"* shall mean: (a) a Claim, or any portion thereof, that has been disallowed by a Final Order of the Court or otherwise in accordance with the Plan; (b) a Claim that has been listed in the Schedules in the amount of zero dollars or an unknown amount or as contingent, disputed or unliquidated, and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law; or (c) a Claim that has not been listed in the Schedules and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court or other applicable law.

**1.51** *"Disclosure Statement"* means the Disclosure Statement to accompany the Plan, including all attached exhibits, appendices, and schedules, as submitted and filed by the Debtors pursuant to Section 1125 of the Bankruptcy Code in respect of the Reorganization Case and approved by the Bankruptcy Court as containing "adequate information" as that term is defined by Section 1125(a)(1) of the Bankruptcy Code, in the Disclosure Statement Approval Order, as such Disclosure Statement has been and may be amended, supplemented, modified, or amended and restated from time to time.

**1.52** *"Disclosure Statement Approval Order"* means the Order Approving Disclosure Statement entered in the Reorganization Case.

**1.53** *"Disputed Claim"* means:

(a) any Claim (other than a Disallowed Claim) that has not been Allowed by an order of the Bankruptcy Court as to which:

(1) a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court and

(2) an objection has been or may be timely filed or deemed filed under applicable law and any such objection has not been

(A) withdrawn,

(B) overruled or denied by an order of the Bankruptcy Court, or

(C) sustained by an order of the Bankruptcy Court.

(b)    a Claim that has not been Allowed by an order of the Bankruptcy Court, whether or not an objection has been or may be timely filed, if:

(1)    the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules,

(2)    the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules,

(3)    any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated,

(4)    no corresponding Claim has been scheduled in the Schedules, or

(5)    the Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect of the Claim.

(c)    to the extent that an objection relates to the allowance of only a part of a Claim, the Claim to the extent of the objection, or

(d)    to the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, the amount specified in the Proof of Claim that is in excess of the amount of the Claim as scheduled.

**1.54**    *"Distribution"* shall mean Cash, Property, interests in Property or other value distributed under this Plan to the Holders of Allowed Claims.

**1.55**    *"Distribution Date"* shall mean any date that the Creditor Trustee makes a Distribution or payment to holders of Allowed Claims in Class 9, as set forth in Article V, Section 5.11.

**1.56**    *"Distribution Record Date"* shall mean the date that is fifteen (15) calendar days prior to a Distribution Date.

**1.57**    *"Docket"* means the docket or dockets in the Reorganization Case maintained by the Clerk.

**1.58**    *"Effective Date"* means the date on which the Debtors file a notice of Effective Date on the Docket in the Bankruptcy Case after satisfaction of all conditions precedent which shall in no event be later than thirty (30) days after the Confirmation Order becomes a Final Order.

**1.59**    *"Entity"* has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

**1.60**    *"Equity Interests"* or *"Interests"* means any equity interest of a member and/or shareholder in one or more of the Debtors.

**1.61**    *"Estates"* means collectively, the Estates created for the Debtors under Section 541 of the Bankruptcy Code upon the commencement of the Reorganization Case.

**1.62** *"Estimation Hearing"* means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

**1.63** *"Excluded Causes of Action"* shall mean all Causes of Actions against or which could be brought against a party (i) to an Assumed Contract, (ii) to collect on outstanding accounts receivable, (iii) for claims covered under existing insurance policies other than claims covered under the Debtors' officer and director liability insurance policy, (iv) who was an employee of the Debtors during the Chapter 11, (vi) for Claims released under the Plan, (vii) owned or controlled by D. Alan Quarterman, including but not limited to Jet Capital and (viii) relating to any Assets of the Debtors or the Estates which are not Creditor Trust Assets.

**1.64** *"Executory Contract"* means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.65** *"Final Decree"* means the Final Order of the Bankruptcy Court entered pursuant to Bankruptcy Rule 3022 closing the Case.

**1.66** *"Final Decree Date"* means the date on which a Final Decree has been entered closing the Case.

**1.67** *"Final Order"* means—

(a) an order, judgment, ruling, or other decree (or any revision, modification, or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court that has jurisdiction over any proceeding in connection with the Reorganization Case for the purpose of such proceeding, which order, judgment, ruling, or other decree has not been reversed, vacated, stayed, modified, or amended and as to which:

(1) no appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has expired, or

(2) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or

(b) a stipulation or other agreement entered into which has the effect of any such order, judgment, ruling, or other decree with like finality.

**1.68** *"Governmental Authority"* means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality, or administration of the United States, a foreign country, or any state, or any provincial, territorial, municipal, state, local, or other governmental Entity in the United States of America or a foreign country.

**1.69** *"Holder"* means:

(a)    as to any Claim:

(1)    the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim;

(2)    if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as shown on the Schedules or books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court; or

(3)    if the owner or Holder of such Claim has transferred the Claim to a third party, advised the Debtors in writing of such transfer and transferee, and filed notice of the transfer and transferee with the Clerk of the Bankruptcy Court as required by Bankruptcy Rule 3001(e); and

(b)    as to any Equity Interest, all owners of Equity Interests as of the Confirmation Date.

**1.70** *"Impaired"* means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.71** *"Insurance Coverage"* means any insurance coverage under any Insurance Policy that is available for the payment of liability or damages arising out of any claim against the Debtors or any officer, directors, manager or employee of the Debtors.

**1.72** *"Insurance Policy"* means any insurance policy in effect at any time on or before the Effective Date owned by the Debtors and/or naming one or more of the Debtors as an insured or additional insured, or otherwise affording the Debtors Insurance Coverage.

**1.73** *"Intellectual Property"* means any interest of the Debtors or the Estates in Property consisting of general intangibles, intellectual property, trademarks, tradenames, goodwill, training materials, web addresses and domain names relating to the business conducted by the Debtors.

**1.74** *"Intercompany Claim"* means any Claim asserted by any Debtor against another Debtor, including but not limited to, intercompany receivables and payments made in the ordinary course of the Debtors' businesses.

**1.75** *"Liabilities"* means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now, or hereafter owing, arising, due, or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, of or relating to one or more of the Debtors, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtors or any predecessor, successor, or assign thereof, the Property, the business or operations of the Debtors, the Reorganization Case, or the Plan, including any and all liabilities, obligations,

- 13 -

judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, as used in the Plan, the term "Liabilities" does not include any post confirmation or post Effective Date payment obligation expressly set forth and preserved in the Plan.

1.76   *"Lien"* has the meaning ascribed to it in section 101(37) of the Bankruptcy Code and, with respect to any asset or Property, includes any mortgage, pledge, security interest, lien, right of first refusal, option, or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or Property, whether voluntary or involuntary and whether arising by law, contract, or otherwise.   Any lien avoided in accordance with Sections 544, 545, 547, 548, or 549 of the Bankruptcy Code shall not constitute a Lien.

1.77   *"Liquidity Event"* means any transaction or series of related transactions outside of the ordinary course of business of the Reorganized Debtors that (a) would provide consideration be paid to (i) the New Value Equity Participants of the Reorganized Debtor on account of their equity interests in the Reorganized Debtor, or (ii) management of the Reorganized Debtor (excluding any authorized incentive compensation), or (b) management of the Reorganized Debtor determines will result in (and actually does result in) sufficient excess proceeds to accelerate all future payments to Class 9, as set forth in this Plan.

1.78   *"New Equity Interests"* means one-hundred (100%) percent of the equity interests in the Reorganized Debtor, to be issued on or before the Effective Date, in accordance with Article VI, Section 6.03 of the Plan.

1.79   *"New Value Equity Contribution"* means the sum of Fifty Thousand Dollars ($50,000.00) and the waiver of Claims in the amount of not less than Two Million One Hundred Ninety-Four Thousand Two Hundred and One Dollars and Fourteen Cents ($2,194,201.14) which shall be contributed by the New Value Equity Participants to the Reorganized Debtor on or before the Effective Date, and which may be used as partial funding for the Creditor Trust.

1.80   *"New Value Equity Participants"* means New Five Paces Ventures, LLC, Five Paces Ventures, LLC, Five Paces Ventures Management, LLC and D. Alan Quarterman, who shall make and/or procure the New Value Equity Contribution and shall be issued 100% of the New Equity Interests in the Reorganized Debtor as of the Effective Date.

1.81   *"Person"* means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency, or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

1.82   *"Petition Date"* means June 28, 2016 (or in the case of NexxPhase, July 14, 2016), the date on which the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

**1.83** *"Plan," "the Plan,"* or *"this Plan"* means the Second Amended Plan of Reorganization proposed by the Debtors dated February __, 2017 (together with all Exhibits to the Plan), as the Plan may be amended, supplemented, modified, or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

**1.84** *"Plan Documents"* means all documents that aid in effectuating the Plan, including, without limitation, all documents filed with the Bankruptcy Court at or before the Confirmation Hearing, and including the Confirmation Order.

**1.85** *"Postconfirmation"* means arising or accruing on or after the Confirmation Date.

**1.86** *"Post-Confirmation Committee"* shall mean the entity formed as of the Effective Date, pursuant to Article 6, Section 6.16 of this Plan, to succeed to any and all rights of the Committee, as well as the other additional rights and obligations provided under the Plan.

**1.87** *"Postpetition"* means arising or accruing on or after the Petition Date and before the Effective Date.

**1.88** *"Postpetition Trade Claims"* shall mean Administrative Claims incurred Postpetition in the ordinary course of business of the Debtors (such as trade and vendor claims), on ordinary course business terms, and which are unrelated to the administration of the bankruptcy estate, exclusive of any obligations to employees of the Debtors.

**1.89** *"Prepetition"* means arising or accruing prior to the Petition Date.

**1.90** *"Priority Claim"* means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) or subparagraph (9) of Section 507(a) of the Bankruptcy Code and that is not an Administrative Expense Claim, Priority Tax Claim, Secured Claim, or Unsecured Claim.

**1.91** *"Priority Claimant"* shall mean the holder of a Priority Claim.

**1.92** *"Priority Tax Claim"* means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense, Secured Claim, or Unsecured Claim.

**1.93** *"Proponents"* mean the Debtors as the proponents of the Plan.

**1.94** *"Pro Rata Share"* means, with respect to any distribution to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which will be the amount of such Holder's Allowed Claim and the denominator of which will be the sum of all Allowed Claims and all Disputed Claims in such Class and, if applicable, other Classes. The term *"Pro Rata Share"* will also be applied in respect of Administrative Expenses, Priority Tax Claims, and Priority Claims, as the context requires in the Plan.

- 15 -

**1.95** *"Professional"* means any professional person (a) employed in the Reorganization Case with the approval of the Bankruptcy Court pursuant to sections 327, 328 or 1103 of the Bankruptcy Code, or (b) employed by the Reorganized Debtor, pursuant to this Plan.

**1.96** *"Proof of Claim"* means a proof of claim filed with the Bankruptcy Court with respect to the Debtors pursuant to Bankruptcy Rules 3001, 3002, or 3003 in accordance with various orders of the Bankruptcy Court.

**1.97** *"Real Property"* or *"Real Properties"* means any possessory, leasehold, or other interest of the Debtors or the Estates in Property that constitutes real estate (including without limitation buildings, improvements, and appurtenances located at or on such real estate).

**1.98** *"Released Parties"* means the New Value Equity Participants and only with respect to acts and occurrences more particularly described in Article VII of the Plan.

**1.99** *"Reorganized Debtor"* means NexxLinx, in its capacity as the successor to the substantively consolidated Debtors under Article VI, Section 6.01 of the Plan, as of, and subsequent to, the Effective Date.

**1.100** *"Reserve"* or *"Disputed Claim Reserve"* shall mean the amount of Cash held by the Reorganized Debtor and/or the Creditor Trustee, as applicable, following the Effective Date in reserve for amounts that are or are expected to become due and owing by the Reorganized Debtor or the Creditor Trust, as applicable, on or following the Effective Date, including without limitation amounts that may become payable, on account of Disputed Claims.

**1.101** *"Scheduled"* means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest, as set forth in the Debtors' Schedules.

**1.102** *"Schedules"* means, collectively, the Schedules and Statements of Financial Affairs filed by the Debtors in the Reorganization Case on July 12, 2016, or August 3, 2016 for NexxPhase, pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented from time to time.

**1.103** *"Section 6621 Interest Rate"* shall mean the rate of interest charged by the United States for delinquent tax obligations pursuant to 26 U.S.C. § 6621.

**1.104** *"Secured Claim"* means any Claim that is—

      (a)     secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law; or

      (b)     subject to setoff under Section 553 of the Bankruptcy Code;

but, with respect to both paragraphs (a) and (b) of this section, only to the extent of the Estates' interest in the value of the assets or Property securing any such Claim or the amount subject to

setoff, as the case may be.   Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estates' interest in the Property securing such Claim or the amount subject to setoff is less than the amount of the Allowed Claim, the resulting deficiency constitutes an Unsecured Claim, which Claim shall be treated as set forth in Article 5 of the Plan.

**1.105** *"Secured Creditor"* means any Creditor holding a Secured Claim.

**1.106** *"Subordinated Claims"* means Claims against the Debtors that are subordinated pursuant to section 510(b) or 510(c) of the Bankruptcy Code.

**1.107** *"Tax Claim"* means any Allowed Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.108** *"Taxes"* means all (i) federal, state, local or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, sales, capital, value added, profits and estimated taxes and (ii) interest, penalties, fines, additions to tax or additional amounts imposed by any Governmental Authority or paid in connection with any item described in clause (i) hereof.

**1.109** *"Unclaimed Property"* means any funds payable to Holders of Claims which are unclaimed.  Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been presented and paid within ninety (90) days of their issuance, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such Property and (d) checks (and the funds represented thereby) which are not mailed due to the lack of required tax identification information, but only following two mailed requests for this tax identification information.

**1.110** *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.111** *"Unimpaired Claim"* means a Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.112** *"United States Trustee"* means the United States Trustee for Region 21, and the Office of the United States Trustee located in Atlanta, Georgia.

**1.113** *"Unsecured Claim"* means any Claim that is not an Administrative Expense, Priority Tax Claim, Priority Claim, Secured Claim, Intercompany Claim, or Convenience Class Unsecured Claim, including (a) any Claim arising from the rejection of an Executory Contract or Unexpired Lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.114** *"Unsecured Creditor"* means any Creditor holding an Unsecured Claim.

**1.115** *"Voting Deadline"* means the date established by the Bankruptcy Court for the filing of Ballots to accept or reject the Plan.

## ARTICLE II
## TREATMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY TAX CLAIMS

**2.01** *Nonclassification.* In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expenses and Priority Tax Claims is set forth in this Article II.

**2.02** *Administrative Expenses*. Except as otherwise provided below, on or before the later to occur of the Effective Date or five business days following the date of entry of a Final Order Allowing the Claim, each Holder of an Allowed Administrative Expense Claim (other than Postpetition Trade Claims) shall be paid by the Reorganized Debtor in full, in cash in an amount equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code. Notwithstanding the foregoing, each Holder of an Allowed Administrative Expense Claim may be paid (a) on such other terms as may be agreed upon by the Holder of such Allowed Administrative Expense Claim and the Reorganized Debtor or (b) as otherwise ordered by a Final Order of the Bankruptcy Court.

**2.03** *Fees and Charges*. All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§1911-1930, which are incurred but unpaid for all periods through the Effective Date, will be paid on the Effective Date by the Debtors.

**2.04** *Applications for Allowance of Administrative Expenses.* All Holders of Administrative Expenses (other than Claims pursuant to 11 U.S.C. § 503(b)(9)) that do not file an application or other Bankruptcy Court-approved pleading on or before the date which is thirty (30) days after the Effective Date will be forever barred from asserting such Administrative Expense against the Reorganized Debtor, the Debtors or their Estates.

**2.05** *Priority Tax Claims.* The Reorganized Debtor will pay all Allowed Priority Tax Claims in Cash in full on the Effective Date or as soon thereafter as is reasonably practicable, but in no event later than the end of five (5) years from the Petition Date. As to any Allowed Priority Tax Claim not paid in full on the Effective Date, the Holder of such Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim regular quarterly installment payments in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code through and including the date such Allowed Priority Tax Claim is paid in full. Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the Section 6621 Interest Rate; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax

Claim at the applicable statutory rate under state law. To the extent that any Allowed Priority Tax Claim is allowed after the Effective Date, it will be paid in full in Cash as soon after allowance as is reasonably practicable over a period no later than the end of five (5) years from the Petition Date, including interest as calculated above.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.01**    *In General.*    Pursuant to Section 1122 of the Bankruptcy Code, the Claims against and Equity Interests in the Debtors and the Property of the Debtors are classified as set forth in this Article.  The rights of all Claimants, and the responsibilities of the Debtors with respect to those Claimants, shall be based upon their classification herein.  A Claim or Equity Interest is classified (a) in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include all Claims that qualify within the description of that Class.  As of the Confirmation Hearing, any Class of Claims which does not contain any Creditor's Claims will be deemed deleted automatically from the Plan, and any Class of Claims which does not contain an Allowed Claim (or a Claim temporarily or provisionally Allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan.

**3.02**    *Classes.*    The Claims of Creditors and Holders of Equity Interests under this Plan are divided into the following classes, which classes are mutually exclusive:

    (a)    Class 1 shall consist of all Allowed Priority Claims.

    (b)    Class 2 shall consist of all Allowed Postpetition Trade Claims.

    (c)    Class 3 shall consist of all Allowed Secured Claims of Action Capital.

    (d)    Class 4 shall consist of all Allowed Secured Claims of BB&T.

    (e)    Class 5 shall consist of the Allowed Secured Claims of Susquehanna Commercial Finance, Inc.

    (f)    Class 6 shall consist of the Allowed Secured Claims of Ascentium Capital, LLC.

    (g)    Class 7 shall consist of the Allowed Secured Claims of SHI International Corporation.

    (h)    Class 8 shall consist of the Allowed Secured Claims against the Debtors that are not included in Class 3, Class 4, Class 5, Class 6 or Class 7.

(i)     Class 9 shall consist of the Allowed Unsecured Claims not included in Class 10.

(j)     Class 10 shall consist of all Allowed Unsecured Convenience Class Claims.

(k)     Class 11 consists of all Allowed Equity Interests in the Debtors.

## ARTICLE IV
## IMPAIRMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01    *Impaired Classes*.**    Classes 3, 4, 5, 6, 7, 8, 9, 10 and 11 are impaired under the Plan.   Holders of Equity Interests in Class 11 do not retain any property under the Plan on account of such Equity Interests; therefore, under the provisions of Section 1126(g) of the Bankruptcy Code, Class 11 is deemed not to have accepted the Plan.

**4.02   *Unimpaired Classes*.**   Classes 1 and 2 are unimpaired under the Plan.   These classes are deemed to have accepted the Plan under the provisions of Section 1126(f) of the Bankruptcy Code.

## ARTICLE V
## TREATMENT OF CLASSES UNDER THE PLAN

**5.01   *In General.***   Claims and Equity Interests will be treated under the Plan in the manner set forth in this Article V.   Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims, of any nature whatsoever, and Allowed Equity Interests.

**5.02   *Unclassified Claims*.**   Each Holder of an Allowed Administrative Expense Claim or an Allowed Priority Tax Claim will receive the treatment set forth in Article II of the Plan.

**5.03   *Class 1:   Priority Claims*.**   Each holder of an Allowed Priority Claim designated in Class 1 shall be paid as follows:

(a)   In full, in cash, on or before the later of the Effective Date or, if an objection to such Claim is asserted, five business days following the date of a Final Order allowing any such Claim; or

(b)   Upon such other terms as may be agreed to between the Debtors and each such Priority Claimant.

Class 1 is unimpaired by the Plan.   Accordingly, Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

**5.04    *Class 2:   Postpetition Trade Claims.*** Class 2 consists of all Allowed Postpetition Trade Claims.   On the Effective Date, any Allowed Postpetition Trade Claims shall be assumed and paid by the Reorganized Debtor in the normal course of business according the terms of any agreement or course of dealing between the Holder and the Debtors.   Class 2 is unimpaired by the Plan.   Accordingly, Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan.

**5.05    *Class 3: Secured Claim of Action Capital.*** Class 3 consists of the Allowed Secured Claim of Action Capital, which is secured by a first priority security interest in certain assets of the Debtors, including but not limited to accounts receivable.   Except as modified herein, Action Capital's Class 3 Claim shall be paid by the Debtors as follows: (a) the Pre-Petition Loans shall be repaid from operating revenues of the Debtors in accordance with the terms of the Pre-Petition Loan Documents, (b) the DIP Financing shall be paid in accordance with the terms of the Post-Petition Loan Documents, and (c) the Pre-Petition Loan Documents and the Post-Petition Loan Documents shall continue in full force and effect following Confirmation of the Plan.   Class 3 is impaired by the Plan, and Action Capital, as the Holder of the Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

**5.06    *Class 4: Secured Claim of BB&T.*** Class 4 consists of the Allowed Secured Claim of BB&T, which is secured by a second priority security interest in certain assets of the Debtors, including but not limited to accounts receivable. BB&T's Class 4 Claim shall be paid by the Reorganized Debtor as set forth on Schedule 5.06 attached hereto. Class 4 is impaired by the Plan, and BB&T, as the Holder of the Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

**5.07    *Class 5: Secured Claim of Susquehanna Commercial Finance, Inc.*** Class 5 consists of the Allowed Secured Claim of Susquehanna Commercial Finance, Inc. ("**Susquehanna**"), which is secured by a first priority security interest in certain office furniture located in Duluth, Georgia.   Susquehanna's Class 5 Claim shall be satisfied by payment of Cash to Susquehanna in an amount equal to Seventy-Eight Thousand Nine Hundred Eighty-Four Dollars ($78,984.00), the value of Susquehanna's interest in the collateral securing the Allowed Secured Claim, with such payment to be made in accordance with Schedule 5.07 attached hereto. Susquehanna shall have a deficiency claim in the amount of Fifty-Five Thousand Dollars ($55,000.00) which shall be treated as a Class 9 general, unsecured claim.   Accordingly, Susquehanna, as the Holder of the Allowed Class 5 Claim is entitled to vote to accept or reject the Plan.

**5.08    *Class 6: Secured Claim of Ascentium Capital, LLC.*** Class 6 consists of the Allowed Secured Claim of Ascentium Capital, LLC ("**Ascentium**"), which is secured by a first priority security interest in a certain generator located in Duluth, Georgia.   Ascentium's Class 6 Claim shall be satisfied, at the Reorganized Debtor's option, as follows (i) by the transfer, assignment and conveyance by the Reorganized Debtor of the collateral securing such Class 6 Claim to Ascentium in full and final satisfaction of such Allowed Secured Claim, (ii) by the sale of the collateral securing such Allowed Secured Claim, following Designated Notice, and the payment by the Reorganized Debtor to Ascentium of the net sale proceeds in an amount equal to the value of Ascentium's interest in the collateral in full and final satisfaction of such Allowed

Secured Claim, or (iii) by payment of Cash to Ascentium in an amount equal to the value of Ascentium's interest in the collateral securing the Allowed Secured Claim, with such payment to be made in accordance with Schedule 5.08 attached hereto, unless the Secured Claim is a Disputed Claim, in which case any past due payments set forth on Schedule 5.08 shall be paid within five business days following entry of a Final Order allowing the Secured Claim.   In the event Ascentium disputes the valuation of its collateral by the Reorganized Debtor, the parties shall work in good faith to try and resolve such dispute.   If the parties are unable to agree on a valuation, the parties shall ask the Court to hold a valuation hearing after confirmation of the Plan and Schedule 5.08 shall be amended to reflect the court's ruling. Class 6 is impaired by the Plan.   Accordingly, Ascentium, as the Holder of the Allowed Class 6 Claim is entitled to vote to accept or reject the Plan.

    **5.09    *Class 7: Secured Claim of SHI International Corporation.***   Class 7 consists of the Allowed Secured Claim of SHI International Corporation ("**SHI**"), which is secured by a first priority security interest in a certain Symantec computer hardware and software.   SHI's Class 7 Claim shall be satisfied, at the Reorganized Debtor's option, as follows (i) by the transfer, assignment and conveyance by the Reorganized Debtor of the collateral securing such Class 7 Claim to SHI in full and final satisfaction of such Allowed Secured Claim, (ii) by the sale of the collateral securing such Allowed Secured Claim, following Designated Notice, and the payment by the Reorganized Debtor to SHI of the net sale proceeds in an amount equal to the value of SHI's interest in the collateral in full and final satisfaction of such Allowed Secured Claim, or (iii) by payment of Cash to SHI in an amount equal to the value of SHI's interest in the collateral securing the Allowed Secured Claim, with such payment to be made in accordance with Schedule 5.09 attached hereto, unless the Secured Claim is a Disputed Claim, in which case any past due payments set forth on Schedule 5.09 shall be paid within five business days following entry of a Final Order allowing the Secured Claim.   In the event SHI disputes the valuation of its collateral by the Reorganized Debtor, the parties shall work in good faith to try and resolve such dispute.   If the parties are unable to agree on a valuation, the parties shall ask the Court to hold a valuation hearing after confirmation of the Plan and Schedule 5.09 shall be amended to reflect the court's ruling. Class 7 is impaired by the Plan.   Accordingly, SHI as the Holder of the Allowed Class 7 Claim is entitled to vote to accept or reject the Plan.

    **5.10    *Class 8: Other Allowed Secured Claims*.**   Class 8 consists of the Allowed Secured Claims against the Debtors that are not included in Class 3, Class 4, Class 5, Class 6 or Class 7. Each Allowed Secured Claim in Class 8 shall be satisfied, at the Reorganized Debtor's option, as follows (i) by the transfer, assignment and conveyance by the Reorganized Debtor of the collateral securing such Class 8 Claim to the holder of such Allowed Secured Claim in full and final satisfaction of such Allowed Secured Claim, (ii) by the sale of the collateral securing such Allowed Secured Claim, following Designated Notice, and the payment by the Reorganized Debtor to the Holder of such Allowed Secured Claim the net sale proceeds in an amount equal to the value of such Holder's interest in the collateral in full and final satisfaction of such Allowed Secured Claim, or (iii) by payment of Cash to the Holder of such Allowed Secured Claim in an amount equal to the value of such holder's interest in the collateral securing the Allowed Secured Claim, unless the Secured Claim is a Disputed Claim, in which case any past due payments shall be paid within five business days following entry of a Final Order allowing the Secured Claim.   In the event any

Other Allowed Secured Creditor disputes the valuation of its collateral by the Reorganized Debtor, the parties shall work in good faith to try and resolve such dispute. If the parties are unable to agree on a valuation, the parties shall ask the Court to hold a valuation hearing after confirmation of the Plan and payments shall be amended to reflect the court's ruling. Class 8 is impaired by the Plan. Accordingly, Holders of Class 8 Claims are entitled to vote to accept or reject the Plan.

**5.11** *Class 9: Unsecured Claims.* Class 9 consists of all Allowed Unsecured Claims which are not Class 10 Convenience Class Claims. Holders of Allowed Unsecured Claims in Class 9 shall receive distributions from the Creditor Trust. The Reorganized Debtor shall make quarterly payments into the Creditor Trust beginning on or before the later to occur of (i) the 30th day of June, 2017, or (ii) the Effective Date, and continuing on or before the last day of each successive quarter thereafter, through and including the last day of December 2025, with each installment being in the amount set forth on Schedule 5.11 (and through such extended years at the same times and amounts as the final year on Schedule 5.11, to the extent needed to arrive at $5,000,000 in total payments to the Creditor Trust, after taking into account any Creditor Profit Sharing Payments (and after also taking into account the absolute limitation set forth below that the total payments shall not exceed the total aggregate amount of all Allowed Unsecured Claims in Class 9 plus amounts needed to satisfy Allowed Convenience Class Claims). Additionally, on or before June 30, 2018 and on or before June 30 each year thereafter through and including June 30, 2026, the Reorganized Debtor shall make Creditor Profit Sharing Payments to the Creditor Trust (but only if there is any Adjusted Cash Available, based on the calculation of Adjusted Cash Available as set forth in this Plan, a sample of which calculation is set forth on Exhibit A to the Disclosure Statement). The aggregate value of the quarterly payments into the Creditor Trust and the Creditor Profit Sharing Payments shall total $5,000,000.00. Notwithstanding anything to the contrary herein, the sum of all payments to the Creditor Trust shall not exceed an amount equal to 100% of the total aggregate amount of all Allowed Unsecured Claims in Class 9 plus amounts paid by the Reorganized Debtor to satisfy obligations under Article V, Section 5.12 (Allowed Convenience Class Claims). To ensure timely payment of the obligations under this Article V, Section 5.11, the Reorganized Debtor, the New Value Equity Participants and the Creditor Trustee will enter into a Stock Pledge Agreement, in a form substantially similar to Schedule 5.11(b) attached hereto (or as it may be amended and filed with the Court no later than fifteen days prior to the hearing on confirmation of this Plan, with the consent of the Debtors and the Committee), pursuant to which the New Value Equity Participants will pledge fifty-one percent (51%) of the outstanding stock in the Reorganized Debtor to the Creditor Trust for the purposes and pursuant to the terms and conditions set forth in the Stock Pledge Agreement.

If there is a Liquidity Event within the first four years following Plan confirmation which allows the Reorganized Debtor to accelerate payments to the Creditor Trust on behalf of Class 9 Creditors, the Reorganized Debtor shall receive a twenty-five percent (25%) discount on cash payments to the Creditor Trust (with credit being given for all payments made to date) if the Plan payments are made within twenty-four months of the Effective Date, a twenty percent (20%) discount for payments made between twenty four months and one day and thirty six months following the Effective Date and a ten percent (10%) discount for payments made between thirty six months and one day and forty eight months of the Effective Date.

Additionally, on the Effective Date, the Debtors shall transfer the Creditor Trust Assets into the Creditor Trust as more fully set forth in Article VI, Section 6.10 below.   The Creditor Trustee shall make distributions from the Creditor Trust whenever the amount in the Creditor Trust equals or exceeds one hundred fifty thousand dollars ($150,000.00), but in no event less frequently than semi-annually.   On each of the Distribution Dates, each Holder of an Allowed Unsecured Claim in Class 9 shall receive payment of a proportionate share of the funds then available in the Creditor Trust equal to that Holder's Pro Rata portion of the aggregate amount of all Claims in Class 9 (both Allowed and Disputed) on such Distribution Date.   Distributions with respect to each Disputed Claim in Class 9 shall be held in reserve until such time as the Claim becomes an Allowed Claim or Disallowed Claim.   Distributions held in reserve with respect to Disputed Claims in Class 9 that become Allowed after the Effective Date shall be paid as soon as reasonably practicable after the dates such Claims become Allowed Claims.   Class 9 is Impaired by the Plan. Each Holder of an Allowed Class 9 Unsecured Claim is entitled to vote to accept or reject the Plan.

**5.12** *Class 10:  Convenience Class Claims.*        Class 10 consists of all creditors holding Allowed Unsecured Claims equal to or less than five thousand dollars ($5,000.00) and all creditors who hold Allowed Unsecured Claims that exceed five thousand dollars ($5,000.00) and who elect voluntarily to reduce their Claims to five thousand dollars ($5,000.00), waive and release any remaining Claims against the Debtors, their Estates, and the Reorganized Debtor and participate in Class 10.   In the event Class 10 votes to reject the Plan, Class 10 will be eliminated and Holders of Claims that would otherwise be included in Class 10 will be treated as Holders of Class 9 Claims.   On or before sixty days following the Effective Date or as soon thereafter as is reasonably practicable, the Reorganized Debtor shall make a one-time payment to the Creditor Trust in an amount equal to twenty percent (20%) of all Allowed Class 10 Claims.   On or before sixty days following the Effective Date or as soon thereafter as is reasonably practicable, the Creditor Trustee shall make a one-time Distribution to each Holder of an Allowed Class 10 Claim in an amount equal to twenty percent (20%) of such Holder's Allowed Claim in Class 10 in full and final satisfaction of such Allowed Claim.   To the extent that any Class 10 Claim is allowed after the Effective Date, it will be paid twenty percent (20%) of the Allowed Claim in Cash within five (5) business days after the Claim is allowed or as soon thereafter as is reasonably practicable. Class 10 is Impaired by the Plan.   Each Holder of an Allowed Class 10 Unsecured Claim is entitled to vote to accept or reject the Plan.

**5.13** *Class 11:  Equity Interests.*    Class 11 consists of all Equity Interests in the Debtors.   All Equity Interests shall be cancelled on the Effective Date.   Because Holders of Equity Interests in Class 11 do not retain any property under the Plan on account of such Equity Interests; under the provisions of Section 1126(g) of the Bankruptcy Code, Class 11 is deemed not to have accepted the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION AND EXECUTION OF PLAN

**6.01** *Substantive Consolidation.*    Entry of the Confirmation Order shall constitute the approval, pursuant to Section 105(a) of the Bankruptcy Code, of the substantive consolidation as of the Effective Date of Nexxlinx; NGI; NNY; CNC; MOI, NTX and NexxPhase, and their Estates for

- 24 -

all purposes related to Claims and distribution of assets under the Plan.  On and after the Effective Date (i) all assets and liabilities of any of the Debtors and the Estates shall be treated as though they were merged with and into Nexxlinx Corporation, Inc., which shall become the Reorganized Debtor; (ii) no distributions shall be made under the Plan on account of any Claim held by any of the Debtors against any other Debtor party; (iii) all guarantees of any Debtor of the obligations of any other Debtor shall be eliminated; and (iv) each and every Claim and Proof of Claim against any of the Debtors shall be deemed one Claim or Proof of Claim against all of the Debtors and a single obligation of the consolidated Reorganized Debtor on and after the Effective Date. Notwithstanding the foregoing, the substantive consolidation effected pursuant hereto shall not affect or limit in any manner whatsoever (a) defenses to any Avoidance Action or Cause of Action; (b) requirements for any third party to establish mutuality in order to assert a right of setoff; (c) the legal and corporate structure of the Debtors; (d) any perfection of Lien issues, including rights to avoid Liens pursuant to Section 544 of the Bankruptcy Code or applicable state law; (e) valuation of any Secured Claims, including rights to challenge or object to alleged Secured Claims for any reason, including valuation issues under Section 506 of the Bankruptcy Code; or (f) any rights to challenge and object to any Claims that are Disputed Claims for any reason whatsoever, including any alleged Secured Claims.

**6.02** *Source of Cash for Distributions.*  Allowed Administrative Claims for professional compensation and expenses awarded under 11 U.S.C. §§ 327 or 330 shall be paid first from any retainers provided or reserves established as contemplated under orders entered in the Case and, to the extent any deficiencies remain, from cash on hand and/or future earnings of the Reorganized Debtor.  All Payments to Holders of Allowed Claims in Classes 1-8 shall be paid from future earnings of the Reorganized Debtor.  All other Payments to Holders of Allowed Claims in Classes 9 and/or 10 shall be paid from the Creditor Trust to be funded by future earnings of the Reorganized Debtor, capital contributions from the New Equity Participants, and any other Creditor Trust Assets.  Except as otherwise provided in the Plan, no Claims shall bear interest from and after the Petition Date.

**6.03** *Issuance of Stock in Reorganized Debtor.*  The New Value Equity Participants shall make an infusion of capital in the Reorganized Debtor in the amount of Fifty Thousand Dollars ($50,000.00) and cause the waiver of Claims in the amount of not less than Two Million One Hundred Ninety-Four Thousand Two Hundred and One Dollars and Fourteen Cents ($2,194,201.14) which shall be contributed by the New Value Equity Participants to the Reorganized Debtor on or before the Effective Date, and which may be used as partial funding for the Creditor Trust.  In exchange for this contribution, one hundred percent (100%) of the New Equity Interests in the Reorganized Debtor will be issued to the New Value Equity Participants.

**6.04** *Post-Confirmation Working Capital.*  It is contemplated that any required working capital will be provided to the Reorganized Debtor following Confirmation from cash generated by the Reorganized Debtor's operations and/or equity infusions as set forth in Article VI, Sections 6.02 and 6.03.

**6.05** *Corporate Existence.*  The Reorganized Debtor shall continue to exist after the Effective Date as a corporate entity, with all the powers of a corporation under applicable law and

without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

**6.06    *Corporate Charter.*** On the Effective Date, the Reorganized Debtor's Articles of Incorporation shall be deemed amended to prohibit the issuance of non-voting equity securities to the extent and for any length of time required by Section 1123(a) of the Bankruptcy Code.   After the Effective Date, the Reorganized Debtor may amend and restate its Articles of Incorporation or By-Laws as permitted by applicable state law.

**6.07    *Vesting of the Debtors' Assets.*** Confirmation of this Plan shall automatically vest in the Reorganized Debtor (without the necessity of executing any instruments of assignment), as of the Effective Date, free and clear of all liens, claims, encumbrances, penalties, assessments and other interests, except as may otherwise be specifically set forth in this Plan, the Creditor Trust or in the Confirmation Order, all of the Property of the Debtors and the Estates.

**6.08    *Duties and Powers of Reorganized Debtor.*** The Reorganized Debtor shall have the rights, powers and duties as set forth in the Plan and shall be responsible for administering the Estates and consummating the Plan under the terms and subject to the conditions set forth herein. On and after the Effective Date, the Reorganized Debtor may operate its business, incur debt and use, acquire and dispose of property without supervision or approval of the Bankruptcy Court, except as expressly provided in the Plan.   Additionally, the Reorganized Debtor shall be authorized to take the necessary and appropriate actions to proceed with an orderly, expeditious and efficient administration of the Estates in accordance with the Plan.   Following Confirmation of the Plan, the Reorganized Debtor shall be authorized to retain or engage (or continue the retention or engagement of) such employees, professional persons and agents as are appropriate or desirable to administer the Estates and consummate the Plan.   Mr. Alan Quarterman shall serve as the initial authorized officer of the Reorganized Debtor immediately following confirmation of the Plan.   All expenses incurred after the Confirmation Date in connection with the administration of the Estates and the operation of the Reorganized Debtor's business, including, without limitation, professional fees, may be paid by the Reorganized Debtor without the necessity of providing any notice or seeking or obtaining any approval of the Court with respect to such payments.   The duties of the Reorganized Debtor are limited to the ministerial functions set forth specifically in this Plan.

**6.08.1 *Certain Limited Oversight by the Creditor Trustee of the Reorganized Debtors***.

(a)    Post-Confirmation Financials.   The Reorganized Debtor shall provide the Creditor Trustee, no later than 150 days following the end of each fiscal year during the time when payments to holders of claims in Class 9 are required, with "review quality" financial statements prepared by a third party.   To the extent the Creditor Trustee thereafter requests audited financial statements for such year, the Reorganized Debtor shall provide reasonable cooperation to allow such audit to be complete, provided the Creditor Trustee must pay for all out-of-pocket fees and expenses incurred by the Debtor for such audit to be completed.

(b)    <u>Post-Confirmation Incentive Payments</u>.  To the extent the Reorganized Debtor wishes to pay any incentive or bonus compensation to any insider or member of senior management, or increase of the regular compensation of any insider or member of senior management by more than 10% of such compensation paid during the prior year, such payments must either (a) come solely from the Debtors' share of Adjusted Cash Available or (b) be subject to the approval of the Creditor Trustee.

(c)    <u>Post-Confirmation Letters of Intent</u>.  If the Reorganized Debtor receives a bona fide letter of intent to merge with the Debtors, purchase all or substantially all of the Debtors' assets, or other similar transaction during the time when payments to holders of claims in Class 9 are required, the Reorganized Debtor must promptly inform the Creditor Trustee and use all commercially reasonable efforts to share a copy of such letter with the Creditor Trustee (which shall be highly confidential and for the eyes of the Creditor Trustee and his or her professionals only).

**6.09    *Creation of Creditor Trust*.**  On the Effective Date, the Creditor Trust shall be created.  The Creditor Trust shall be governed by the Creditor Trust Agreement, the Plan and the Confirmation Order.  A copy of the Creditor Trust Agreement, as it may be amended and filed with the Court no later than fifteen days prior to the hearing on confirmation of this Plan, with the consent of the Debtors and the Committee, is attached hereto as Schedule 6.09.

**6.10    *Vesting of Creditor Trust Assets*.**     On the Effective Date, or such later dates as are specified in the Plan, the Debtors shall, pursuant to Section 1123(b) of the Bankruptcy Code, transfer the Creditor Trust Assets to the Creditor Trust.  All transfers to the Creditor Trust shall be free and clear of all liens, claims, interests and encumbrances.  For the avoidance of doubt, nothing herein shall be construed to restrict or limit the ability or standing of the Creditor Trustee to assert any Causes of Action transferred to the Creditor Trust.   In connection with any Causes of Action that are included in the Creditor Trust, any attorney-client privilege, work-product privilege or protection, or other privilege or immunity attaching to any documents or communications thereto (whether written or oral) will also exist for the benefit of the Creditor Trust and will vest in the Creditor Trustee and his or her representatives, and will also be preserved for and as to the Debtors.  The Creditor Trustee is authorized to take all necessary actions to benefit from such privileges.   For federal income tax purposes, the transfer of the identified assets to the Creditor Trust will be deemed to be a transfer to the Holders of Allowed Claims (who are the Creditor Trust Beneficiaries), followed by a deemed transfer by such Creditor Trust Beneficiaries to the Creditor Trust.

**6.11    *Treatment of Creditor Trust for Federal Income Tax Purposes; No Successor-in-Interest*.**  The Creditor Trust will be established for the primary purpose of liquidating the Creditor Trust Assets, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditor Trust.   Accordingly, the Creditor Trustee will, in an expeditious but orderly manner, liquidate and convert to Cash the Creditor Trust Assets, make timely distributions to the Creditor Trust Beneficiaries in accordance with the Plan

and the Creditor Trust Agreement and not unduly prolong its duration. The Creditor Trust will not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Creditor Trust Agreement.

The Creditor Trust is intended to be treated as a "liquidating trust" pursuant to Treasury Regulation § 301.7701-4(d) and as a "grantor trust" for federal income tax purposes, pursuant to Section 671 through 679 of the Internal Revenue Code of 1986, as amended (the "**IR Code**"). In the event that the Creditor Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.770194(d), the Creditor Trustee shall take such action as he or she shall deem appropriate to have the Creditor Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership within the meaning of Section 7704 of the IR Code), including, if necessary, creating or converting it into a Delaware limited partnership or limited liability company that is so classified. For federal income tax purposes, the Creditor Trust Beneficiaries will be treated as the grantors and owners of the Creditor Trust and, therefore, will be responsible for the payment of tax on their respective allocable share of the taxable income of the Creditor Trust.

As soon as reasonably practicable after the Effective Date, the Creditor Trustee (to the extent that the Creditor Trustee deems it necessary or appropriate in his or her sole discretion) will value the Creditor Trust Assets based on the good faith determination of the value of such Creditor Trust Assets. The valuation will be used consistently by all parties (including the Debtors, the Creditor Trustee, and the Creditor Trust Beneficiaries) for all federal income tax purposes. The Bankruptcy Court will resolve any dispute regarding the valuation of the Creditor Trust Assets. The right and power of the Creditor Trustee to invest the Creditor Trust Assets transferred to the Creditor Trust, the proceeds thereof, or any income earned by the Creditor Trust, will be limited to the right and power to invest such Creditor Trust Assets (pending distributions in accordance with the Plan).

**6.12** *Appointment, Removal, and Resignation of the Creditor Trustee.* The Creditor Trust Agreement shall govern the selection, appointment, resignation and removal of the Creditor Trustee.

**6.13** *Rights and Obligations of the Creditor Trustee.* The Creditor Trustee shall have the rights, duties and obligations set forth in the Plan Trust Agreement. Such rights, duties and obligations include, but are not limited to, exercising control and authority over the Creditor Trust Assets and responsibility for liquidating and administering (or abandoning, as the case may be) the Creditor Trust Assets and taking actions on behalf of, and representing, the Creditor Trust. The Creditor Trustee shall have the authority to bind the Creditor Trust within the limitations set forth in the Plan Trust Agreement, the Plan and the Confirmation Order, but shall for all purposes hereunder be acting in the capacity of Creditor Trustee and not individually. Within the limitations set forth in the Plan Trust Agreement and subject to the provisions of the Plan, the responsibilities and authority of the Creditor Trustee, shall include, without limitation: (a) the making of Distributions with respect to Class 9 and Class 10 as contemplated in the Plan; (b) establishing and maintaining disputed claim reserves to be determined in the discretion of the Creditor Trustee; (c) conducting an analysis of Unsecured Claims not already allowed by prior

order of the Court, and prosecuting objections thereto or settling or otherwise compromising such Claims if necessary and appropriate in accordance with the Plan; provided, however, except as otherwise set forth in the Plan, the Creditor Trustee shall not be entitled to prosecute objections to any Claim that is not held by a Creditor Trust Beneficiary, or that is not otherwise assigned to the Creditor Trustee after the Effective Date; (d) filing appropriate tax returns with respect to the Creditor Trust in the exercise of its fiduciary obligations; (e) retaining the Creditor Trust Professionals; (f) taking such actions as are necessary to prosecute, resolve or compromise, as appropriate, all Causes of Action assigned to the Creditor Trust; and (g) taking such actions as are necessary and reasonable to carry out the purposes of the Creditor Trust.

**6.14** ***Compensation of the Creditor Trustee.*** The Creditor Trustee shall be compensated in accordance with the provisions of the Plan and Creditor Trust Agreement. The Reorganized Debtor shall make a payment to the Creditor Trust in the amount of seven thousand five hundred dollars ($7,500.00) per month for the first twelve months following Confirmation, for a total payment of ninety thousand dollars ($90,000.00), beginning on the first day of the first full month following the Effective Date to be used by the Creditor Trust Beneficiaries to pay professional fees of the Creditor Trust.

**6.15** ***Post-Confirmation Report of Creditor Trust.*** Every six months, beginning on the last business day of the third month anniversary of the Effective Date, or such other date as shall be determined by the Creditor Trustee, the Creditor Trustee shall file a report with the Bankruptcy Court setting forth the assets, liabilities and activities of the Creditor Trust during the prior six months, including a statement of all amounts paid for compensation of professionals and the Creditor Trustee, and the Creditor Trustee shall serve a copy upon all parties entitled to Designated Notice. The Post-Confirmation Report of Creditor Trust shall be in addition to any operating reports which the Reorganized Debtor may be obligated to file.

**6.16** ***The Committee and the Post-Confirmation Committee.***

(a) On the Effective Date, the Post-Confirmation Committee will be appointed and will succeed to any and all rights of the Committee, as well as the other additional rights and obligations set forth in this Plan. The initial members of the Post-Confirmation Committee shall be the members of the Committee immediately prior to the Effective Date. The Post-Confirmation Committee shall retain and have all of the rights, powers, and duties necessary to carry out its responsibilities under this Plan. Members of the Post-Confirmation Committee will be reimbursed by the Creditor Trust for expenses in connection with serving on the Post-Confirmation Committee that would otherwise be compensable for members of a creditors' committee under Section 503(b)(3)(F) of the Bankruptcy Code. The Post-Confirmation Committee shall have independent standing to appear and be heard in any judicial or other proceeding as to any matter relating to this Plan, the Reorganization Case, or the Creditor Trust.

(b) The Post-Confirmation Committee may retain attorneys, accountants, or other professionals to represent the interests of the Post-Confirmation Committee, including attorneys, accountants, and other professionals employed by the Debtors or the Committee, and such attorneys, accountants or other professionals shall be compensated from the Creditor

Trust, provided however, to the greatest extent possible, the Post-Confirmation Committee shall utilize the services of any professionals already retained by the Creditor Trustee.

(c)     The Post-Confirmation Committee may, through its by-laws, agree to provisions for removal and replacement of members of the Post-Confirmation Committee or the addition of new members of the Post-Confirmation Committee; provided, however, that: (i) the Post-Confirmation Committee shall be comprised of no less than three members and no more than nine members; (ii) each member of the Post-Confirmation Committee must hold, at all times throughout their service on the Post-Confirmation Committee, an Unsecured Claim against the Estate (or be the legal nominee or designee of a holder of an Unsecured Claim against the Estate); (iii) any member that sells all of its Unsecured Claim against the Estate shall be immediately removed from the Post-Confirmation Committee; (iv) the purchaser of an Unsecured Claim from a member of the Post-Confirmation Committee shall not automatically succeed to the member's position on the Post-Confirmation Committee by reason of the purchase of the Unsecured Claim but may be appointed pursuant to the bylaws of the Post-Confirmation Committee; and (v) a member's rights of membership on the Post-Confirmation Committee may not be transferred to or otherwise be assigned or delegated to another person or entity without the express consent of the Post-Confirmation Committee.

(d)     The Post-Confirmation Committee shall have the authority and responsibility to oversee, review and guide the activities and performance of the Creditor Trustee and shall have the authority to remove the Creditor Trustee in accordance with the Creditor Trust Agreement.  The Post-Confirmation Committee shall also (a) monitor and review the fairness of settlement, abandonment and other disposition proposals proposed to or agreed to by the Creditor Trustee with respect to the Causes of Action included in the Creditor Trust Assets; (b) consult with the Creditor Trustee regarding the settlement, abandonment and other disposition and prosecution of the Causes of Action included in the Creditor Trust Assets; (c) monitor and oversee the administration of the Creditor Trust and the Creditor Trustee's performance of its responsibilities under the Creditor Trust Agreement and/or the Plan and (d) perform such other tasks as set forth in the Creditor Trust Agreement and/or in the Plan.

(d)     If a member of the Post-Confirmation Committee holds a claim that is subject to review or objection by the Creditor Trustee, that member may remain on the Post-Confirmation Committee, but shall be excluded from any analysis, deliberation, decision-making, or any other actions of the Creditor Trustee or the Post-Confirmation Committee pertaining to such claim.

**6.17** ***Administration of Claims.***  Subsequent to the Effective Date, the Reorganized Debtor and/or the Creditor Trustee, as applicable, shall review the filed proofs of claim and audit these Claims with regard to (i) the supporting documents evidencing the Claims; (ii) the appropriateness of the characterization of each Claim; (iii) the amount of the Claim as set forth in the proof of claim; (iv) the extent to which the Debtors originally Scheduled the Claim as contingent, disputed or unliquidated; and (v) whether the proof of claim is otherwise valid, permissible, due and payable under the Bankruptcy Code and applicable state law.   Following the Confirmation Date, the Reorganized Debtor and/or the Creditor Trustee, as applicable, shall

complete its review of the Claims and shall initiate, file and prosecute any and all actions deemed necessary and appropriate to dispute, disallow, object to or otherwise quantify the Claims against the Debtors and/or their Estate(s).   Except as otherwise provided in the Plan, all Claims Litigation, including actions that arise out of the amount of a submitted Claim, or any objection to a submitted Claim, shall vest with the Estates or the Creditor Trust, as applicable, and shall be prosecuted by the Reorganized Debtor or the Creditor Trustee, as applicable.   The Reorganized Debtor or the Creditor Trustee, as applicable, shall take actions regarding the administration, reconciliation and settlement of Claims, and shall object to Claims and prosecute Claims actions, until such time as the Reorganized Debtor or the Creditor Trustee, as applicable, determines that further pursuit of litigation or actions objecting to Claims is no longer cost efficient, and will be of no further benefit to the Estates and their creditors.   Following the Effective Date (a) the Creditor Trustee shall have the exclusive right and authority to object to any Class 9 or Class 10 Claim, and (b) the Reorganized Debtor shall have the exclusive right and authority to object to any Claim other than a Class 9 or Class 10 Claim.   **THE FAILURE TO OBJECT TO ANY CLAIM PRIOR TO THE COMMENCEMENT OF THE HEARING ON CONFIRMATION OF THE PLAN SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO OBJECT THEREAFTER TO SUCH CLAIM IN WHOLE OR IN PART FOR THE PURPOSE OF DISTRIBUTION.**

   **6.18** *Preservation of Rights of Action.* Except as otherwise expressly provided herein, as of the Effective Date, (a) any rights or Causes of Action accruing to or held by the Debtors or their Estates which are not Creditor Trust Assets shall be deemed Assets of, and vest in, the Reorganized Debtor and (b) Causes of Action which are Creditor Trust Assets shall be deemed Assets of and vest in the Creditor Trust.   The Reorganized Debtor and the Creditor Trustee, as applicable, may pursue those rights of action, as deemed appropriate.   **ALL AVOIDANCE ACTIONS NOT EXPRESSLY RELEASED OR WAIVED IN THE PLAN OR THE CONFIRMATION ORDER SHALL SURVIVE CONFIRMATION, AND THE ASSERTION OF AVOIDANCE ACTIONS SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE OR OTHERWISE**.

## ARTICLE VII
### DISCHARGE, RELEASE, LIMITATION
### OF LIABILITY, AND GENERAL INJUNCTION

**7.01** *Discharge of Claims.* Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order will operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of any and all Debts of, and Claims of any nature whatsoever against the Debtors that arose at any time prior to the Confirmation Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Without limiting the generality of the foregoing, except as expressly set forth in this Plan, on the Effective Date, the Debtors, the Estates, and their respective successors or assigns, including, without limitation, the Reorganized Debtor, will be discharged from any Claim or Debt that arose prior to the Confirmation Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of whether (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim, will be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtors, the Estates, the Reorganized Debtor, or any of their respective successors and assigns, or the Assets or Property of any of them, any other or further Claims, Debts, rights, causes of action, remedies, Liabilities, or anything based upon any act, omission, document, instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order will contain appropriate injunctive language to that effect. In accordance with the foregoing, except as specifically provided in the Plan or in the Confirmation Order, the Confirmation Order will be a judicial determination of the discharge of all such Claims and other Debts and Liabilities against the Debtors, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtors, at any time, to the extent that such judgment relates to a discharged Claim, Liability or Debt. Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition Federal, state, or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtors, the Estates, the Reorganized Debtor, or any of their respective Property.

**7.02** *General Injunction.* Pursuant to sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, or Liability that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims,

Debts, or Liabilities, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents:   (a) commencing or continuing in any manner any action or other proceeding against the Debtors, the Estates, the Reorganized Debtor, or their respective Property; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, the Estates, the Reorganized Debtor or their respective Property; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtors, the Estates, the Reorganized Debtor, or their respective Property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors, the Estates, or the Reorganized Debtor; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtors, the Estates or the Reorganized Debtor under the Plan and the Plan Documents and the other documents executed in connection therewith.  The Debtors and the Reorganized Debtor shall have the right to independently seek enforcement of this general injunction provision.   This general injunction provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this § 7.02 shall not release, or be deemed a release of, any of the Causes of Action.

      **7.03**   *Exculpation from Liability.   The Debtors, and their current officers, the Professionals for the Debtors (acting in such capacity), the Creditors Committee, and its members, and the Professionals for the Creditors Committee (acting in such capacity), the Reorganized Debtor, and its respective officers, directors and employees, the Professionals for the Reorganized Debtor (acting in such capacity), and the New Value Equity Participants (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Reorganization Case, in each case for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party.   The rights granted under this § 7.03 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law.   In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities.   This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.   Notwithstanding anything to the contrary contained herein, the provisions of this § 7.03 shall not release, or be deemed a release of, any of the Causes of Action.*

      **7.04**   *Release.   On the Effective Date, the Exculpated Parties shall be unconditionally and are hereby deemed to be unconditionally released from any and all claims, obligations, suits, judgments, damages, losses, rights, remedies, causes of action, charges, costs, debts, indebtedness,*

*or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence taking place between the Petition Date and the Effective Date, which is in any way relating to the Debtors, the Reorganization Case, any Property of the Debtors, the business or operations of the Debtors, any Plan Documents, the Plan, or any of the transactions contemplated thereby; provided, however, that this release provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party.   The Confirmation Order shall enjoin the prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any such claim, obligation, suit, judgment, damage, loss, right, remedy, cause of action, charge, cost, debt, indebtedness, or liability which arose or accrued during such period or was or could have been asserted against any of the Exculpated Parties, except as otherwise provided in the Plan or in the Confirmation Order.   Each of the Exculpated Parties shall have the right to independently seek enforcement of this release provision.   This release provision is an integral part of the Plan and is essential to its implementation.   Notwithstanding anything to the contrary contained herein, the provisions of this § 7.04 shall not release, or be deemed a release of, any of the Causes of Action.*

**7.05   *Barton Doctrine*.**   The "Barton Doctrine", *e.g. Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881) (Supreme Court held that a trustee cannot be sued without leave of the bankruptcy court), which prohibits a party from suing either a trustee, the officers of a debtor in possession, or their attorneys, in a non-appointing court for acts done in their official capacity, shall pertain to the provisions of this Article 7, and shall stand as one of the bases for enforcement of the provisions herein.   *See, e.g., Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000)(" [j]oining the other circuits that have considered this issue, we hold that a debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity"); *Patco Energy Express v. Lambros*, 2009 U.S. App. LEXIS 25771 (11th Cir. 2009) ("[w]here a plaintiff neglects to obtain leave from the appointing court, a suit filed [against a bankruptcy trustee] in another court must be dismissed for lack of subject matter jurisdiction"); *In the Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240-41 (6th Cir. 1993) ("[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a nonappointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court .... counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee"); *In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (9th Cir. BAP 1989) (holding that permission to sue debtor's attorney for alleged misconduct in the administration of an estate must be obtained from the bankruptcy court.

**7.06   *Release of New Value Equity Participants by Debtors.   Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, each in its individual capacity and as Debtors in possession, will be deemed to have forever released, and waived the New Value Equity Participants from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtors or the Reorganized Debtor to enforce the Plan and the contracts,***

*instruments, releases, and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtors, taking place on or prior to the Effective Date in any way relating to the Debtors, the Case, or the Plan; provided, however, that (a) no New Value Equity Participant will be released from any Claims, obligations, suits, judgments, debts or Causes of Action arising out of or in connection with indebtedness for money borrowed by any such person from the Debtors; and (b) no Cause of Action against any insurer arising out of or relating to matters for which the Debtors would otherwise be liable or suffer an insurable loss will be released, including without limitation, any Cause of Action against the Debtors' directors and officers liability insurance carrier(s).*

      **7.07** *Release of New Value Equity Participants by Holders of Claims and Interests. Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, to the fullest extent permitted under applicable law, in consideration for the obligations of the Persons set forth below under the Plan and, if applicable, the Cash, securities, contracts, releases and other agreements or documents to be delivered in connection with the Plan, each Holder of a Claim or Interest who votes in favor of the Plan or is presumed to have voted in favor of the Plan pursuant to Section 1126(f) of the Bankruptcy Code will be deemed to have forever waived and released (i) the Debtors, (ii) the Reorganized Debtor and (iii) the New Value Equity Participants from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of such Holders of Allowed Claims under the Plan to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtors, taking place on or prior to the Effective Date in any way relating to the Debtors, the Case, or the Plan; provided, however, that this Section 7.07 will not release any New Value Equity Participant from any Causes of Action held by a Governmental Unit existing as of the Effective Date based on an alleged violation of (i) any criminal laws of the United States or any domestic state, city or municipality or (ii) Sections 1104-1109 and 1342(d) of ERISA.*

      **7.08** *Continuation of Automatic Stay.*    The automatic stay arising out of Section 362(a) of the Bankruptcy Code shall continue in full force and effect until the Consummation Date, and the Debtors, the Estates, and the Reorganized Debtor shall be entitled to all of the protections afforded thereby.   The Court shall have the power to grant such additional and supplemental stays as may be necessary or appropriate to protect and preserve the Assets of the Debtors, the Estates and/or the Reorganized Debtor or to permit the just and orderly administration of the Estates.

**7.09** *No Liability for Tax Claims.* Unless a taxing Governmental Authority has asserted a Claim against the Debtors before the Bar Date or Administrative Expense Claim Bar Date established therefore, no Claim of such Governmental Authority shall be Allowed against the Debtors, the Reorganized Debtor, or their directors, officers, employees or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtors, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date. The entry of the Confirmation Order shall be deemed to be a determination that no provision of the Plan has avoidance of taxes as a principal purpose, and the Confirmation Order shall so provide.

**7.10** *Regulatory or Enforcement Actions.* Nothing in this Plan shall restrict any federal government regulatory agency from pursuing any regulatory or police enforcement action or performing its statutory duties against any Person or Entity in any forum, but only to the extent not prohibited by the automatic stay of Section 362 of the Bankruptcy Code or discharged or enjoined pursuant to Section 524 or 1141(d) of the Bankruptcy Code. Nothing contained in this Article VII, Section 7.11 is intended to, nor shall it, supersede or alter any applicable provisions of the Bankruptcy Code.

**7.11** *No Liability for Untimely Administrative Expense Claims.* Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition Federal, state or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Reorganized Debtor, the Debtors, the Estates, or any of their respective properties.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS
## AND ACCOUNTS RECEIVABLE

Notwithstanding any other provisions of the Plan, no payments or distribution shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim. In lieu of distributions under the Plan to holders of Disputed Claims in Classes 1 through 8, a Disputed Claims Reserve shall be maintained by the Reorganized Debtor for payment of any Disputed Claim which becomes an Allowed Claim. In lieu of distributions under the Plan to holders of Disputed Claims in Classes 9 and/or 10, a Disputed Claims Reserve shall be maintained by the Creditor Trustee for payment of any Disputed Claim which becomes an Allowed Claim. Distributions on account of any Disputed Claim that has become an Allowed Claim shall be made within the time periods provided above in Article V, or as soon as is reasonably practicable following allowance of the Claim.

Subsequent to the Effective Date, the Reorganized Debtor and/or the Creditor Trustee, as applicable (each an "Objecting Party") shall have the authority to settle and resolve a Disputed Claim that was originally asserted in an amount equal to or less than One Hundred Thousand

Dollars ($100,000.00) upon such terms and conditions as the Objecting Party deems appropriate and in the best interests of the Estates.  Any such compromise and settlement shall be deemed final and binding upon all parties in interest in the Case.  The Objecting Party shall not have any obligation to provide notice to or file and serve pleadings upon any such parties in interest, and shall not have any requirement to obtain Court approval, in connection with compromising these Claims.

With respect to any Disputed Claim that was originally asserted in an amount that exceeds One Hundred Thousand Dollars ($100,000.00), the Objecting Party shall have the authority to compromise and settle any such Claim on such terms as the Objecting Party deems appropriate and in the best interests of the Estates, subject to providing Designated Notice of any such proposed compromise and a reasonable opportunity to object thereto.  If a party in interest files a written objection with the Court in the Case with respect to any proposed compromise of any Disputed Claim, and serves a copy of said objection upon the Creditor Trustee, the Reorganized Debtor and its counsel, within ten (10) days from the service of Designated Notice of the proposed compromise, then the Court shall schedule a hearing with respect to said objection.  If no objection is timely filed and served, the Objecting Party may compromise and settle any Disputed Claim without further authorization.  The Objecting Party may file motions which seek to compromise more than one Claim.

## ARTICLE IX
## PROVISIONS REGARDING DISTRIBUTIONS

**9.01    *Interest on Claims.***    Except as provided in a Final Order entered in this Case, (a) no holder of any Unsecured Claim (except Priority Tax Claims) shall be entitled to interest accruing on or after the Petition Date on such Claim, and (b) interest shall not accrue or be paid upon any Disputed Claim with respect to the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim, or any part thereof, becomes an Allowed Claim.

**9.02    *Means of Payment.***    All payments made pursuant to this Plan shall be in Cash and by any means reasonably selected by the Reorganized Debtor and/or the Creditor Trustee, as applicable, including check or wire transfer.

**9.03    *Rounding.***    Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent.

**9.04    *No Payments of $100 or Less on Allowed Claims Prior to Final Distribution Date.***    If a Cash payment to be received by any Holder of an Allowed Claim on any Distribution Date (except Distributions payable with respect to Class 10 and except the final Distribution on the Consummation Date) would be $100 or less in the aggregate, notwithstanding any contrary provision of this Plan, no such payment will be made to such Holder, and such Cash, if applicable, shall be held for such Holder until the next Distribution Date, at which time such Cash payment shall be made to the Holder (unless this Section 9.04 shall again apply).  The Reorganized Debtor

or the Creditor Trustee, as applicable, shall include an additional amount in the Reserve for unpaid Distributions resulting from this Section 9.

**9.05** *Withholding Taxes.*  The Reorganized Debtor and/or the Creditor Trustee, as applicable, shall be entitled to deduct any federal or state withholding taxes from any Distributions made with respect to Allowed Claims, as appropriate, and shall otherwise comply with Section 346 of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, neither the Reorganized Debtor nor the Creditor Trustee shall be obligated to make any Distribution to any creditor that has not provided requested tax identification information if such information is required to make a Distribution without withholding taxes from such creditor's Distribution. Holders of Allowed Claims that have not provided tax identification information will be solicited for such information on or before any Distribution Date and included in the Distribution or in a subsequent Distribution once tax identification information is received from the holder.

## ARTICLE X
## BALLOTS

Any ballot which is executed by the holder of any Allowed Claim or Allowed Interest but does not indicate acceptance or rejection of the Plan shall be deemed to have accepted the Plan. Any other ballot not filed in accordance with the filing instructions on the ballot pertaining to this Plan shall not be counted for voting purposes.

## ARTICLE XI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**11.01** *Customer Contracts.*  All executory contracts, customer care agreements and statements of work identified on Schedule 11.01 attached hereto shall be deemed assumed, and to the extent necessary, assigned to the Reorganized Debtor, as of the Effective Date of the Plan.   No cure costs are required in connection with assumption of any of the executory contracts or unexpired leases identified on Schedule 11.01.

**11.02** *Focus Services, LLC.*  That certain Statement of Work, dated July 1, 2013 by and between Focus Services, LLC and Nexxlinx, as subsequently amended and/or modified, shall be deemed assumed, and to the extent necessary, assigned to the Reorganized Debtor, as of the Effective Date of the Plan.  The Reorganized Debtor shall make cure payments in accordance with Schedule 11.02 attached hereto.

**11.03** *Nonresidential Real Property Leases.*  Pursuant to orders of the Court dated January 25, 2017 [Doc. No. 198-200], the Debtors assumed the non-residential real property leases for facilities in Jacksonville, North Carolina, Newburgh, New York and Duluth, Georgia.  The Reorganized Debtor shall make cure payments in accordance with Schedule 11.03 attached hereto.

**11.04** *Executory Contracts and Unexpired Leases.*  The Reorganized Debtor shall be authorized to assume or reject any and all Executory Contracts and Unexpired Leases of the Debtors, other than non-residential real property leases, which (i) have not previously been

assumed or rejected, or (ii) are not assumed or rejected under the Plan, through and including April 30, 2017, or longer upon consent of the counterparty to the Executory Contract or Unexpired Lease, notwithstanding entry of a Confirmation Order.

**11.05** *Rejection Damage Claims*. Claims arising from the rejection of any Executory Contracts or Unexpired Leases shall be filed within thirty (30) days following the rejection and shall be treated as Class 9 Claims to the extent Allowed. Any person seeking to assert such a Claim who fails to file a proof of claim within this thirty (30) day period shall be deemed to have waived said Claim, and it shall be forever barred.

## ARTICLE XII
## MODIFICATION OF THE PLAN

The Debtors reserve the right, pursuant to Section 1127(a) of the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation of the Plan. The Plan may be modified, without notice or hearing, or on such notice and hearing as the Court deems appropriate, if the Court finds that the proposed modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard to the proposed modification. Without limiting the foregoing, the Plan otherwise may be modified after notice and hearing. In the event of modification at or before Confirmation, any votes in favor of the Plan shall be deemed to be votes in favor of the Plan as modified, unless the Court finds that the proposed modification materially and adversely affects the rights of the parties in interest that cast such votes. After Confirmation of the Plan, the Reorganized Debtor reserves the right to modify the Plan as allowed by Section 1127(b) of the Bankruptcy Code, and applicable law.

## ARTICLE XIII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction, notwithstanding entry of the Confirmation Order and notwithstanding the occurrence of the Effective Date of the Plan, for the following purposes:

   a)     to enforce all Causes of Action which exist on behalf of the Debtors, the Estates, and/or the Reorganized Debtor pursuant to the provisions of this Plan or applicable law;

   b)     to enter orders and injunctions and restraints to enforce the provisions of the Plan;

   c)     to determine Claims asserted under Section 507(a)(2) of the Bankruptcy Code, including claims for compensation and reimbursement of expenses accruing prior to the Confirmation Date;

   d)     to determine any Disputed Claims or disputes concerning the validity of or the market value of any collateral underlying any Secured Claim;

e)    to enter orders regarding interpretation of the Plan, or any document created in connection with the Plan;

f)    to conduct hearings and to enter orders modifying the Plan as provided herein or in the Bankruptcy Code;

g)    to determine any and all applications, Claims, adversary proceedings, contested or litigated matters pending on the Confirmation Date or filed prior to entry of a Final Decree;

h)    to determine any motions for rejection or assumption of Executory Contracts or Unexpired Leases, and to determine Claims resulting from rejection of Executory Contracts and Unexpired Leases;

i)    to allow, disallow, and estimate, liquidate, or determine any Claims against the Debtors, including tax claims, but excluding any Claims deemed allowed by this Plan, and to enter or enforce any order requiring the filing of any such Claim before a particular date; and

j)    to enter orders required for the administration of the Plan, including, but not limited to:

(i)    resolution of disputes pertaining to the amounts of payments under the Plan to Claimants;

(ii)    conducting post-confirmation valuation hearings as required by the Plan or authorized by the Bankruptcy Code; and

(iii)    exercising jurisdiction over any other matter provided for or consistent with the provisions of Chapter 11 of the Bankruptcy Code.

### ARTICLE XIV
### CONDITIONS PRECEDENT TO CONFIRMATION

**14.01** *Condition Precedent to Confirmation of the Plan.* Entry of the Confirmation Order, effectiveness of Confirmation of the Plan, and the obligation of the Debtors to consummate this Plan are conditioned upon the Bankruptcy Court having made findings and determinations regarding the Plan as will enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan and in form and substance satisfactory to the Debtors.

**14.02** *Condition Precedent to Effective Date.* The Effective Date will not occur and the Plan will not be consummated until: (a) the Bankruptcy Court has entered the Confirmation Order on the Docket of the Reorganization Case which Confirmation Order is satisfactory in form and substance to the Debtors; (b) all actions, documents, and agreements necessary to implement the Plan will have been effected or executed and delivered, as required under the Plan,; (c) the New Value Equity Contribution has been paid to the Reorganized Debtor; and (d) the Confirmation Order has become a Final Order.

**14.03** *Waiver of Conditions Precedent.* The Debtors may elect to waive any condition precedent set forth above (other than Section 14.02(c)).

### ARTICLE XV
### ACCEPTANCE OR REJECTION OF THE PLAN

**15.01** *Classes Entitled to Vote.* Each impaired Class shall be entitled to vote to accept or reject the Plan. Each unimpaired Class of Claims shall be deemed to have accepted the Plan, and shall not be entitled to vote to accept or reject the Plan.

**15.02** *Class Acceptance Requirement.* Under Section 1126(c) of the Bankruptcy Code, an impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class who have voted on the Plan have voted to accept the Plan.

**15.03** *Cramdown.* The Debtors hereby request confirmation pursuant to the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that votes to reject the Plan (other than Class 10, which shall be eliminated and treated together with Class 9, as described hereinabove).

**15.04** *Claim Designation.* The Debtors reserve the right to seek to designate, pursuant to Section 1126(e) of the Bankruptcy Code, any Claimholder whose vote on the Plan was submitted for an improper purpose or was otherwise not submitted in good faith.

# ARTICLE XVI
## MISCELLANEOUS

**16.01**   *Objections to Claims.*  The Objecting Parties shall have one-hundred and eighty (180) days after the Confirmation Date to object to any scheduled Claim, Proof of Claim or Equity Interest filed in the Case to which they are entitled to object under this Plan.   An Objecting Party shall have the right to seek extensions of this one-hundred eighty (180) day period (post-Confirmation) following Designated Notice.   If a party in interest files a written objection with the Court in the Case with respect to any proposed extension of time and serves a copy of said objection upon the Creditor Trustee, the Reorganized Debtor and its counsel within ten (10) days from the service of Designated Notice of the proposed extension, then the Court shall schedule a hearing with respect to said objection and the deadline for the Objecting Party to object to Claims or Equity Interests as authorized under the Plan, shall be deemed extended through the conclusion of such hearing. If no objection is timely filed and served, the proposed extension is granted without further authorization.   The failure to object to any Claim or Equity Interest prior to the commencement of the hearing on Confirmation of the Plan shall not be deemed to be a waiver of the right to object thereafter to such Claim in whole or in part for the purpose of distribution.

**16.02**   *Compliance with Tax and Securities Law Requirements.*   In connection with the Plan, the Reorganized Debtor and the Creditor Trustee will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.   The effectuation of this Plan shall be subject to compliance with all applicable state and federal securities laws.

**16.03**   *Further Actions.*      Pursuant to Bankruptcy Code Section 1142(b), the Confirmation Order shall act and operate as an order of the Court directing the Reorganized Debtor and any other necessary parties to execute and deliver or join in the execution and delivery of any instrument required to affect any transfer and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of this Plan.   Any transfer taxes arising from transfers of property ordered or made pursuant to this Plan shall be treated in accordance with Section 1146 of the Bankruptcy Code.

**16.04**   *U.S. Trustee's Fees.*   All fees due and owing under 28 U.S.C. § 1930 for periods prior to the Confirmation Date shall be paid on or before the Effective Date.   Following confirmation of the Plan, the Reorganized Debtor shall continue to pay timely all Chapter 11 quarterly fees as required by 28 U.S.C. § 1930(a)(6), until a Final Decree is entered or the Case is otherwise closed.

**16.05**   *Governing Law.*      Except to the extent that the Bankruptcy Code is applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Georgia, United States of America.

**16.06**   *Severability.*  Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**16.07** *Revocation.*    The Debtors reserve the right to revoke and withdraw this Plan prior to Confirmation.

**16.08** *Effect of Withdrawal or Revocation.*    If the Debtors revoke or withdraw this Plan prior to Confirmation, then this Plan shall be deemed null and void.

**16.09** *Retiree Benefits.*    Following the Effective Date, the Debtors shall continue payment of any Retiree Benefits for the duration of the period the Debtors have obligated themselves to provide such benefits, if any, to the extent required by Sections 1114 and 1129(a)(13) of the Bankruptcy Code.

**16.10** *Closing the Case.*    Upon the completion of all matters over which the Bankruptcy Court is to retain jurisdiction pursuant to the provisions of this Plan, the Chapter 11 case may be administratively closed; provided, however, that any Creditor or the Debtors may petition to reopen the case at any time within the seven (7) year period immediately following the Effective Date of the Plan for the purpose of having the Bankruptcy Court interpret any provision of the Plan or enforce the rights of any party under the Plan or under the Bankruptcy Code.

**16.11** *Headings.*    Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

**16.12** *Extensions of Time.*    The time for the Reorganized Debtor to take any action under this Plan may be extended by the Bankruptcy Court after notice and a hearing.

**16.13** *Designated Notice.*    Notwithstanding any other provision of this Plan, when notice and a hearing is required with regard to any action to be taken by the Debtors, the Reorganized Debtor, or the Creditor Trustee, Designated Notice shall be sufficient.    With respect to any proposed action to be taken as authorized under this Plan which may only be taken following Designated Notice, the following procedures shall apply.    After Designated Notice of the proposed action has been provided as required under the Plan, if any party in interest files with the Court within ten (10) days of the service of such Designated Notice a written objection to the proposed action, and serves a copy of said objection upon the Creditor Trustee, the Reorganized Debtor and its counsel, then the Court shall schedule a hearing with respect to such objection and, unless the objection is withdrawn by agreement of the parties, the proposed action may only be taken if approved by Final Order of the Court.    If no objection is timely filed and served, the proposed action may be taken without further authorization or approval by the Court.

## ARTICLE XVII
## REQUEST FOR CONFIRMATION

The Debtors, as proponents of this Plan, request Confirmation of the Plan in accordance with Section 1129(a) of the Bankruptcy Code or, if any impaired class fails to accept the Plan, the Debtors reserve the right to request Confirmation in accordance with Section 1129(b) of the Bankruptcy Code.

This _10th_ day of February, 2017.


                                        NEXXLINX CORPORATION, INC., et al.


                                        By: _____
                                            Alan Quarterman
                                            CEO


_____
J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559
SCROGGINS & WILLIAMSON, P.C.
One Riverside
4401 Northside Parkway
Suite 450
Atlanta, Georgia 30327
T:      404-893-3880
F:      404-893-3886
E:      rwilliamson@swlawfirm.com
        aray@swlawfirm.com

*Counsel for Nexxlinx Corporation, Inc., et al.*

**SCHEDULE 5.06**

**Schedule of Payments for BB&T**

**Schedule 5-06**
**Schedule of Payments for Class 4 -- BB&T**

**Adequate Protection Payments Allocation (June 2016 thru May 2017)**

| | | | | | |
|---|---|---|---|---|---|
| Payments: | **12** | Months @ | **$** | **7,500.00** | Per month | $90,000 |
| Principal Interest | | **8.50%** | Principal equals | **$ 487,749.00** | $ 41,458.67 |
| Amount of Adequate Protection Payments remaining for principal reduction | | | | | $48,541.34 |
| Principal Balance Outstanding at 6/30/17 | | | | | $ 439,207.67 |

| | | 6/30/17 | 9/30/17 | 12/31/17 | 3/31/18 | 6/30/18 | 9/30/18 | 12/31/18 | 3/31/19 |
|---|---|---|---|---|---|---|---|---|---|
| Principal Payment | | $ 54,900.96 | $ 54,900.96 | $ 54,900.96 | $ 54,900.96 | $ 54,900.96 | $ 54,900.96 | $ 54,900.96 | 54,900.96 |
| Interest Payment @ | 8.50% | $ 9,333.16 | $ 8,166.52 | $ 6,999.87 | $ 5,833.23 | $ 4,666.58 | $ 3,499.94 | $ 2,333.29 | 1,166.65 |
| Total Debt Payment | | $ 64,234.12 | $ 63,067.48 | $ 61,900.83 | $ 60,734.18 | $ 59,567.54 | $ 58,400.89 | $ 57,234.25 | 56,067.60 |
| **Principal** | | | | | | | | | |
| Beginning Balance | | $ 439,207.67 | | | | | | | |
| Adjusted Balance | | $ 384,306.71 | $ 329,405.75 | $ 274,504.79 | $ 219,603.83 | $ 164,702.87 | $ 109,801.92 | $ 54,900.96 | $ - |
| Pre-petition atty / int | | $ 48,650.46 | $ 6,081.31 | $ 6,081.31 | $ 6,081.31 | $ 6,081.31 | $ 6,081.31 | $ 6,081.31 | 6,081.31 |
| **Total Debt Quarterly Pmts** *(plus pre atty / int)* | | $ 70,315.43 | $ 69,148.78 | $ 67,982.14 | $ 66,815.49 | $ 65,648.85 | $ 64,482.20 | $ 63,315.56 | 62,148.91 |
| Post-petition Atty Fees | | $ 20,000.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 | 2,500.00 |
| **Total All Quarterly Pmts** | | $ 72,815.43 | $ 71,648.78 | $ 70,482.14 | $ 69,315.49 | $ 68,148.85 | $ 66,982.20 | $ 65,815.56 | 64,648.91 |

**SCHEDULE 5.07**

| Schedule of Payments For Class 5 Susquehanna Commercial Finance, Inc. ||
|---|---|
| **Date** | **Amount** |
| 04/30/2017 | $        2,194.00 |
| 05/31/2017 | $        2,194.00 |
| 06/30/2017 | $        2,194.00 |
| 07/31/2017 | $        2,194.00 |
| 08/31/2017 | $        2,194.00 |
| 09/30/2017 | $        2,194.00 |
| 10/31/2017 | $        2,194.00 |
| 11/30/2017 | $        2,194.00 |
| 12/31/2017 | $        2,194.00 |
| 01/31/2018 | $        2,194.00 |
| 02/28/2018 | $        2,194.00 |
| 03/31/2018 | $        2,194.00 |
| 04/30/2018 | $        2,194.00 |
| 05/31/2018 | $        2,194.00 |
| 06/30/2018 | $        2,194.00 |
| 07/31/2018 | $        2,194.00 |
| 08/31/2018 | $        2,194.00 |
| 09/30/2018 | $        2,194.00 |
| 10/31/2018 | $        2,194.00 |
| 11/30/2018 | $        2,194.00 |
| 12/31/2018 | $        2,194.00 |
| 1/31/2019 | $        2,194.00 |
| 2/28/2019 | $        2,194.00 |
| 3/31/2019 | $        2,194.00 |
| 4/30/2019 | $        2,194.00 |
| 5/31/2019 | $        2,194.00 |
| 6/30/2019 | $        2,194.00 |
| 7/31/2019 | $        2,194.00 |
| 8/31/2019 | $        2,194.00 |
| 9/30/2019 | $        2,194.00 |
| 10/31/2019 | $        2,194.00 |
| 11/30/2019 | $        2,194.00 |
| 12/31/2019 | $        2,194.00 |
| 01/31/2020 | $        2,194.00 |

| 02/29/2020 | $ | 2,194.00 |
|---|---|---|
| 03/31/2020 | $ | 2,194.00 |
| **TOTAL:** | $ | **78,984.00** |

**SCHEDULE 5.08**

| Schedule of Payments For Class 6 Ascentium Capital, LLC ||
| --- | --- |
| **Date** | **Amount** |
| 04/30/2017 | $         615.05 |
| 05/31/2017 | $         615.05 |
| 06/30/2017 | $         615.05 |
| 07/31/2017 | $         615.05 |
| 08/31/2017 | $         615.05 |
| 09/30/2017 | $         615.05 |
| 10/31/2017 | $         615.05 |
| 11/30/2017 | $         615.05 |
| 12/31/2017 | $         615.05 |
| 01/31/2018 | $         615.05 |
| 02/28/2018 | $         615.05 |
| 03/30/2018 | $         615.05 |
| 04/30/2018 | $         615.05 |
| 05/31/2018 | $         615.05 |
| 06/30/2018 | $         615.05 |
| 07/31/2018 | $         615.05 |
| 08/31/2018 | $         615.05 |
| 09/30/2018 | $         615.05 |
| 10/31/2018 | $         615.05 |
| 11/30/2018 | $         615.05 |
| 12/31/2018 | $         615.05 |
| 01/31/2019 | $         615.05 |
| 02/28/2019 | $         615.05 |
| **TOTAL** | **$      14,146.15** |

**SCHEDULE 5.09**

| Schedule of Payments For Class 7 SHI International Corporation | |
|---|---|
| **Date** | **Amount** |
| 04/30/2017 | $          1,110.93 |
| 05/31/2017 | $          1,110.93 |
| 06/30/2017 | $          1,110.93 |
| 07/31/2017 | $          1,110.93 |
| 08/31/2017 | $          1,110.93 |
| 09/30/2017 | $          1,110.93 |
| 10/31/2017 | $          1,110.93 |
| 11/30/2017 | $          1,110.93 |
| 12/31/2017 | $          1,110.93 |
| 01/31/2018 | $          1,110.93 |
| 02/28/2018 | $          1,110.93 |
| 03/31/2018 | $          1,110.93 |
| 04/30/2018 | $          1,110.93 |
| **TOTAL:** | **$          14,442.13** |

## SCHEDULE 5.11

| Schedule of Payments for Class 9 | |
|---|---|
| General Unsecured Creditors | |
| **Date** | **Amount** |
| 6/30/2017 | $ 50,000.00 |
| 9/30/2017 | $ 50,000.00 |
| 12/31/2017 | $ 50,000.00 |
| 3/31/2018 | $ 50,000.00 |
| 6/30/2018 | $ 62,500.00 |
| 9/30/2018 | $ 62,500.00 |
| 12/31/2018 | $ 62,500.00 |
| 3/31/2019 | $ 62,500.00 |
| 6/30/2019 | $ 100,000.00 |
| 9/30/2019 | $ 100,000.00 |
| 12/31/2019 | $ 100,000.00 |
| 3/31/2020 | $ 100,000.00 |
| 6/30/2020 | $ 137,500.00 |
| 9/30/2020 | $ 137,500.00 |
| 12/31/2020 | $ 137,500.00 |
| 3/31/2021 | $ 137,500.00 |
| 6/30/2021 | $ 137,500.00 |
| 9/30/2021 | $ 137,500.00 |
| 12/31/2021 | $ 137,500.00 |
| 3/31/2022 | $ 137,500.00 |
| 6/30/2022 | $ 137,500.00 |
| 9/30/2022 | $ 137,500.00 |
| 12/31/2022 | $ 137,500.00 |
| 3/31/2023 | $ 137,500.00 |
| 6/30/2023 | $ 137,500.00 |
| 9/30/2023 | $ 137,500.00 |
| 12/31/2023 | $ 137,500.00 |
| 3/31/2024 | $ 137,500.00 |
| 6/30/2024 | $ 137,500.00 |
| 9/30/2024 | $ 137,500.00 |
| 12/31/2024 | $ 137,500.00 |
| 3/31/2025 | $ 137,500.00 |
| 6/30/2025 | $ 61,794.00 |
| **TOTAL** | **$ 3,661,794.00** |

**SCHEDULE 5.11(b)**
**Stock Pledge Agreement**

# STOCK PLEDGE AGREEMENT

This STOCK PLEDGE AGREEMENT, dated March ___, 2017 by and among New Five Paces Ventures, LLC, Five Paces Ventures, LLC, Five Paces Ventures Management, LLC and D. Alan Quarterman (collectively, "**Pledgors**"), _____ (the "**Creditor Trustee**") for and on behalf of the Creditor Trust (as such terms are defined in that certain Second Amended Plan of Reorganization of NexxLinx Corporation, Inc., et al. dated February ___, 2017) (the "**Plan**"), and NexxLinx Corporation, Inc., as the substantively consolidated Reorganized Debtor under the Plan (the "**Reorganized Debtor**").   Capitalized terms used herein and not otherwise defined shall have the respective meanings given to them in the Plan.

W I T N E S S E T H

WHEREAS, NexxLinx Corporation, Inc. ("**NexxLinx**"); NexxLinx Global, Inc. ("**NGI**"); NexxLinx of New York, Inc. ("**NNY**"); NexxLinx of Texas, Inc. ("**NTX**"); CustomerLinx of North Carolina, Inc. ("**CNC**"); Microdyne Outsourcing Inc. ("**MOI**"); and NexxPhase, Inc. ("**NexxPhase**"), (collectively, the "**Debtors**"), were debtors and debtors-in-possession in a jointly administered Chapter 11 Case (the "**Case**") which remains pending under the United States Bankruptcy Code   (the "**Bankruptcy Code**"), 11 U.S.C. § 101 *et seq.*, before the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (the "**Bankruptcy Court**");

WHEREAS, on _____, 2017, the Bankruptcy Court entered an Order confirming the Plan (the "**Confirmation Order**") pursuant to the Bankruptcy Code;

WHEREAS, Pledgors have agreed to pledge fifty-one percent (51%) of their interest in the outstanding stock of the Reorganized Debtor (the "**Pledged Securities**") to the Creditor Trust for the benefit of the Creditor Trust Beneficiaries, as security for the obligations of the Debtors under

the Plan;

WHEREAS, pursuant to the terms of the Plan which was accepted by Classes 9 and 10, each Creditor Trust Beneficiaries has agreed that the Creditor Trustee shall hold the Pledged Securities on their behalf as provided herein; and

WHEREAS, the Creditor Trustee is willing to accept the Pledged Securities as collateral for the Creditor Trust Beneficiaries, subject to terms and conditions hereinafter set forth.

NOW, THEREFORE, the Reorganized Debtor, Pledgors and Creditor Trustee agree as follows:

1.     <u>Pledged Securities</u>.

(a)     As security for the Debtors' obligations under Classes 9 and 10 of the Plan to Creditor Trust Beneficiaries, Pledgors hereby pledge, hypothecate, assign, transfer, set over and deliver unto the Creditor Trustee and hereby grant to the Creditor Trustee a security interest in the Pledged Securities, together with the proceeds thereof and all cash, additional securities or other property at any time and from time to time receivable or otherwise distributed in respect of or in exchange for any or all of such Pledged Securities, to have and to hold the Pledged Securities, together with all rights, title, interests, powers, privileges and preferences pertaining or incidental thereto, unto the Creditor Trustee, its successors and assigns, forever, subject, however, to the terms, covenants and conditions hereinafter set forth.

(b)     Pledgors hereby appoint the Creditor Trustee as each such Pledgors' attorney-in-fact for the purpose of carrying out the provisions of this Stock Pledge Agreement and taking any action and executing any instrument that the Creditor Trustee either may deem necessary or advisable to accomplish the purposes hereof, which appointment is irrevocable and coupled with an interest.  Without limiting the generality of the foregoing, should an Event of

Default (as hereinafter defined) have occurred hereunder, the Creditor Trustee shall have the right and power   (i) to receive, endorse and collect all checks and other orders for the payment of money made payable to the Pledgors representing any interest or dividend or other distribution payable with respect to the Pledged Securities or any part thereof and to give full discharge for the same, and (ii) to vote the Pledged Securities at any general or special meeting of the common shareholders and to exercise any rights and remedies available to the owner of the Pledged Securities under applicable law, the Reorganized Debtor's bylaws and articles of incorporation or the Plan.

(c)    The occurrence of any of the following acts, events or conditions shall constitute an "Event of Default" under this Agreement:

(i)    The Pledgors shall encumber or shall attempt to encumber, subject to any further pledge or security interest, sell, transfer or otherwise dispose of any of the Pledged Securities or any interest therein without written consent of the Creditor Trustee; or

(ii)    The interest of the Pledgors in the Collateral shall be attached or levied upon or seized in any legal proceedings, or held by virtue of any lien or distress, and such process is not vacated, bonded or discharged within ninety (90) days after the date of such levy or attachment; or

(iii)    The Reorganized Debtor fails or refuses at any time to fulfill or perform any material covenant, agreement or obligation under the Plan, and such failure or refusal shall continue without correction for a period of sixty (60) consecutive calendar days with respect to non-monetary covenants, agreements or obligations under the Plan, or thirty (30) consecutive calendar days with respect to any monetary covenants, agreements or

– 4 –

obligations under the Plan, each after written notice thereof from the Creditor Trustee to the Pledgors and the Reorganized Debtor.

(d)　　The Stock Pledge Agreement shall terminate when the Reorganized Debtor's payment obligations under the Plan have been completely satisfied, at which time the Creditor Trustee shall reassign and deliver to the Pledgors, or to such person or persons as the Pledgors shall designate, against receipt, the Pledged Securities, together with appropriate instruments of reassignment and release.

2.　　<u>Further Assurances</u>.

(a)　　Pursuant to the Plan and Confirmation Order, the Liens granted to the Creditor Trustee pursuant to Section 1 hereof (collectively, the "**Creditor Trust Liens**") are valid, enforceable and fully perfected as of the Effective Date without the need of any filing or recordation or other act that might otherwise be required in accordance with any local, state or federal law applicable to the creation or perfection of such Liens.

(b)　　The Reorganized Debtor agrees to comply with all of the terms and conditions to be performed on its part under the Plan.

3.　　<u>Limitation on Duties of Creditor Trustee.</u>

The Creditor Trustee shall have no duties with respect to the Pledged Securities except to hold the Pledged Securities for the benefit of the Creditor Trust as security for the Reorganized Debtor's obligations payable under the Plan to Creditor Trust, and to take such other actions as are herein expressly set forth.

4.　　<u>Indemnities</u>.

(a)　　The Creditor Trustee shall not be liable for any action or failure to act except

– 5 –

resulting from the gross negligence or willful misconduct of the Creditor Trustee.  The Reorganized Debtor hereby agrees to indemnify the Creditor Trustee against any liability, loss, cost, expense or damage which the Creditor Trustee may incur or suffer as a result of any claim or action arising in connection with or out of the collateral (including, but not limited to, any substitute collateral) and any collections thereunder, or in connection with any dispute between the Reorganized Debtor, the Creditor Trustee or the Pledgors, except as any such liability, loss, cost, expense or damage shall result solely from the gross negligence or willful misconduct of the Creditor Trustee.

(b)     Should the Creditor Trustee, before or after the termination of this Stock Pledge Agreement, become aware of or receive any conflicting demands to the Pledged Securities, the Creditor Trustee shall have the right to discontinue any and all further acts with respect to such Pledged Securities until such conflict is resolved to the satisfaction of the Creditor Trustee. The Creditor Trustee shall have a right to file suit in interpleader or for declaratory relief for determination of such conflict. The cost of any interpleader, declaratory or similar suit and reasonable attorneys' fees and expenses shall be borne by the Reorganized Debtor and/or its assignees involved in such dispute.

5.     _Counterparts_.   This Stock Pledge Agreement may be executed in counterparts and shall be effective as an agreement binding on all the parties hereto only when the Creditor Trustee has in his or her possession copies of this Stock Pledge Agreement duly executed by the Pledgors and the Reorganized Debtor.

6.     _Amendments_.   This Stock Pledge Agreement may be amended at any time in writing by the parties hereto.

– 6 –

7.    <u>Notices</u>.    All notices to be made under this Stock Pledge Agreement shall be sent

by overnight mail or hand delivery, and shall be effective upon receipt, to the following:

<u>To the Reorganized Debtor:</u>

Ashley R. Ray, Esq.
Scroggins & Williamson, P.C.
One Riverside
4401 Northside Parkway
Suite 450
Atlanta, Georgia 30327
Telephone:    (404) 893-3880

<u>To the Creditor Trustee:</u>

<u>To the Pledgors:</u>

New Five Paces Ventures, LLC
Five Paces Ventures, LLC
Five Paces Ventures Management, LLC
D. Alan Quarterman
c/o D. Alan Quarterman

Each party shall have the right, by written notice to the other party, to change the address

and the persons to whom notices are to be sent.

– 7 –

IN WITNESS WHEREOF, the parties have executed this Stock Pledge Agreement as of the date first above written.

"REORGANIZED DEBTOR"

_____

By:
Its:

"CREDITOR TRUSTEE"


_____


"PLEDGORS"

_____

New Five Paces Ventures, LLC
By:
Its:


_____

Five Paces Ventures, LLC
By:
Its:


_____

Five Paces Ventures Management, LLC
By:
Its:


_____

D. Alan Quarterman, Individually

**SCHEDULE 6.09**

**Creditor Trust Agreement**

## CREDITOR TRUST AGREEMENT

This Creditor Trust Agreement (the "**Agreement**") dated as of _____, 2017, which pertains to the administration of the Creditor Trust, is made effective as of the Effective Date[1] of the Plan, by and between Nexxlinx Corporation, Inc., ("**Nexxlinx**"); NexxLinx Global, Inc. ("**NGI**"); NexxLinx of New York, Inc. ("**NNY**"); CustomerLinx of North Carolina, Inc. ("**CNC**"); Microdyne Outsourcing Inc. ("**MOI**"), NexxLinx of Texas, Inc. ("**NTX**"), and NexxPhase, Inc. ("**Nexxphase**"), debtors and debtors-in-possession in the above-styled, jointly administered Chapter 11 cases (collectively, the "**Debtors**"), and _____, not individually, but solely in his capacity as the Creditor Trustee in accordance with the Plan.

### R E C I T A L S:

(A)    On June 28, 2016, (the "**Petition Date**"), NexxLinx, NGI, NNY, NTX, CNC, and MOI each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). On July 14, 2016, (the "**NexxPhase Petition Date**") NexxPhase filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Cases are jointly administered under Case No. 16-61225-pmb.

(B)    On July 11, 2016, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**").

(C)    On October 4, 2016, the Debtors filed their Debtors' Plan of Reorganization and Disclosure Statement to Accompany Debtors' Plan of Reorganization. Subsequently, on January 12, 2017, the Debtors filed their First Amended Plan of Reorganization and First Amended Disclosure Statement to Accompany First Amended Plan of Reorganization, and on February __, 2017, the Debtors filed their Second Amended Plan of Reorganization and Second Amended Disclosure Statement to Accompany Second Amended Plan of Reorganization (as amended, the "**Plan**").

(D)    On _____, 2017, the Bankruptcy Court entered the Confirmation Order confirming the Plan. A copy of the confirmed Plan is attached hereto as **Exhibit 1**.

(E)    The Plan provides for the creation of a post-confirmation Creditor Trust to hold and administer the Creditor Trust Assets and to distribute the proceeds therefrom, in accordance with the terms of this Agreement and the Plan. This Agreement is executed to establish the Creditor Trust and to facilitate the Plan.

(F)    The Creditor Trust is created on behalf of, and for the benefit of, Holders of Allowed Claims in Classes 9 and 10.

---

[1] Capitalized terms used herein and not otherwise defined in Article I shall have the meanings set forth in the Plan.

(G)      The respective powers, authority, responsibilities and duties of the Creditor Trustee shall be governed by this Agreement, the Plan, the Confirmation Order and other applicable orders issued by the Bankruptcy Court.

(H)      This Agreement is intended to supplement, complement and implement the Plan; *provided*, *however*, that except as otherwise expressly stated herein, if any of the terms and/or provisions of this Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern.

(I)      The Creditor Trust is intended to be treated as a "liquidating trust" pursuant to Treasury Regulation § 301.7701-4(d) and as a "grantor trust" for federal income tax purposes, pursuant to Section 671 through 679 of the Internal Revenue Code of 1986, as amended (the "**IRC Code**").  In the event that the Creditor Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the Creditor Trustee shall take such action as it shall deem appropriate to have the Creditor Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership within the meaning of Section 7704 of the IRC Code), including, if necessary, creating or converting it into a Delaware limited partnership or limited liability company that is so classified. For federal income tax purposes, the Creditor Trust Beneficiaries will be treated as the grantors and owners of the Creditor Trust and, therefore, will be responsible for the payment of tax on their respective allocable share of the taxable income of the Creditor Trust.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the parties to this Agreement agree as follows:

## ARTICLE I
## DEFINITIONS:

Any capitalized term used herein, but not otherwise defined, shall have the meaning set forth in the Plan.  For purposes of this Agreement, the following terms will have the meanings set forth below:

"**Beneficial Interests**" shall have the meaning ascribed thereto in Section 10.1 hereof.

"**Confidential Party**" shall have the meaning ascribed thereto in Section 18.4 hereof.

"**Trust Register**" shall have the meaning ascribed thereto in Section 10.4 hereof.

## ARTICLE II
## NAME OF TRUST AND CREDITOR TRUSTEE

The name of the Creditor Trust is the NexxLinx Creditor Trust.  The NexxLinx Creditor Trust shall be funded with payments by the Reorganized Debtor as set forth in Article 5, Sections 5.11 and 5.12 and shall receive all other Creditor Trust Assets on the Effective Date or such later date as specified in the Plan.  The Creditor Trust shall be entitled to liquidate any other Creditor Trust Assets.

_____ is hereby appointed to serve as the initial Creditor Trustee under the Plan, and hereby accepts this appointment and agrees to serve in such capacity effective upon the Effective Date of the Plan and pursuant to the terms of the Plan and this Agreement.  A successor Creditor Trustee shall be appointed as set forth in Section 12.1 hereof in the event the Creditor Trustee is removed or resigns pursuant to this Agreement or if the Creditor Trustee otherwise vacates the position.

## ARTICLE III
## DUTIES AND POWERS OF THE CREDITOR TRUSTEE

3.1     Generally

Except as otherwise provided in this Agreement, the Plan or the Confirmation Order, the Creditor Trustee shall control and exercise authority over the Creditor Trust Assets and shall be responsible for liquidating and administering (or abandoning, as the case may be) the Creditor Trust Assets and taking actions on behalf of, and representing, the Creditor Trust.  The Creditor Trustee shall have the authority to bind the Creditor Trust within the limitations set forth herein, but shall for all purposes hereunder be acting in the capacity of Creditor Trustee and not individually.

3.2     Scope of Authority of Creditor Trustee

Within the limitations set forth herein and subject to the provisions of the Plan, the responsibilities and authority of the Creditor Trustee, shall include, without limitation: (a) the making of Distributions with respect to Class 9 and Class 10 as contemplated in the Plan; (b) establishing and maintaining the Disputed Claim Reserves to be determined in the discretion of the Creditor Trustee; (c) conducting an analysis of Unsecured Claims not already allowed by prior order of the Court, and prosecuting objections thereto or settling or otherwise compromising such Claims if necessary and appropriate in accordance with the Plan; provided, however, except as otherwise set forth in the Plan, the Creditor Trustee shall not be entitled to prosecute objections to any Claim that is not held by a Creditor Trust Beneficiary, or that is not otherwise assigned to the Creditor Trustee after the Effective Date; (d) filing appropriate tax returns with respect to the Creditor Trust in the exercise of its fiduciary obligations; (e) retaining the Creditor Trust Professionals; (f) taking such actions as are necessary to prosecute, resolve or compromise, as appropriate, all Causes of Action assigned to the Creditor Trust; and (g) taking such actions as are necessary and reasonable to carry out the purposes of the Creditor Trust.

Additionally, the Creditor Trustee shall have the following rights, powers and duties, with respect to the Creditor Profit Sharing Payments:

(a)     On or before March 31, 2018, and each March 31 thereafter through and including 2025, the Reorganized Debtor shall provide the Creditor Trustee with the Reorganized Debtor's calculation of how much Adjusted Cash Available, if any, was earned during the last calendar year, together with any financial statements or other information supporting such calculation.

(b)     Upon receipt of the Reorganized Debtor's calculation, the Creditor Trustee shall have sixty (60) days to review the calculation, supporting documentation and information provided therewith, and the Reorganized Debtor shall also provide any other relevant information reasonably requested by the Creditor Trustee.  If the Creditor Trustee disputes the Reorganized Debtor's calculation, he or she may serve written notice of such dispute upon counsel for the Reorganized Debtor within such sixty (60) day period.  In the event the Creditor Trustee and the Reorganized Debtor cannot resolve such dispute by agreement within thirty (30) days of service of such written notice upon counsel for the Reorganized Debtor, then either party may request that the Court resolve such dispute and determine the proper calculation of Adjusted Cash Available and the appropriate amount of the Creditor Profit Sharing Payment with respect to the calendar year in question.

3.3     Creditor Trust Expenses.

(a)     All Creditor Trust Expenses will be charged against and paid from the proceeds of the Creditor Trust Assets, and the Creditor Trustee will pay the same as and when due and payable.

(b)     The Creditor Trust Professionals retained by the Creditor Trustee will submit periodic statements for services rendered and costs incurred to the Creditor Trustee and to the Post-Confirmation Committee for review and approval.  The Creditor Trustee and the Post-Confirmation Committee will have fifteen (15) days to object to any such statement.  In the event that any such objection is received by the relevant Creditor Trust Professional and cannot be promptly resolved by such Creditor Trust Professional and the Creditor Trustee or Post-Confirmation Committee, the dispute will be submitted by the Creditor Trustee to the Bankruptcy Court for adjudication.  The Bankruptcy Court will retain jurisdiction to adjudicate any such objection.  In the event that no objection is raised to a statement within the fifteen (15) day period, such statement will be promptly paid by the Creditor Trustee.

3.4     Fiduciary Duties of the Creditor Trustee.

Pursuant to the Plan and this Agreement, the Creditor Trustee will act in a fiduciary capacity on behalf of the Creditor Trustee Beneficiaries.

3.5     Additional Powers of Creditor Trustee.

In connection with the administration of the Creditor Trust, subject to and except as otherwise set forth in this Agreement or the Plan, the Creditor Trustee is hereby authorized to perform those acts necessary to accomplish the purposes of the Plan and of the Creditor Trust and to otherwise protect the interests of Creditor Trust Beneficiaries as contemplated in the Plan.  Other than the reports required by Section 6.15 of the Plan and 13.1 of this Agreement or as otherwise provided in the Plan, this Agreement, or the Confirmation Order, nothing in this Agreement shall require the Creditor Trustee to file any accounting or seek approval of any court with respect to the administration of the Creditor Trust, or as a condition for managing any payment or distribution out of the Creditor Trust Assets, although the Creditor Trustee may seek approval of the

Bankruptcy Court for any such action. Without limiting, but subject to, the foregoing, the Creditor Trustee shall be authorized, in his or her sole discretion, and subject to the limitations contained herein and in the Plan to:

(a)     hold legal title (on behalf of the Creditor Trust as Creditor Trustee, but not individually) in or arising from the Creditor Trust Assets and any other asset transferred to the Creditor Trust;

(b)      receive and take such action as may be necessary to take possession, custody or control of all assets and property to be distributed to the Creditor Trust pursuant to the Plan;

(c)     protect and enforce the rights to the Creditor Trust Assets vested in the Creditor Trust by the Plan by any method deemed appropriate in his or her sole discretion, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(d)     invest funds (in the manner set forth in Section 3.9, herein), make distributions and pay any other obligations owed by the Creditor Trust from the Creditor Trust Assets as provided herein and in the Plan;

(e)     consult with the Post-Confirmation Committee on a regular basis and keep the Post-Confirmation Committee fully advised as to the status of the Creditor Trust and the Creditor Trustee's activities;

(f)     prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, avoid and recover or otherwise deal with and settle, in accordance with the terms set forth in the Plan and Article VII hereof, Claims and rights of action in favor of or against the Creditor Trust, the Creditor Trustee or the Creditor Trust Assets, as the Creditor Trustee shall deem advisable, and to take any action necessary or appropriate to the foregoing;

(g)     pay expenses and make disbursements necessary to preserve, liquidate and enhance the Creditor Trust Assets, provided, however, that before the Creditor Trustee takes any action to preserve, liquidate or enhance any particular Creditor Trust Asset and such action is expected to cost more than ten thousand dollars ($10,000.00), the Creditor Trustee must prepare a budget for such actions, setting forth in reasonable detail the anticipated expenses, including professional fees, associated with such action. Such budget shall be updated and submitted to the Post-Confirmation Committee for approval on a monthly basis, and each such monthly update shall reflect the differences between the anticipated costs described in the monthly budget and the actual costs of the Creditor Trustee to date;

(h)     purchase such insurance coverage as the Creditor Trustee, in his or her sole discretion, deems necessary and appropriate with respect to the liabilities and obligations of the Creditor Trustee with respect to the Creditor Trustee's duties with respect to the Creditor Trust Assets (in the form of an errors and omissions policy, fiduciary policy or otherwise);

(i)      purchase such insurance coverage as the Creditor Trustee, in his or her sole discretion, deems necessary and appropriate with respect to real and personal property which may be or may become Creditor Trust Assets;

(j)      retain and pay, as applicable, professionals as provided in, and subject to the terms of, this Agreement;

(k)      settle, subject to the terms and conditions set forth in the Plan and Article VII hereof, any and all Disputed Claims;

(l)      incur any reasonable and necessary expenses in liquidating and converting the Creditor Trust Assets to Cash, or otherwise administering the Creditor Trust, as set forth in the Plan or this Agreement; and

(m)      assume such other powers as may be vested in or assumed by the Creditor Trustee pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement.

3.6      Limitation of Creditor Trustee's Authority; Post-Confirmation Committee

(a)      The Creditor Trustee shall have all the rights, powers and duties necessary to carry out its responsibilities under the Plan and this Agreement, subject to the advice and, as set forth herein, the approval, of the Post-Confirmation Committee.  The rights and powers of the Creditor Trustee, including payment of compensation and reimbursement of expenses for the Creditor Trustee or any professionals or employees employed by the Creditor Trustee, shall only be limited to the extent, and in the manner provided in, the Plan and this Agreement.  The Creditor Trustee may obtain the Post-Confirmation Committee's advice for any action by email, without a meeting, and advice shall be deemed to have been provided pursuant to majority vote of the Post-Confirmation Committee upon the Creditor Trustee's receipt of return emails from at least a majority of the Post-Confirmation Committee after a period of time reasonable under the circumstances.  If the Creditor Trustee determines, in his or her sole discretion, that a meeting of the Post-Confirmation Committee should be held or advice should be obtained on an emergency basis, the Creditor Trustee shall be entitled to convene a meeting of the Post-Confirmation Committee upon 24-hours' notice, and the Creditor Trustee shall be entitled to obtain advice by email upon 24-hours' notice.

(b)      In the event of a dispute between the Creditor Trustee and the Post-Confirmation Committee, or between either of said parties and any member of the Post-Confirmation Committee, the dispute shall be resolved by a vote among the members of the Post-Confirmation Committee.

3.7      Limitation of Creditor Trustee's Authority; No On-Going Business

Notwithstanding anything to the contrary under applicable law, this Agreement or the Plan, the authority of the Creditor Trustee is limited as follows:

(a)    For federal tax purposes, the Creditor Trustee shall not be authorized to engage in any trade or business with respect to the Creditor Trust Assets or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditor Trust.

(b)    The Creditor Trustee shall take such actions consistent with the prompt orderly liquidation of the Creditor Trust Assets as required by applicable law and consistent with the treatment of the Creditor Trust as a "liquidating trust" pursuant to Treasury Regulation § 301.7701-4(d) and as a "grantor trust" for federal income tax purposes, pursuant to the IRC Code to the extent such actions are permitted by this Agreement.

(c)    The Creditor Trustee shall not take, or fail to take, any action that would jeopardize treatment of the Creditor Trust as a "liquidating trust" and as a "grantor trust" for federal income tax purposes.

3.8    Other Activities

The Creditor Trustee shall be entitled to be employed by third parties while performing the duties required under the Plan and this Agreement, so long as such other employment does not involve holding or representing any interest adverse to the interests of the Creditor Trust, or otherwise preclude or impair the Creditor Trustee from performing his or her duties under the Plan and this Agreement.

3.9    Investment and Safekeeping of Creditor Trust Assets

Except as otherwise provided in the Plan, all Cash held by the Creditor Trust will be invested by the Creditor Trustee with sole and absolute discretion in only (a) direct obligations of, or obligations guaranteed by, the United States; (b) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States, as an agency or instrumentality thereof; (c) AAA rated tax-free securities issued by municipalities or state governments or agencies; or (d) such other obligations or instruments as may from time to time be approved for such investments by Final Order of the Bankruptcy Court; *provided*, *however*, that the Creditor Trustee may, to the extent it deems necessary, deposit moneys in demand deposits (including, without limitation, money market funds) at any commercial bank, trust company or other financial institution organized under the laws of the United States or any state thereof which has, at the time of such deposit, a capital stock and surplus aggregating at least $500,000,000. The investment powers of the Creditor Trustee will be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings or financial institutions or other temporary, liquid investments such as U.S. Treasury Bills. Such investments will mature in such amounts and at such times as may be deemed necessary by the Creditor Trustee, with sole and absolute discretion, to provide funds when needed to make Distributions and payments as required by the Plan.

The right and power of the Creditor Trustee to invest the Creditor Trust Assets transferred to the Creditor Trust, the proceeds thereof, or any income earned by the Creditor Trust, will be limited to the right and power to invest such Creditor Trust Assets (pending distributions in accordance with the Plan), as set forth in the Plan; *provided*, *however*, that the scope of any such

investments will be limited to include only those investments that a "liquidating trust" or "grantor trust", as more particularly set forth herein, may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service guidelines, whether set forth in Internal Revenue Service rulings, other Internal Revenue Service pronouncements, or otherwise.

## ARTICLE IV
## TERM AND COMPENSATION FOR CREDITOR TRUSTEE

4.1    Compensation

(a)    The Creditor Trustee shall be entitled to receive fair and reasonable compensation for services rendered on behalf of the Creditor Trust on an hourly basis and reimbursement of all reasonable, out-of-pocket expenses which shall be charged against and paid out of the Creditor Trust Assets pursuant to the normal hourly rates charged by the Creditor Trustee and its staff.  Provided, however, that the Creditor Trustee shall submit monthly statements for compensation to the Post-Confirmation Committee.  The Post-Confirmation Committee will have fifteen (15) days to object to any such statement.  In the event that any such objection is received by the Creditor Trustee and cannot be promptly resolved, the dispute will be submitted by the Creditor Trustee to the Bankruptcy Court for adjudication.  The Bankruptcy Court will retain jurisdiction to adjudicate any such objection.  In the event that no objection is raised to a statement within the fifteen (15) day period, such statement will be promptly paid by the Creditor Trustee.

(b)    Fees and expenses incurred by the Creditor Trustee shall be paid from the proceeds of the Creditor Trust Assets in accordance with Article VI of this Agreement.

4.2    Termination

The duties, responsibilities and powers of the Creditor Trustee will terminate on the date the Creditor Trust is dissolved under applicable law in accordance with the Plan, or by an order of the Bankruptcy Court.

4.3    No Bond

The Creditor Trustee shall not be obligated to obtain a bond but may do so, in his or her sole discretion but only after consultation with the Post-Confirmation Committee, in which case the expense incurred by such bonding shall be paid by the Creditor Trust.

4.4    Removal

The Creditor Trustee may be removed (i) at any time for cause by a Final Order of the Bankruptcy Court, after notice and a hearing; *provided however*, that the Creditor Trustee may not be removed until a successor Creditor Trustee has been named or is capable of being named immediately upon such removal, or (ii) the Post-Confirmation Committee may remove the Creditor Trustee at its discretion upon unanimous vote of all members without approval of the Bankruptcy Court, provided, however, that the Post-Confirmation Committee shall provide the Creditor Trustee with thirty (30) days written notice of its intent to remove the Creditor Trustee. For purposes of removing the Creditor Trustee, "cause" shall mean gross negligence, breach of fiduciary duty, breach of trust, and reckless or willful mishandling of the Creditor Trust Assets. If

the Creditor Trustee believes that its removal is not in the best interests of the Creditor Trust Beneficiaries, then the Creditor Trustee may seek Bankruptcy Court approval to continue as Creditor Trustee.  If such authority is sought, the Bankruptcy Court shall hear the matter and issue an Order resolving whether the Creditor Trustee shall continue or be replaced, or otherwise issue an appropriate order.  All reasonable fees and expenses incurred by the Creditor Trustee and the Post-Confirmation Committee in pursuit of the removal or continuation of the Creditor Trustee shall be paid by the Creditor Trust.

4.5     Resignation

The Creditor Trustee may resign at any time by filing a written notice of resignation with the Bankruptcy Court, and providing Designated Notice.  Any such resignation shall become effective on the earlier to occur of (i) sixty (60) days after the filing date of such notice; or (ii) the appointment of a successor Creditor Trustee, provided that such resignation shall not become effective until a successor agrees to serve as Creditor Trustee and executes this trust instrument.

4.6     Appointment of Successor Creditor Trustee

In the event of the death (in the case of a Creditor Trustee that is a natural person), dissolution (in the case of a Creditor Trustee that is not a natural person), resignation, incompetency or removal of the Creditor Trustee, the Post-Confirmation Committee shall designate a successor Creditor Trustee.  Every successor Creditor Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring Creditor Trustee an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Creditor Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring Creditor Trustee; provided, however, that a removed or resigning Creditor Trustee shall, nevertheless, when requested in writing by the successor Creditor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Creditor Trustee under the Creditor Trust all the estates, properties, rights, powers, and trusts of such predecessor Creditor Trustee.

**ARTICLE V**
**PROVISIONS REGARDING DISPUTED CLAIMS RESERVE AND DISTRIBUTIONS**

5.1     Distribution Agent.

The Creditor Trustee may act as the agent for making distributions to Creditor Trust Beneficiaries under the Plan (the "**Distribution Agent**") or may employ or contract with other Persons or Entities to serve as the Distribution Agent and assist in or make the Distributions required under the Plan, subject to approval of the Post-Confirmation Committee.

5.2     Distributions Under the Plan.

Within the time periods provided in the Plan, the Creditor Trustee will make periodic and final Distributions under the Plan from the Creditor Trust, except such amounts as are necessary to maintain any reserve determined appropriate by the Creditor Trustee, such amounts as are necessary to fund the Creditor Trust Expenses and any such other amounts required to be withheld in accordance with the terms of the Plan or determined as necessary to withhold in

the sole discretion of the Creditor Trustee. The Distribution Agent will withhold from amounts distributable to any Person any and all amounts, determined in the Distribution Agent's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement. The Distribution Agent will require any Person receiving a Distribution hereunder to furnish to the Distribution Agent in writing an employer identification number or taxpayer identification number as assigned by the Internal Revenue Service, and the Distribution Agent may condition any Distribution to any Person hereunder on receipt of such identification number.

5.3    Timing of Distributions

Unless otherwise provided herein or in the Plan, Distributions to Holders of Allowed Claims in Class 9 and/or Class 10 shall be made as and when provided in the Plan.

5.4    Disputed Claims Reserve.

For each Class of Claims entitled to a Distribution from the Creditor Trust, the Creditor Trustee will estimate, on or before the Distribution Date, the anticipated aggregate amount of all Disputed Claims in such Class as of such date, and will establish a Disputed Claims Reserve for such Class in an amount sufficient to make the Distributions to Holders of such Disputed Claims (to the extent such Disputed Claims are eventually Allowed Claims at, in the aggregate, the amount estimated by the Creditor Trustee) that would have been made to the Holders as of such date had the Claims been Allowed as of the Distribution Date. Any Cash remaining in the Disputed Claims Reserve after all Disputed Claims have been resolved, and have been issued the Distribution to which such Holders of Claims are due under the Plan and this Agreement, and the costs and expenses of the Creditor Trust and Creditor Trustee have been fully paid, will be available for Distribution to the other Creditor Trust Beneficiaries, provided however that if there are funds in the Disputed Claims Reserve that no longer must be reserved due to the settlement or disallowance of a Disputed Claim, then such funds, to the extent not needed to pay the allowed amount of any previously Disputed Claim, must be distributed to holders of Allowed Claims at the next distribution date. After any and all Cash in the Disputed Claims Reserve has been disbursed in accordance with the Plan, such Disputed Claims Reserve will be deemed dissolved.

5.5    Unclaimed Property.

(a)    Holding of Unclaimed Property. If a Distribution to any Holder of an Allowed Claim is Unclaimed Property, no additional Distributions will be made to such Holder unless and until the Creditor Trustee is notified in writing of such Holder's then current address in accordance with the Plan. Nothing contained in the Plan will required the Reorganized Debtor or the Creditor Trustee to attempt to locate any Holder of an Allowed Claim. The Creditor Trustee will hold all Unclaimed Property (and all interest, dividends and other distributions thereon) for the benefit of the Holders of Claims entitled thereto under the terms of the Plan. The Creditor Trustee will make all Distributions of Unclaimed Property on or after the Distribution Date as soon as reasonably practicable after such Unclaimed Property has become deliverable or has been claimed in accordance with the Plan.

(b)    <u>Distribution of Unclaimed Property</u>.  Unclaimed Property shall be held in an "Unpaid Claims Reserve" to be held for the benefit of the Holders of Allowed Claims entitled thereto under the terms of the Plan.

5.6    <u>Distribution to Holders of Claims Generally</u>.

(a)    <u>No Distribution in Excess of Allowed Claim</u>.  Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim will receive, in respect of such Claim, Distributions under the Plan in excess of the amount of its Allowed Claim; provided, however, that in the event (i) all Allowed Priority Tax Claims and all Allowed Secured Claims have been paid in full and (ii) the principal amounts of all Allowed Unsecured Claims have been paid in full and there are funds and assets remaining in the Creditor Trust, the Creditor Trustee, after obtaining approval from the Bankruptcy Court shall be permitted to pay interest on Allowed Unsecured Claims in an amount to be determined by the Creditor Trustee with approval from the Bankruptcy Court or to make such additional distributions to Holders of Allowed Unsecured Claims as may be determined by the Creditor Trustee subject to approval of the Bankruptcy Court.

(b)    <u>Disputed Payments</u>.  If any dispute arises as to the identity of a Holder of an Allowed Claim that is to receive any Distribution, the Distribution Agent may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account or otherwise hold such Distribution until the disposition thereof is determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute, which written agreement is reasonably acceptable to the Creditor Trustee.

(c)    <u>Withholding Taxes</u>.  Any federal or state withholding taxes or other amounts required to be withheld under any applicable law will be deducted and withheld from any Distributions made pursuant to the Plan.  All Persons holding Claims will be required to provide to the Distribution Agent any information necessary to effect the withholding of such taxes.  Notwithstanding the foregoing, each Holder of an Allowed Claim that is to receive a Distribution hereunder will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit on account of such Distribution, including, without limitation, withholding tax obligations in respect of in-kind (non-cash) Distributions.  Any party issuing an instrument or making an in-kind (non-cash) Distribution under the Plan has the right, but not the obligation, to refrain from making such Distribution until the Person to which the Distribution is to be made has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligation.

(d)    <u>Timing of Distributions under the Plan</u>.  Payments and Distributions in respect of Allowed Claims under the Plan will be made as provided in the Plan.

(e)    <u>Distributions after the Effective Date</u>.  Distributions made after the Effective Date to Holders of Allowed Claims that are Disputed Claims as of the Effective Date will be deemed to have been made on the Effective Date.  No interest will accrue or be payable on such Claims or any Distributions except as specifically provided herein.

(f)    <u>Manner of Payments</u>.  Any payments to be made by the Distribution Agent pursuant to the Plan will be made by checks drawn on accounts maintained by the Distribution

Agent or its professionals, or by wire transfer if circumstances justify, at the option of the Distribution Agent.

(g)    <u>Delivery of Distribution</u>.  Distributions to Holders of Allowed Claims will be made to the Holder's address as listed in the Schedules or in its proof of claim.

(h)    <u>Record Date for Distributions</u>.  The Distribution Agent will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims that are Holders of such Claims as of the close of business on the Distribution Record Date.  The Distribution Agent will instead be entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the official claims register as of the close of business on the Distribution Record Date.

(i)    <u>No Distributions Pending Allowance</u>.  Notwithstanding any other provision of the Plan, no payments or Distributions by the Distribution Agent will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn by agreement of the parties or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim; provided however, that the Creditor Trustee may, in his or her discretion, pay the Distribution due on account of any undisputed portion of a Disputed Claim.

5.7    <u>Setoffs</u>.

Except as otherwise provided in the Plan, the Confirmation Order or in an agreement approved by a Final Order of the Bankruptcy Court, the Creditor Trustee, with respect to any Creditor Trust Assets, may, pursuant to applicable law (including, without limitation, section 553 of the Bankruptcy Code), set off against any Distribution amounts related to any Claim before any Distribution is made on account of such Claim by the Creditor Trustee, any Bankruptcy Causes of Action against the Holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other act or omission of the Creditor Trustee, nor any provision of the Plan will constitute a waiver or release by the Debtors or the Creditor Trustee of any such Bankruptcy Cause of Action that the Debtors or the Creditor Trustee may possess against such Holder.  To the extent the Creditor Trustee fails to set off against a Claim and seek to collect a Bankruptcy Cause of Action from such Holder after a Distribution to such Holder has been made pursuant to the Plan, the Creditor Trustee, if successful in asserting such Bankruptcy Causes of Action, will be entitled to full recovery on the Bankruptcy Causes of Action against such Holder.

5.8    <u>Control of Claims Resolution Process</u>.

After the Effective Date, the Creditor Trustee, on behalf of the Creditor Trust, will have the power and authority to file and prosecute objections to, or negotiate, settle or otherwise resolve (upon obtaining each other's agreement), any and all Disputed Claims in Class 9 or Class 10 in accordance with the objection procedures set forth in the Plan and to prosecute or defend all appeals relating to such Disputed Claims.  The Creditor Trustee, on behalf of the Creditor Trust,

will have the power and authority to institute all Causes of Action which are Creditor Trust Assets and not otherwise waived and/or released under the Plan, and to prosecute or defend all appeals relating to such Causes of Actions on behalf of the Debtors or their Estates.

5.9     Distributions Under One Hundred Dollars.

If a Cash payment to be received by any Holder of an Allowed Claim on any Distribution Date (except Distributions payable with respect to Class 10 and except the final Distribution on the Consummation Date) would be $100 or less in the aggregate, notwithstanding any contrary provision of this Agreement or the Plan, no such payment will be made to such Holder, and such Cash, if applicable, shall be held for such Holder until the next Distribution Date, at which time such Cash payment shall be made to the Holder (unless this Section shall again apply).   The Creditor Trustee shall include an additional amount in the Reserve for unpaid Distributions resulting from this Section.

5.10     Fractional Distributions.

Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars by the Distribution Agent will not be required.   Whenever any Distribution of a fraction of a dollar would be required, the Distribution will reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

5.11     Final Distribution.

In accordance with the Plan and notwithstanding any other provision of the Plan to the contrary, in the event that: (a) in the discretion of the Creditor Trustee, the Creditor Trust, (i) has insufficient funds to make any further Distributions to the Creditor Trust Beneficiaries and (ii) has no remaining potential sources of funds; (b) all Allowed Class 9 Claims and Class 10 Claims have been paid in full; (c) it is impractical or impossible for the Creditor Trustee to make further distributions under the Plan; and (d) there are no Causes of Action pending, the Creditor Trustee shall either abandon the remaining Creditor Trust Assets or make a final Distribution of all remaining Creditor Trust Assets pursuant to the terms of the Plan; provided, however, that the Creditor Trustee shall be permitted to establish a reserve sufficient to pay all of the expenses of such final distribution and to pay such expenses to either the Creditor Trustee or Creditor Trust Professionals.

5.12     Full and Final Satisfaction against Creditor Trust.

On and after the Effective Date of the Plan, the Creditor Trust will have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Creditor Trust Agreement.   All payments and all Distributions made by the Creditor Trustee under the Plan will be in full and final satisfaction, settlement and release of and in exchange for all Claims or Equity Interests against the Creditor Trust.

5.13     Requirement of Undertaking.

The Creditor Trustee may request any court of competent jurisdiction to require, and any such court may in its discretion require, in any suit for the enforcement of any right or

remedy under the Plan, or in any suit against the Creditor Trustee for any act taken or omitted by the Creditor Trustee, that the filing party litigant in such suit undertake to pay the costs of such suit or post a bond, if required, and such court may in its discretion assess reasonable costs, including, without limitation, reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

5.14    <u>Extensions of Time</u>.

The Creditor Trustee may file a motion to extend any deadlines for the making of Distributions or the establishment of the Disputed Claims Reserve hereunder prior to the occurrence of any such deadlines, to the extent necessary, which deadlines shall be deemed automatically extended after the filing of such motion, and pending the entry of an order by the Bankruptcy Court extending any such deadline.

## ARTICLE VI
## TRUST FUNDING

6.1    <u>Trust Funding</u>

The Disputed Claims Reserve shall be established and funded in accordance with this Agreement and the Plan.  The costs and expenses of the Creditor Trust, including, without limitation, the compensation to and reimbursement of expense to the Creditor Trustee and the fees, costs and expenses of all Creditor Trust Professionals retained by the Creditor Trustee in connection with the performance of the Creditor Trustee's duties in connection with this Agreement, shall be paid from the proceeds of the Creditor Trust Assets in accordance with the Plan and this Agreement.

6.2    <u>Creditor Trust Assets</u>.

Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Creditor Trust Assets become available, the Debtors will be deemed to have automatically transferred to the Creditor Trust all of its right, title, and interest in and to all of the Creditor Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all such Creditor Trust Assets will automatically vest in the Creditor Trust free and clear of all Claims, liens, encumbrances and other liabilities, subject only to the Claims of the Trust Beneficiaries as set forth in the Plan and the expenses of the Creditor Trust and the Creditor Trustee as set forth herein and in the Creditor Trust Agreement, with all proceeds of the Creditor Trust to be distributed in accordance with the provisions of the Plan.  Thereupon, the Debtors will have no interest in or with respect to the Creditor Trust Assets or the Creditor Trust.

## ARTICLE VII
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

7.1    <u>Objections to Claims</u>.

On and after the Effective Date, the Creditor Trust will have the right to the exclusion of all others to make, file and prosecute objections to Disputed Claims in Class 9 or

Class 10 within one hundred eighty (180) days of the Effective Date ("**Claims Objection Deadline**").  The Creditor Trustee may conduct a review of the applicable books and records of the Debtors, the Schedules and all Proofs of Claim filed in the Case and, except as provided hereunder, the Creditor Trustee, on behalf of the Creditor Trust and the Debtors will file objections to such Claims (if any) with the Clerk of the Bankruptcy Court on or before the Claim Objection Deadline, which may be extended as set forth in the Plan at Section 16.01. The Creditor Trust, subject to approval of the Post-Confirmation Committee, may compromise, settle or otherwise resolve any Disputed Claim without further order of the Bankruptcy Court to the extent authorized under the Plan, and such compromise, settlement or other resolution will constitute a Final Order of the Bankruptcy Court with respect to the allowance of such Claim for all purposes under the Plan.

Before the Creditor Trustee prosecutes any objections to Disputed Claims in Class 9 and Class 10, it must submit to the Post-Confirmation Committee for approval a budget for any Claim objection he or she expects will cost more than ten thousand ($10,000.00).  Such budget shall set forth in reasonable detail the anticipated expenses, including professional fees, associated with objecting to the Disputed Claim.  Such budget shall be updated and submitted to the Post-Confirmation Committee for approval on a monthly basis, and each such monthly update shall reflect the differences between the anticipated costs described in the monthly budget and the actual costs of the Creditor Trustee to date.

7.2    Materiality of Dispute against Disputed Claims.

The Creditor Trustee shall not be obligated to object to any Claim, but shall consult with the Post-Confirmation Committee in deciding whether to object to any particular Claim.  No Distribution will be made with respect to any Disputed Claim (or any portion of such Claim) unless and until a Final Order allowing such Claim has been entered, or unless so determined in the discretion of the Creditor Trustee as set forth in Section 5.6(i) of this Agreement.

7.3    No Distribution In Respect of Disallowed Claims.

To the extent that a Disputed Claim is Disallowed in whole or in part, the Holder of such Claim will not receive any Distribution on account of the portion of such Claim (including, without limitation, the whole, if applicable) that is Disallowed.

## ARTICLE VIII
## LIABILITY AND EXCULPATION PROVISIONS

8.1    Liability, Indemnification of the Creditor Trustee, the Post-Confirmation Committee and the Creditor Trustee Professionals

Except to the extent of any Bond provided by the Creditor Trustee, if any, no recourse will ever be had, directly or indirectly, against the Creditor Trustee, the Post-Confirmation Committee, the Creditor Trustee Professionals and Creditor Trustee Non-Professionals or any other representatives, agents, employees, successors or assigns of the Creditor Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Creditor Trustee under the Plan or

this Agreement or by reason of the creation of any indebtedness by the Creditor Trustee under the Plan or this Agreement for any purpose authorized by the Plan or this Agreement. All such liabilities, covenants, and agreements of the Creditor Trustee, the Creditor Trustee Professionals, the Post-Confirmation Committee and Creditor Trustee Non-Professionals or any other representatives, agents, employees, successors or assigns of the Creditor Trustee, whether in writing or otherwise, under the Plan or this Agreement will be enforceable only against, and will be satisfied only out of any such Bond, if any, and the Creditor Trust Assets or such part thereof as will, under the terms of any such agreement, be liable therefor, or will be evidence only of a right of payment out of the income and Creditor Trust Assets, as the case may be. Every undertaking, contract, covenant or agreement entered into in writing by the Creditor Trustee will provide expressly against the personal liability of the Creditor Trustee.

Neither the Creditor Trustee, the Post-Confirmation Committee, the Creditor Trustee Professionals and Creditor Trustee Non-Professionals nor any other representatives, agents, employees, successors or assigns of the Creditor Trustee will be liable for any act or omission of one another, nor will the Creditor Trustee, the Post-Confirmation Committee, the Creditor Trust Professionals and Creditor Trustee Non-Professionals or any other representatives, agents, employees, successors or assigns of the Creditor Trustee be liable for any act or omission taken or not taken in such capacity other than for specific acts or omissions resulting from the Creditor Trustee's, the Post-Confirmation Committee's, the Creditor Trust Professionals' and Creditor Trustee Non-Professionals' or any other representatives, agents, employees, successors or assigns of the Creditor Trustee willful misconduct or fraud. The Creditor Trustee and the Post-Confirmation Committee may, in connection with the performance of his or her or its functions, and in his or her or its sole and absolute discretion, consult with the Creditor Trust Professionals and Creditor Trustee Non-Professionals, and will not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such entities, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Creditor Trustee nor the Post-Confirmation Committee will be under any obligation to consult with the Creditor Trust Professionals and Creditor Trustee Non-Professionals, and the determination not to do so will not result in the imposition of liability on the Creditor Trustee, the Post-Confirmation Committee, the Creditor Trust Professionals and Creditor Trustee Non-Professionals or any other representatives, agents, employees, successors or assigns of the Creditor Trustee, unless such determination is based on willful misconduct or fraud. The Creditor Trust will indemnify and hold harmless the Creditor Trustee, the Post-Confirmation Committee, the Creditor Trustee Professionals and Creditor Trustee Non-Professionals or any other representatives, agents, employees, successors or assigns of the Creditor Trustee from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorney's fees, disbursements and related expenses), which such Persons may incur or to which such Persons may become subject to in connection with any action, suit, proceeding or investigation brought by or threatened against such Persons arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Creditor Trust or the Plan or the discharge of their duties hereunder, to the extent such losses are not covered by a Bond, if any, or other applicable insurance, *provided*, *however*, that no such indemnification will be made to such Persons for actions or omissions as a result of their willful misconduct or fraud.

8.2     Reliance by Creditor Trustee

Except as otherwise provided herein:

(a)     the Creditor Trustee may rely, and will be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper Person or Persons.

(b)     the Creditor Trustee shall not be liable for any action reasonably taken or not taken by it in reasonable reliance upon the advice of a Creditor Trustee Professional or Creditor Trustee Non-Professional; and

(c)     persons providing services to the Creditor Trustee shall look only to the Creditor Trust Assets to satisfy any liability incurred by the Creditor Trustee to such person in carrying out the terms of this Agreement, and neither the Creditor Trustee nor the Post-Confirmation Committee shall have any personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Creditor Trustee are determined by a Final Order to be solely due to the Creditor Trustee's own willful misconduct or fraud.

## ARTICLE IX
## ESTABLISHMENT OF THE CREDITOR TRUST

9.1     Transfer of Assets to Creditor Trust; Assumption of Liabilities

(a)     Pursuant to the Plan, the Debtors and the Creditor Trustee hereby establish the Creditor Trust on behalf of the Creditor Trust Beneficiaries to be treated as the grantors and deemed owners of the Creditor Trust Assets, and the Debtors hereby transfer, assign and deliver to the Creditor Trust, on behalf of the Creditor Trust Beneficiaries, all of their right, title and interest in the Creditor Trust Assets, including Causes of Action of such Debtors other than Excluded Causes of Action, other than any waived, exculpated or released in accordance with the provisions of the Plan, notwithstanding any prohibition of assignability under applicable non-bankruptcy law. Such transfer includes, but is not limited to, all rights to assert, waive or otherwise exercise any attorney-client privilege, work product protection or other privilege, immunity, or confidentiality provision vested in, or controlled by, the applicable Debtor. The Creditor Trustee agrees to accept and hold the Creditor Trust Assets for the benefit of the Creditor Trust Beneficiaries, subject to the terms of the Plan and this Agreement.

9.2     Title to Assets

(a)     Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Creditor Trust Assets become available, the Debtors shall be deemed to have automatically transferred to the Creditor Trust all of their right, title, and interest in and to all of the Creditor Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Creditor Trust free and clear of all Claims and liens, subject only to the Allowed Claims of the Creditor Trust Beneficiaries as set forth in the Plan and the expenses of the Creditor Trust as set

forth in the Plan and in this Agreement.  Thereupon, the Debtors shall not have any interest in or with respect to the Creditor Trust Assets or the Creditor Trust.

(b)    For all federal income tax purposes, all parties to this Agreement and the Creditor Trust Beneficiaries shall treat the transfer of the Creditor Trust Assets by the Debtors to the Creditor Trust, as set forth herein and in the Plan, as a transfer of such assets by the Debtors to the Creditor Trust Beneficiaries entitled to Distributions under this Agreement, followed by a transfer by such Creditor Trust Beneficiaries to the Creditor Trust.  Thus, the Creditor Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

9.3    Valuation of Assets

As soon as reasonably practicable after the Effective Date, the Creditor Trustee (to the extent that the Creditor Trustee deems it necessary or appropriate in his or her sole discretion) will value the Creditor Trust Assets based on the good faith determination of the value of such Creditor Trust Assets, provided that such valuation can be based on reasonable estimates of the Creditor Trustee, and the Creditor Trustee does not need to obtain formal appraisals of any Creditor Trust Assets.  The valuation will be used consistently by all parties (including the Debtors, the Creditor Trustee, and the Creditor Trust Beneficiaries) for all federal income tax purposes.  The Bankruptcy Court will resolve any dispute regarding the valuation of the Creditor Trust Assets.

## ARTICLE X
## BENEFICIAL INTERESTS

10.1    Allocation of Beneficial Interests to Holders of Claims.

On the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Claim which is a Creditor Trust Beneficiary shall be allocated its Pro Rata Share of beneficial interests in the Creditor Trust (the "**Beneficial Interests**") on account of its Allowed Claim.  Provided, however, that the Creditor Trustee shall have the discretion to establish such pro-rata interests taking into account (i) the value of assets held in the Creditor Trust;  (ii) the outstanding amounts and priorities of the Class 9 Claims and the Class 10 Claims; (iii) the amounts at issue for any Disputed Claims and (iv) such other factors as the Creditor Trustee may determine appropriate.  The Creditor Trustee shall be further permitted to modify interests of Creditor Trust Beneficiaries, from time to time, to take into account (i) changes in the value of Creditor Trust Assets held in the Creditor Trust; (ii) the satisfaction or resolution of Disputed Claims and (iii) such other factors as the Creditor Trustee may determine appropriate.

10.2    Allocation of Beneficial Interests to Holders of Disputed Claims or Interests.

No Beneficial Interest shall be allocated to the Holder of a Disputed Claim unless and until such Claim is an Allowed Claim.

10.3    Transfer of Beneficial Interests.

The Beneficial Interests shall not be transferable except by operation of law.  No transfer of a Beneficial Interest shall be effective or binding upon the Creditor Trust for any

purpose, unless and until written notification of such transfer is sent by certified mail to the Creditor Trustee and received by the Creditor Trustee.

10.4    Register Entries Regarding Beneficial Interests.

The Creditor Trustee shall create, maintain and make appropriate notations in a trust register (the "**Trust Register**") and calculate the following ratios prior to each Distribution to the Creditor Trust Beneficiaries:

(a)    the Beneficial Interest and Allowed Claim held by each Creditor Trust Beneficiary; and

(b)    the Beneficial Interest that would otherwise be attributable to the Holder of a Disputed Claim were such claim to become an Allowed Claim.

10.5    Representation of Beneficial Interest.

The Beneficial Interests shall be uncertificated.  The Beneficial Interests shall be represented by appropriate book entries in the Trust Register.

10.6    Trust Register.

(a)    Register of Beneficial Interests.  The Creditor Trustee shall cause the Trust Register to be kept at the office of the Creditor Trustee or at such other place or places that shall be designated by the Creditor Trustee from time-to-time.

(b)    Access to Register by Creditor Trust Beneficiaries.  The Creditor Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Creditor Trustee, and in accordance with reasonable regulations prescribed by the Creditor Trustee, to inspect and at the expense of the Creditor Trust Beneficiary make copies of the Trust Register, in each case only for a purpose reasonable and related to such Creditor Trust Beneficiary's Beneficial Interest in the Creditor Trust.  The Post-Confirmation Committee may obtain a copy of the Trust Register upon reasonable written notice to the Creditor Trustee.

(c)    Absolute Owners.  The Creditor Trustee may deem and treat each Creditor Trust Beneficiary of record as determined pursuant to this Agreement as the absolute owner of such Creditor Trust Beneficiary's Beneficial Interests for the purpose of receiving Distributions and payment thereon or on account thereof and for all other purposes whatsoever.

(d)    Changes to the Trust Register.  The Trust Register shall be amended to reflect the resolution of a Disputed Claim.

10.7    Identification of Creditor Trust Beneficiaries.

In order to determine the actual names and addresses of the Creditor Trust Beneficiaries, the Creditor Trustee shall be entitled to conclusively rely on the names and addresses as determined in accordance with Sections 5.6(g) and (h) herein.

# ARTICLE XI
# ADMINISTRATION

### 11.1    Purpose of the Creditor Trust.

The Creditor Trust will be established for the primary purpose of liquidating the Creditor Trust Assets, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditor Trust. Accordingly, the Creditor Trustee will, in an expeditious but orderly manner, liquidate and convert to Cash the Creditor Trust Assets, make timely distributions to the Trust Beneficiaries and not unduly prolong its duration. The Creditor Trust will not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Creditor Trust Agreement.

### 11.2    Books and Records

The Creditor Trustee shall maintain books and records relating to the administration of the Creditor Trust Assets and the distribution by the Creditor Trustee of the proceeds therefrom in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law. The Creditor Trustee shall also maintain books and records relating to the income and expenses of the Creditor Trust, and the payment of expenses of and liabilities of, claims against or assumed by, the Creditor Trust in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law. Except as otherwise provided herein or in the Plan, nothing in this Agreement requires the Creditor Trustee to file any accounting or seek approval of any court with respect to the administration of the Creditor Trust, or as a condition for making any payment or distribution out of the Creditor Trust Assets. Subject to all applicable privileges, the Trust Beneficiaries shall have the right, in addition to any other rights they may have pursuant to this Agreement, under the Plan or otherwise, upon twenty (20) days' prior written notice to the Creditor Trustee, to request a reasonable inspection of the books and records held by the Creditor Trustee, *provided that*, all costs associated with such inspection shall be paid in advance by such requesting Creditor Trust Beneficiary, and further, if so requested, such Creditor Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Creditor Trustee, and make such other arrangements as may be reasonably requested by the Creditor Trustee. The Post-Confirmation Committee may obtain information relating to the management of the Creditor Trust Assets upon reasonable written notice to the Creditor Trustee, subject to applicable privileges, confidentiality requirements and applicable law.

### 11.3    Compliance with Laws

Any and all distributions of Creditor Trust Assets shall comply with all applicable laws and regulations, including, but not limited to, applicable federal and state tax and securities laws.

# ARTICLE XII
## SUCCESSOR CREDITOR TRUSTEE

### 12.1    Successor Creditor Trustee

In the event the Creditor Trustee is removed or resigns pursuant to this Agreement or the Creditor Trustee otherwise vacates his position, a successor Creditor Trustee shall be appointed as set forth herein and in the Plan.  Thereupon, such successor Creditor Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of his/her predecessor in the Creditor Trust with like effect as if originally named herein; *provided*, *however*, that a removed or resigning Creditor Trustee shall, nevertheless, when requested in writing by the successor Creditor Trustee, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor Creditor Trustee all the estates, properties, rights, powers, and trusts of such removed or resigning Creditor Trustee.

# ARTICLE XIII
## REPORTING

### 13.1    Annual and Final Reports

Every six months, beginning on the last business day of the six month anniversary of the Effective Date, or such other date as shall be determined by the Creditor Trustee, the Creditor Trustee shall file a report with the Bankruptcy Court setting forth the assets, liabilities and activities of the Creditor Trust during the prior six months, including a statement of all amounts paid for compensation of professionals and the Creditor Trustee, and the Creditor Trustee shall serve a copy upon all parties entitled to Designated Notice.  The Post-Confirmation Report of Creditor Trust shall be in addition to any operating reports which the Reorganized Debtor may be obligated to file.

### 13.2    Federal Income Tax

(a)    Grantor Trust Status.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Creditor Trustee of a private letter ruling if the Creditor Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Creditor Trustee), the Creditor Trustee shall file returns for the Creditor Trustee as a grantor trust pursuant to Treas. Reg. § 1.671-4(a).

(b)    Allocations of Creditor Trust Taxable Income.  Subject to the provisions of Section 13.2(a) hereof, allocations of Creditor Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the Creditor Trust had distributed all of its other assets (valued for this purpose at their tax book value) to Creditor Trust Beneficiaries (treating any Holder of a Disputed Claim, for this purpose, as a current Creditor Trust Beneficiary entitled to distributions), taking into account all prior and concurrent distributions from the Creditor Trust (including any distributions held in reserve pending the resolution of Disputed Claims).  Similarly, taxable losses of the Creditor Trust will be allocated by reference to the manner in which an economic loss would

be borne immediately after a liquidating distribution of the remaining Creditor Trust Assets. The tax book value of the Creditor Trust Assets for this purpose shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Creditor Trust, adjusted in either case in accordance with tax accounting principles prescribed by the Internal Revenue Code, the Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

13.3    Other

The Creditor Trustee shall file (or cause to be filed) any other statement, returns or disclosures relating to the Creditor Trust or the Creditor Trust Assets, that are required by any governmental unit.

## ARTICLE XIV
## TRANSFER OF TRUST BENEFICIARIES' INTERESTS

14.1    Transfer of Creditor Trust Beneficiaries' Interests

The interests of the Creditor Trust Beneficiaries in the Creditor Trust, which are reflected only on the records of the Creditor Trust maintained by the Creditor Trustee, are not negotiable and shall not be assignable voluntarily. In the case of a deceased individual Creditor Trust Beneficiary, his or her executor or administrator shall succeed to such decedent's interests. The Creditor Trustee shall not be required to record any transfer in favor of any transferee that, in the sole discretion of the Creditor Trustee, is or might be construed to be ambiguous or to create uncertainty as to the Holder of the Interest in the Creditor Trust. Until a transfer is in fact recorded on the Trust Register, the Creditor Trustee, whether or not in receipt of documents of transfer or other documents relating to the transfer, may nevertheless make Distributions and send communications to Trust Beneficiaries, as though he or she has no notice of any such transfer, and in so doing the Creditor Trustee shall be fully protected and incur no liability to any purported transferee or any other Entity.

## ARTICLE XV
## CREDITOR TRUSTEE PROFESSIONALS AND NON-PROFESSIONALS

15.1    Retention of Creditor Trustee Professionals and Creditor Trust Non-Professionals.

(a)    The Creditor Trustee shall have the right to retain his or her own professionals including, without limitation, claims, disbursing and transfer agents, legal counsel, accountants, experts and other agents or advisors, as the Creditor Trustee deems appropriate (the "**Creditor Trustee Professionals**") and on such terms as the Creditor Trustee deems appropriate; provided, however, that the Creditor Trustee shall obtain approval from the Post-Confirmation Committee prior to retaining any Creditor Trustee Professionals. The Creditor Trustee Professionals shall be compensated in accordance with Section 15.2 hereof and the Plan. The Creditor Trustee Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of the Debtors and of the Committee.

(b)    The Creditor Trustee shall have the right to retain non-professionals including, without limitation, employees, independent contractors or other agents as the Creditor Trustee deems appropriate (the "**Creditor Trustee Non-Professionals**") and on such terms as the Creditor Trustee deems appropriate; provided, however, that the Creditor Trustee shall obtain approval from the Post-Confirmation Committee prior to retaining any Creditor Trustee Professionals.  Such Creditor Trustee Non-Professionals shall be compensated in accordance with Section 15.2 hereof and the Plan.  The Creditor Trustee Non-Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, employees, independent contractors or agents of the Debtors and of the Committee.

15.2    <u>Payment to Creditor Trustee Professionals and Creditor Trust Non-Professionals</u>

(a)    After the Effective Date, the Creditor Trustee Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Creditor Trustee and the Post-Confirmation Committee, including in such invoices a description of the work performed, who performed such work, and if billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses.  The Creditor Trustee shall pay those invoices promptly following the expiration of a fifteen (15) days objection period, without Bankruptcy Court approval, unless the Creditor Trustee or the Post-Confirmation Committee objects.  If there is a dispute as to a part of an invoice, the Creditor Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount if the Creditor Trustee Professionals and the Creditor Trustee cannot otherwise reach agreement.

(b)    After the Effective Date, the Creditor Trustee Non-Professionals shall be required to submit to the Creditor Trustee and the Post-Confirmation Committee periodic invoices containing information with sufficient detail to assess the reasonableness of the fees and charges.  The Creditor Trustee shall pay those invoices promptly following the expiration of a fifteen (15) days objection period, without Bankruptcy Court approval, unless the Creditor Trustee or the Post-Confirmation Committee objects.  If there is a dispute as to a part of an invoice, the Creditor Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount if the Creditor Trustee Non-Professionals and the Creditor Trustee cannot otherwise reach agreement.

(c)    All payments to Creditor Trustee Professionals and Creditor Trustee Non-Professionals shall be paid out of the Creditor Trust Assets.

**ARTICLE XVI**
**<u>TERMINATION OF CREDITOR TRUST</u>**

16.1    <u>Duration and Extension</u>.

The Creditor Trust will be dissolved the earlier of (i) the date on which all Creditor Trust Assets have been liquidated and distributed in accordance with the terms of the Plan, or (ii) six (6) years from the Effective Date unless the Bankruptcy Court, upon a motion filed prior to the sixth (6th) anniversary or the end of any extension period approved by the Bankruptcy Court (the filing of which will automatically extend the term of the Creditor Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period

extension (not to exceed two (2) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or opinion letter that any further extension would not adversely affect the status of the Creditor Trust ) is necessary to facilitate or complete the recovery and liquidating of the Creditor Trust Assets.  After (a) the final Distribution of the Disputed Claims Reserve and the balance of the Creditor Trust Assets pursuant to the Plan, and (b) the filing by or on behalf of the Creditor Trust of a certification of dissolution with the Bankruptcy Court in accordance with the Plan, the Creditor Trust will be deemed dissolved for all purposes without the necessity for any other or further actions.

      16.2   <u>Diligent Administration</u>

      The Creditor Trustee shall (a) not unduly prolong the duration of the Creditor Trust; (b) at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Creditor Trust Assets; (c) consult and confer with the Post-Confirmation Committee and keep it fully advised of his or her activities; and (d) effect the liquidating and distribution of the Creditor Trust Assets to the Trust Beneficiaries in accordance with the terms of the Plan and this Agreement.

**ARTICLE XVII**
**AMENDMENT AND WAIVER**

      17.1   <u>Amendment and Waiver</u>

      Any substantive provision of this Agreement may be materially amended or waived only by order of the Bankruptcy Court if necessary to implement the Plan; *provided*, *however*, that no change may be made to this Agreement that would adversely affect the federal income tax status of the Creditor Trust as a "grantor trust."  Technical or non-material amendments to or waivers of portions of this Agreement may be made as necessary to clarify this Agreement or to enable the Creditor Trust to effectuate the terms of this Agreement, with the consent of the Creditor Trustee and the Post-Confirmation Committee.

**ARTICLE XVIII**
**MISCELLANEOUS PROVISIONS**

      18.1   <u>Intention of Parties to Establish Grantor Trust</u>

      This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust.

      18.2   <u>Preservation of Privilege</u>

      In connection with the vesting and transfer of the Creditor Trust Assets, including rights and Bankruptcy Causes of Action, any attorney-client privilege, work-product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors shall be transferred to the Creditor Trust and shall vest in the Creditor Trust.  Accordingly, in connection with the prosecution and/or investigation of the Bankruptcy Causes of Action by the Creditor Trustee, any and all directors, officers, employees, counsel, agents, or attorneys-in-fact of the Debtors, cannot

assert any attorney-client privilege, work product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors or otherwise prevent, hinder, delay, or impede production or discussion of documents or communications requested by the Creditor Trustee in discovery (whether formal or informal, and including without limitation, depositions, written discovery, and interviews).  The Debtors and the Creditor Trustee shall take all necessary actions to protect the transfer of such privileges, protections and immunities.

18.3    Prevailing Party

The prevailing party in a dispute regarding the provisions of this Agreement or the enforcement thereof shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.

18.4    Confidentiality

The Creditor Trustee and each of his or her respective employees, members, agents, professionals and advisors, including the Creditor Trustee Professionals and Creditor Trustee Non-Professionals, (each a "**Confidential Party**" and collectively the "**Confidential Parties**") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Entity to which any of the Creditor Trust Assets relates; *provided*, *however*, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, or (b) such disclosure is required of the Confidential Parties pursuant to legal process, including, but not limited to, subpoena or other court order or other applicable laws or regulations.  In the event that any Confidential Party is requested to divulge confidential information pursuant to clause (b) above, such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Creditor Trustee and the Debtors to allow them sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Creditor Trustee and/or the Debtors in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

18.5    Laws as to Construction

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without giving effect to rules governing the conflict of law.

18.6    Severability

Except with respect to provisions herein that are contained in the Plan, if any provision of this Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and shall be valid and enforceable to the fullest extent permitted by law.

18.7    Notices

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, on the third (3rd) Business Day after such notice is delivered by (i) facsimile (at the number set forth below with proof of confirmation), (ii) overnight delivery, (iii) electronic mail, or (iv) certified mail, with return receipt requested at the address as set forth below, or such other addresses as may be filed with the Bankruptcy Court:

**As to the Debtors:**


**As to the Creditor Trustee:**


**As to the Post-Confirmation Committee:**


18.8    Notices if to a Creditor Trust Beneficiary

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, on the fifth (5th) Business Day after deposited, first class postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address as determined in accordance with the Trust Register.

18.9    Survivability

Notwithstanding any provision of the Plan to the contrary, the terms and provisions of this Agreement shall remain fully binding and enforceable notwithstanding any vacancy in the position of the Creditor Trustee.

18.10    Headings

The section headings contained in this Agreement are solely for the convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

18.11    Conflicts with Plan Provisions

Except as otherwise expressly stated herein, if any of the terms and/or provisions of this Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern.

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Dated:  March _____, 2017

**SCHEDULE 11.01**

**Customer Contracts**

Pursuant to Section 11.01 of the Plan, the following executory contracts, customer care agreements and statements of work, and any amendments or modifications thereto, shall be assumed as of the Effective Date.

| Customer Name | Description |
|---|---|
| Aramark Business Services Group, Inc.<br>Attn: Ted Orman, Aramark Tower<br>Philadelphia, PA 19107 | Level One Support Agreement 05-19-2000 |
| Cairo-Durham Central School<br>PO Box 780<br>Cairo, NY 12413<br>(T): 518-622-8534<br>(F): 518-622-9566<br>(E): arogers@cairodurham.org | Data processing and fulfillment |
| Catskill Central School<br>347 West Main Street<br>Catskill, NY 12414<br>(T): 518-943-4550 x 4<br>(F): 518-943-7108<br>(E): ncolon@catskillcsd.org | Data processing and fulfillment |
| City of Peekskill<br>Ann Scaglione, CPA<br>840 Main Street<br>Peekskill, NY 10566<br>(E): ascaglione@cityofpeekskill.org | Data processing and fulfillment |
| Clarus Marketing Group/Freeshipping.com<br>100 Roscommon Drive, Suite 100<br>Middletown, CT 06457<br>(T): 860-358-9198 x 109<br>(E): accountspayable@claruscommerce.com | Data processing and fulfillment |
| Claryville Fire Dept.<br>Glen Vendberg, Box 146<br>Claryville, NY 12725<br>(T): 845-985-2943<br>(E): bungst1@hughes.net | Data processing and fulfillment |
| Cochecton Vol Amb Corp<br>PO Box 14<br>Cochecton, NY 12726<br>(T): 845-794-8881<br>(F): 845-794-1454<br>(E): cnearing69@yahoo.com | Data processing and fulfillment |
| Coxsackie-Athens Central<br>Sunset Boulevard<br>Coxsackie, NY 12051<br>(T): 518-731-1715<br>(F): 518-731-1729 | Data processing and fulfillment |

| | |
|---|---|
| (E): lcopleston@coxsackie-athens.org | |
| Eldred Central School<br>Dan Grecco<br>600 Route 55<br>PO Box 249<br>Eldred, NY 12732<br>(T): 845-557-8070<br>(F): 845-557-8912<br>(E): thorntonw@eldred.K12.ny.us | Data processing and fulfillment |
| Ellenville Central School<br>Attn: Denise Avery<br>28 Maple Avenue<br>Ellenville, NY 12428<br>(T): 845-647-0120<br>(F): 845-647-8038<br>(E): davery@ecs.k12.ny.us | Data processing and fulfillment |
| ExecSense<br>Veita Singh<br>330 Hudson Street<br>New York, NY 10013<br>(E): veita.singh@ft.com | FT Europe SOW 01-17-2013 |
| F T Publications, Inc.<br>Attn: Natalie Dowle<br>330 Hudson Street<br>New York, NY 10013 | FT Europe SOW 01-17-2013 |
| Fallsburgh High School<br>Attn: Daniel Grecco<br>PO Box 124<br>Fallsburg, NY 12733<br>(T): 845-434-5884 x 1219<br>(F): 845-434-0418<br>(E): dgrecco@fallsburgcsd.net | Data processing and fulfillment |
| Gilboa-Conesville Central<br>Kathy L. Ramundo<br>132 Wycoff Road<br>Gilboa, NY 12076<br>(T): 607-588-7541 x 6<br>(F): 607-588-6820<br>(E): kramundo@gccs.us | Data processing and fulfillment |
| Golf Channel Solutions<br>Attn: Angela Vega<br>7580 Golf Channel Dr.<br>Orlando, FL 32819 | Data processing and fulfillment |

| | |
|---|---|
| Greene County<br>Laura Van Valken<br>411 Main Street<br>Catskill, NY 12414<br>(T): 518-719-3520<br>(F): 518-719-3791<br>(E): lvanvalkenburg@discovergreene.com | Data processing and fulfillment |
| Greenville Central School<br>Tammy Sutherland<br>Route 81 PO Box 129<br>Greenville, NY 12083<br>(T): 518-966-5070 x 511<br>(F): 518-966-8346<br>(E): sutherlandt@greenville.k12.ny.us | Data processing and fulfillment |
| Hensonville Hose Co<br>Attn: Debra S. Sherman<br>PO Box 297<br>Hensonville, NY 12439<br>(T): 518-734-3040<br>(F): 518-734-3010<br>(E): chief1310@hotmail.com | Data processing and fulfillment |
| Hunter-Tannersville CSD<br>Ralph Marino, Jr.<br>6094 Main Street<br>Tannersville, NY 12485<br>(T): 518-589-5400 x 1002<br>(F): 518-589-5403<br>(E): mromito@htcsd.org | Data processing and fulfillment |
| Kenoza Lake Fire Dept.<br>Edward Neumann<br>PO Box 51<br>Kenoza Lake, NY 12750<br>(T): 845-482-3620<br>(E): edwinneumann87@yahoo.com | Data processing and fulfillment |
| Kiryas Joel UFSD<br>Shaye Werceberger<br>48 Bakertown Rd. Suite 401<br>Monroe, NY 10950<br>(T): 845-782-2300 x 109 | Data processing and fulfillment |
| Kiskatom Fire Dist.<br>c/o Carol Kenyon<br>439 Main Street<br>Catskill, NY 12414 | Data processing and fulfillment |

| | |
|---|---|
| Lack Huntington/Cocechton Vol. Fire Dept.<br>Edward Kraack<br>101 Devils Road<br>Lake Huntington, NY 12752<br>(T): 845-701-5572 | Data processing and fulfillment |
| Liberty Central School District<br>Lorine Lamerand<br>115 Buckley Street<br>Liberty, NY 12754<br>(T): 845-292-6171<br>(F): 845-292-1164<br>(E): llamerand@libertyk12.org | Data processing and fulfillment |
| Liberty Fire Department<br>PO Box 865<br>256 Sprague Avenue, Suite 4<br>Liberty, NY 12754<br>(T): 845-292-1415<br>(E): genedecarlo55@gmail.com | Data processing and fulfillment |
| LiveAnswer<br>1101 Brickell Ave., Suite 800<br>South Tower<br>Miami, FL 33131<br>(T): 305-250-1004<br>(E): enmanuel@liveanswer.com | Data processing and fulfillment |
| Livingston Manor CSD<br>Mary Lou Lewis<br>19 School St., PO Box 947<br>Livingston Manor, NY 12758<br>(T): 845-439-4400 x 1209<br>(F): 888-918-8686<br>(E): kcallagy@lmcs.k12.ny.us | Data processing and fulfillment |
| Loch Shledrake FD<br>Frank Smith, Treasurer<br>PO Box 1005<br>Loch Sheldrake, NY 12759 | Data processing and fulfillment |
| Margaretville CDS<br>Karen Dietrich<br>PO Box 319<br>Margaretville, NY 12455<br>(E): kdietrich@margaretvillecs.org | Data processing and fulfillment |
| | |

| | |
|---|---|
| Minisink Valley CSD<br>PO Box 217<br>Slate Hill, NY 10973<br>(T): 845-355-5127<br>(F): 845-355-5123<br>(E): loconnor@minisink.com | Data processing and fulfillment |
| Monticello School District<br>Sheri Bisland<br>237 Forestburgh Rd<br>Monticello, NY 12701<br>(T): 845-794-7708 x 70599<br>(F): 845-794-7718<br>(E): sbisland@k12mcsd.net | Data processing and fulfillment |
| Niskayuna CSD<br>Attn: Matt Bourgeois<br>1239 Van Antwerp Rd.<br>Niskayuna, NY 12309<br>(T): 518-377-4666 x 2<br>(F): 518-377-4074<br>(E): dgullotta@niskyschools.org | Data processing and fulfillment |
| Onteora Central School District<br>PO Box 300<br>Boiceville, NY 12412 | Data processing and fulfillment |
| Pine Bush School Dist. 1<br>Donna Fine<br>Route 302, Box 700<br>Pine Bush, NY 12566<br>(E): dfine@pinebushschools.org | Data processing and fulfillment |
| Port Jervis CSD<br>9 Thompson St.<br>Port Jervis, NY 12771<br>(E): lbuczek@pjschools.org | Data processing and fulfillment |
| Roscoe Central School<br>6 Academy St., Box 429<br>Roscoe, NY 12776<br>(T): 607-4984126 x 306<br>(F): 607-498-6015<br>(E): lfailla@roscoe.k12.ny.us | Data processing and fulfillment |
| Roscoe Rockland Fire Co.<br>Attn: Steve Chesney<br>75 Timberlake Rd.<br>Roscoe, NY 12776<br>(E): yorktown2@hotmail.com | Data processing and fulfillment |

| | |
|---|---|
| Rye City School District<br>Daniela Vitiello<br>411 Theo Fremd Ave., South Lobby<br>Rye, NY 10580 | Data processing and fulfillment |
| Schalmont School District<br>Attn: Joseph Lenz<br>401 Duanesburg Rd.<br>Schenectady, NY 12306<br>(T): 518-355-9200 x 4002<br>(F): 518-355-9203<br>(E): klancto@schalmont.net | Data processing and fulfillment |
| Scotia-Glenville CSD<br>Drew Giaquinto<br>900 Preddice Parkway<br>Scotia, NY 12302<br>(T): 518-382-1222<br>(F): 518-386-4326<br>(E): dhartman@sgcsd.net | Data processing and fulfillment |
| Smallwood Mongaup Valley Volunteer Fire Co.,<br>Inc.<br>PO Box 124<br>Mongaup Valley, NY 12762<br>(T): 845-807-0200<br>(E): conroy.richard@gmail.com | Data processing and fulfillment |
| Sullivan County RPTS<br>100 North Street, PO Box 5012<br>Monticello, NY 12701-5192<br>(T): 845-807-0221<br>(E): susan.johnson@co.sullivan.ny.us | Data processing and fulfillment |
| Sullivan West<br>Box 308<br>Jeffersonville, NY 12748<br>(T): 845-887-5300 x 3005<br>(F): 845-482-4720<br>(E): sullivanwest-ap@scboces.org | Data processing and fulfillment |
| Summitville Fire Co #1<br>PO Box 296<br>Summitville, NY 12781 | Data processing and fulfillment |
| Swan Lake Fire Dept.<br>William Gloor<br>508 LT Brender Hwy.<br>Ferndale, NY 12734 | Data processing and fulfillment |

| | |
|---|---|
| Synapse, Inc.<br>Bill Wade, Vice President<br>225 High Ridge Rd., East Building<br>Suite 16<br>Stamford, CT 06908 | Synapse MSA 05.24.2016 |
| TWC/Charter Communications<br>John Gomez, VP of Retention Operations<br>6995 Green Valley Circle<br>Culver City, CA 90230 | TWC MSA 07.23.2013 |
| Town of Bedford<br>Town House<br>321 Bedford Rd.<br>Bedford Hills, NY 10507<br>(T): 914-666-4475<br>(F): 914-666-5249 | Data processing and fulfillment |
| Town of Berne<br>Brian Crawford<br>PO Box 57<br>Berne, NY 12023<br>(T): 518-872-2259<br>(F): 518-872-9303<br>(E): assessclerk@yahoo.com | Data processing and fulfillment |
| Town of Bethel<br>Assessors Office<br>PO Box 561<br>White Lake, NY 12786<br>(E): debragabriel69@gmail.com | Data processing and fulfillment |
| Town of Callicoon<br>Attn: Janet Brahm<br>PO Box 687<br>Jeffersonville, NY 12748<br>(T): 845-482-5390 x 300<br>(F): 845-482-5030<br>(E): toctownclerk@hvc.rr.com | Data processing and fulfillment |
| Town of Cochecton<br>Town Assessor<br>PO Box 245<br>Lake Huntington, NY 12752<br>(T): 845-932-8360 x 17<br>(E): taxcollector@townofcochectonny.org | Data processing and fulfillment |
| | |

| | |
|---|---|
| Town of Coeymans<br>Diane Millious – Town Clerk<br>18 Russell Avenue<br>Ravena, NY 12143<br>(T): 518-756-2100<br>(F): 518-756-9257 | Data processing and fulfillment |
| Town of Delaware<br>Renee Ozomek, IAO Sole Assessor<br>Box 129<br>Hortonville, NY 12745<br>(T): 845-887-5250 x 4<br>(E): delawareassessor@hvc.rr.com | Data processing and fulfillment |
| Town of Duanesburg<br>Attn: Leah Lennon<br>5953 Western Turnpike<br>Duanesburg, NY 12056<br>(T): 518-895-8920 x 200<br>(F): 518-895-8171<br>(E): llennon@duanesburg.net | Data processing and fulfillment |
| Twon of Durham<br>Gordon Bennett<br>7309 State Route 81<br>East Durham, NY 12423 | Data processing and fulfillment |
| Town of Fallsburg<br>Donna Akerley<br>PO Box 2019<br>South Fallsburg, NY 12779<br>(T): 845-434-8810 x 1<br>(F): 845-434-8835<br>(E): donna.akerley@fallsburgny.com | Data processing and fulfillment |
| Town of Forestburg<br>Joanne K. Nagoda<br>PO Box 114<br>Forestburgh, NY 12777<br>(T): 845-794-0611 x 12<br>(E): townofforestburgh@hvc.rr.com | Data processing and fulfillment |
| Town of Fremont<br>Receiver of Taxes<br>PO Box 69<br>Fremont Center, NY 12736<br>(T): 845-887-6605<br>(E): supervisor@fremontnewyork.us | Data processing and fulfillment |
| | |

| | |
|---|---|
| Town of Glenville<br>Bill Purtell<br>18 Glenridge Rd.<br>Glenville, NY 12302<br>(T): 518-688-1250<br>(F): 518-384-0140<br>(E): paragosa@townofglenville.org | Data processing and fulfillment |
| Town of Green Island<br>Maggie Alix<br>20 Clinton St.<br>Green Island, NY 12183<br>(T): 518-629-0367<br>(F): 518-273-2235<br>(E): maggiea@villageofgreenisland.com | Data processing and fulfillment |
| Town of Greenville<br>Gordon Bennett<br>PO Box 38<br>Greenville, NY 12083 | Data processing and fulfillment |
| Town of Guilderland<br>Karen M. Vanwaagenen, Receiver of Taxes<br>PO box 339<br>Guilderland, NY 12084<br>(T): 518-356-1980 x 1023<br>(F): 518-356-3955<br>(E): buchananl@townofguilderland.org | Data processing and fulfillment |
| Town of Haverstraw<br>Attn: Town Clerk<br>One Rosman Road<br>Garnerville, NY 10923<br>(T): 845-942-3721<br>(F): 845-942-3721<br>(E): amreceiver@aol.com | Data processing and fulfillment |
| Town of Highland<br>Doreen Hanson<br>PO Box 138<br>Eldred, NY 12732<br>(T): 845-557-6085<br>(F): 845-557-8099<br>(E): townclerk@townofhighlandny.com | Data processing and fulfillment |
| Town of Knox<br>Russell Pokorny<br>410 Knox-Gallupville Rd.<br>Schoarie, NY 12157<br>(T): 518-669-6459 | Data processing and fulfillment |

| | |
|---|---|
| (E): knoxassessor@nycap.rr.com | |
| Town of Liberty<br>120 No. Main St.<br>Liberty, NY 12754<br>(T): 845-292-5110<br>(E): l.dutcher@townofliberty.org | Data processing and fulfillment |
| Town of Lumberland<br>Heather Worzel<br>PO Box 340<br>Glen Spey, NY 12737<br>(T): 845-856-8600 x 213<br>(E): taxdeputy@townoflumberland.org | Data processing and fulfillment |
| Town of Mamkating<br>3170 Route 209<br>Wurtsboro, NY 12790<br>(E): janetevans@citlink.net | Data processing and fulfillment |
| Town of Mt. Kisco<br>Town Treasurer<br>105 Main Street<br>Mount Kisco, NY 10549<br>(T): 914-864-0034<br>(F): 914-241-9018<br>(E): taxreceiver@mountkisco.org | Data processing and fulfillment |
| Town of Mt. Pleasant<br>Vicki Anderson<br>One Town Hall Plaza<br>Valhalla, NY 10595<br>(T): 914-742-2348<br>(F): 914-769-3155<br>(E): vanderson@mtpleasantny.com | Data processing and fulfillment |
| Town of Neversink<br>Lisa Garigliano<br>PO Box 307<br>Grahamsville, NY 12740<br>(T): 845-985-2262 x 307<br>(E): townclerk@townofneversink.org | Data processing and fulfillment |
| Town of New Scotland<br>Deborah Corbari<br>2029 New Scotland Road<br>Slingerlands, NY 12159<br>(T): 518-439-9020<br>(F): 518-439-8554<br>(E): dcorbari@townofnewscotland.com | Data processing and fulfillment |

|  |  |
|---|---|
| Town of North Castle<br>Assessor's Office<br>17 Bedford Road<br>Armonk, NY 10504<br>(T): 914-273-6620<br>(F): 914-273-3328<br>(E): pcolombo@northcastleny.com | Data processing and fulfillment |
| Town of North Salem<br>Attn: Karen Roach<br>PO Box 313<br>North Salem, NY 10560<br>(T): 914-669-5177<br>(F): 914-669-8460<br>(E): kroach@northsalemny.org | Data processing and fulfillment |
| Town of Ossining<br>Gloria Fried<br>16 Croton Ave.<br>Ossining, NY 10562 | Data processing and fulfillment |
| Town of Pelham<br>Attn: Michele Casandra<br>34 Fifth Avenue<br>Pelham, NY 10803<br>(T): 914-738-1642<br>(E): taxrcvr@aol.com | Data processing and fulfillment |
| Town of Pound Ridge<br>Attn: Assessor's Office<br>179 Westchester Avenue<br>Pound Ridge, NY 10576-1743<br>(T): 914-764-3980<br>(E): cklong@townofpoundridge.com | Data processing and fulfillment |
| Town of Rensselaerville<br>Kathleen A. Hallenbeck<br>87 Barger Rd.<br>Medusa, NY 12120<br>(T): 518-239-4225 x 100<br>(F): 518-239-6339<br>(E): townclerk@rensselaeri | Data processing and fulfillment |

**SCHEDULE 11.02**

**Cure Schedule for Focus Services, LLC**

| Schedule of Payments for Focus | |
|---|---|
| **Date** | **Amount** |
| 6/30/2017 | $      20,000 |
| 7/31/2017 | $      20,000 |
| 8/30/2017 | $      20,000 |
| 9/30/2017 | $      20,000 |
| 10/31/2017 | $      20,000 |
| 11/30/2017 | $      20,000 |
| 12/31/2017 | $      20,000 |
| 1/31/2018 | $      20,000 |
| 2/28/2018 | $      20,000 |
| 3/31/2018 | $      20,000 |
| 4/30/2018 | $      20,000 |
| 5/31/2018 | $      20,000 |
| 6/30/2018 | $      20,000 |
| 7/31/2018 | $      20,000 |
| 8/30/2018 | $      20,000 |
| 9/30/2018 | $      20,000 |
| 10/31/2018 | $      20,000 |
| 11/30/2018 | $      20,000 |
| 12/31/2018 | $      20,000 |
| 1/31/2019 | $      20,000 |
| 2/28/2019 | $      20,000 |
| 3/31/2019 | $      20,000 |
| 4/30/2019 | $      20,000 |
| 5/31/2019 | $      20,000 |
| 6/30/2019 | $      20,000 |
| 7/31/2019 | $      20,000 |
| 8/30/2019 | $      20,000 |
| 9/30/2019 | $      20,000 |
| 10/31/2019 | $      20,000 |
| 11/30/2019 | $      20,000 |
| 12/31/2019 | $      20,000 |
| 1/31/2020 | $      3,676 |
| **Total** | **$      623,676** |

**SCHEDULE 11.03 (a)**

**Cure Schedule for Peterson Properties, LLC**

| Schedule of Payments for Peterson Properties, LLC | |
|---|---|
| **Date** | **Amount** |
| 4/1/2017 | $         $10,890.00 |
| 5/1/2017 | $         $10,890.00 |
| 6/1/2017 | $         $10,890.00 |
| 7/1/2017 | $         $10,890.00 |
| 8/1/2017 | $         $10,890.00 |
| 9/1/2017 | $         $10,890.00 |
| 10/1/2017 | $         $10,890.00 |
| 11/1/2017 | $         $10,890.00 |
| 12/1/2017 | $         $10,890.00 |
| 1/1/2018 | $         $10,890.00 |
| 2/1/2018 | $         $10,890.00 |
| 3/1/2018 | $         $10,890.00 |
| **Total:** | **$         130,680.00** |

**SCHEDULE 11.03 (b)**

**Cure Schedule for AMAR, LLC**

**NONE**

**SCHEDULE 11.03 (c)**

**Cure Schedule for IVG Institutional Funds GmbH,
a German Corporation, as Nominee for American Fund-0IK**

| Schedule of Payments for IVG Institutional Funds GmbH | |
|---|---|
| **Date** | **Amount** |
| 4/1/2017 | $    $6,871.35 |
| 5/1/2017 | $    $6,871.35 |
| 6/1/2017 | $    $6,871.35 |
| 7/1/2017 | $    $6,871.35 |
| 8/1/2017 | $    $6,871.35 |
| 9/1/2017 | $    $6,871.35 |
| **Total:** | **$    41,228.07** |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the attached SECOND

AMENDED PLAN OF REORGANIZATION by causing it to be deposited in the United States Mail in

a properly addressed envelope with adequate postage affixed thereon to the following:

Lindsay P.S. Kolba
OFFICE OF THE UNITED STATES TRUSTEE
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA  30303

This 10th day of February, 2017.

Respectfully submitted,

SCROGGINS & WILLIAMSON, P.C.

J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559

*Counsel for Nexxlinx Corporation, Inc., et al.*

One Riverside
4401 Northside Parkway
Suite 450
Atlanta, GA 30327
T:  (404) 893-3880
F:  (404) 893-3886
E:  rwilliamson@swlawfirm.com
    aray@swlawfirm.com

- 45 -